# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

ORCHESTRATE HR, INC., et al.,

    Plaintiffs,

v.

BLUE CROSS BLUE SHIELD KANSAS,

    Defendant.

Case No. 5:19-CV-04007-HLT-TJJ

## MEMORANDUM & ORDER

Plaintiffs Orchestrate HR, Inc. and Vivature, Inc. (collectively "Vivature") filed this diversity action against Defendant Blue Cross Blue Shield Kansas and asserted various tort claims.[1] Blue Cross moves to dismiss the amended complaint under Rule 12(b)(1) for lack of subject-matter jurisdiction and under Rule 12(b)(6) for failure to state a claim. Docs. 37 and 39. Over the course of briefing, Blue Cross also moved to strike the evolving declarations attached to Vivature's pleadings. Docs. 41, 55, 56, and 58.

After reviewing the voluminous record associated with these six motions, the Court issues the following rulings. The Court denies the motion to dismiss for lack of subject-matter jurisdiction because the amount pleaded is over the jurisdictional threshold. The Court grants in part and denies in part the motion to dismiss for failure to state a claim. Vivature's fraud claim survives but is limited to the alleged fraudulent representations made on the October 17, 2017 call between Vivature and Blue Cross. Vivature's defamation claim survives but is limited to the March 7, 2018

---

[1] After the case was filed, Blue Cross filed a combined motion to dismiss under Rule 12(b)(1) and Rule 12(b)(6). Doc. 10. Vivature timely amended its complaint. *See* Federal Rule of Civil Procedure 15(a)(1)(B). Because Blue Cross's initial motion is directed at the original complaint, which is no longer the operative complaint, the Court denies that motion as moot and without prejudice. *See Robbins v. Dyck O'Neal, Inc.*, 2019 WL 3453563, at *1 (D. Kan. July 31, 2019). Blue Cross acknowledges that the earlier motion is now moot. *See* Doc. 53 at 1; Doc. 57 at 3.

letter sent by Blue Cross Blue Shield of North Dakota. Vivature's claim for tortious interference with prospective business relations is dismissed because it is asserted only under Kansas law, which does not apply in this case. And Vivature's claim for tortious interference with contract survives but is limited to its contract with Washburn University. Lastly, the Court denies the four motions to strike because they are not procedurally proper at this stage of the case.[2]

I. **MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

In the Rule 12(b)(1) motion, Blue Cross argues that this Court lacks subject-matter jurisdiction under 28 U.S.C. § 1332(a) because the amount claimed by Vivature is not made in good faith and is legally certain to be less than the $75,000 statutory threshold for diversity actions. Doc. 37 at 1-2. For the reasons discussed below, the Court disagrees and denies this motion.

A. **Standard**

Federal district courts have diversity jurisdiction in civil actions between citizens of different states where the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). Whether this amount is satisfied is a federal question, though state law controls the nature and extent of any state rights at issue. *See Cabral v. Willard*, 333 F. Supp. 2d 1108, 1111 (D. Kan. 2004).

In evaluating a motion to dismiss for lack of jurisdiction based on the amount in controversy, the amount claimed by a plaintiff controls unless it is not made in good faith. *Adams v. Reliance Standard Life Ins. Co.*, 225 F.3d 1179, 1183 (10th Cir. 2000). Ultimately, the test is whether there is legal certainty that the plaintiff cannot recover the jurisdictional amount. *Id.* The burden is on the party asserting federal jurisdiction "to show it is not a legal certainty that the claim

---

[2] The Court recognizes that this is a contentious case but cautions both parties that it will not tolerate scorched-earth litigation tactics. The Court will not hesitate to implement any necessary procedural mechanism to manage this case in accordance with Federal Rule of Civil Procedure 1 if it suspects such practices are being used.

is less than the jurisdictional amount." *See id.* Stated differently, the jurisdictional threshold is met if Vivature can establish that it is legally possible to recover over $75,000.

"The legal certainty standard is very strict." *Woodmen of the World Life Ins. Soc'y v. Manganaro*, 342 F.3d 1213, 1216-17 (10th Cir. 2003) (noting that Black's Law Dictionary defines "certainty" as "absence of doubt"). The Tenth Circuit has said that "it is difficult" to dismiss for failure to meet the statutory jurisdictional threshold in 28 U.S.C. § 1332(a). *Id.* "Generally, dismissal under the legal certainty standard will be warranted only when a contract limits the possible recovery, when the law limits the amount recoverable, or when there is an obvious abuse of federal court jurisdiction." *Id.* at 1217.

**B.     Analysis**

On its face, Vivature's amended complaint alleges damages in excess of $1,000,000, which is well above the jurisdictional threshold. *See* Doc. 26 at 2. Accordingly, this amount presumptively controls unless a contract or law limits damages or there is an obvious abuse of federal jurisdiction. *See Woodmen*, 342 F.3d at 1217. Blue Cross argues that (1) Vivature's amended complaint is an abuse of federal court jurisdiction because the amount claimed is not made in good faith, and (2) some of the damages claimed by Vivature are not recoverable as a matter of law. The Court disagrees on both points.

### 1.     Because Vivature limited the damages sought in the state court petition, the Court does not find bad faith in this case.

Blue Cross argues that Vivature's amended complaint is an abuse of federal court jurisdiction because the amount claimed is not made in good faith. Blue Cross explains that Vivature's damage claim is made in bad faith because an earlier and similar state-court petition claimed an amount less than the jurisdictional minimum. Doc. 38 at 15-23. Specifically, before filing this federal case, Vivature filed a petition in Texas state court that addressed essentially the

same conduct at issue here. *See* Doc. 38-1 (state-court petition). According to Blue Cross, because the claims in the Texas case are "identical" to the claims in this case, and because Vivature only sought $74,000 in the Texas case, Vivature's current claim of $1,000,000 is not made in good faith, should not control, and is an abuse of federal jurisdiction.

Admittedly, the Texas case and this case are very similar. But they are <u>not</u> identical.[3] In the Texas case, Vivature alleged fraud, business disparagement, defamation, and tortious interference with contract. Doc. 38-1 at 14-16. In this case, Vivature alleges fraud, defamation, tortious interference with prospective business relations, and tortious interference with contract. Doc. 26 at 9-12. The underlying conduct in both cases seems to be the same or, at least, largely the same. But, importantly, the scope of the allegations, and claimed alleged harm to Vivature, is different.[4]

And, significantly, although the Texas complaint limited the damages sought to $74,000, it clearly states that $74,000 is the amount Vivature was <u>seeking</u>—not the amount of damages <u>incurred</u>. *See* Doc. 38-1 at 3. That Vivature chose to limit its damages and its claims in the Texas case is not grounds to find bad faith in the amount claimed here. *See St. Paul Mercury*, 303 U.S. at 294 ("If he does not desire to try his case in the federal court he may resort to the expedient of suing for less than the jurisdictional amount . . . ."); *see also Freebird, Inc. v. Merit Energy Co.*,

---

[3] To clarify, this federal case is an independent action. It was not removed from state court, Texas or otherwise. Blue Cross has also indicated in another pleading that the Texas case was dismissed for lack of personal jurisdiction. Doc. 11 at 4.

[4] As explained below, not all of Vivature's claims survive Blue Cross's Rule 12(b)(6) motion to dismiss. But the Court looks at the amended complaint at the time it was filed to determine whether the diversity threshold amount is met. *Geoffrey E. Macpherson, Ltd. v. Brinecell, Inc.*, 98 F.3d 1241, 1245 (10th Cir. 1996); *see also St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938) ("The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction."); *Symes v. Harris*, 472 F.3d 754, 759 (10th Cir. 2006). Further, limiting the claims in this case to just Vivature's contract with Washburn, as discussed below, does not establish as a "legal certainty" that Vivature cannot recover more than $75,000. *See, e.g.*, Doc. 26 at 9 (stating that claims submitted just on behalf of Washburn total almost a million dollars); *see also* Doc. 48 at 9-10.

4

597 F. Supp. 2d 1245, 1248 (D. Kan. 2009) ("Essentially, the United States Supreme Court held that plaintiffs with a desire to stay in state court can choose to sue for less than the jurisdictional amount even if entitled to sue for more.").[5] Accordingly, the Court disagrees that the Texas case evidences bad faith on Vivature's part such that the amount claimed in the amended complaint should be completely disregarded.

### 2. It is not a legal certainty that Vivature cannot recover the jurisdictional amount.

Blue Cross also argues that some of Vivature's damages are not recoverable as a matter of law for three reasons. Blue Cross initially contends that Vivature's attempt to tie its damages to denied insurance claims is improper and not relevant to the allegations in this case.[6] Doc. 38 at 23-26. The Court agrees that it is not clear how damages in this case could be based <u>directly</u> on denied insurance claims—the "damages model" Vivature apparently has settled on. There are no claims in this case for denied insurance benefits, nor are there even any claims for breach of contract.

But the Court cannot conclude that the allegations in the case have no relationship to the underlying insurance claims, at least to the extent the claims involved Washburn. Vivature's business is apparently based on entering into agreements with universities to help them bill for

---

[5] In its reply, Blue Cross argues that limiting damages in the Texas case "is an admission of bad faith and an abuse of the Texas State Court's jurisdiction," citing *De Aguilar v. Boeing Co.*, 47 F.3d 1404 (5th Cir. 1995). Doc. 54 at 8. But this is contrary to the authority stated above. Further, *De Aguilar* is distinguishable. In *De Aguilar*, the Fifth Circuit stated that pleading "for damages below the jurisdictional amount in state court with the knowledge that the claim is actually worth more . . . is surely characterized as bad faith." *De Aguilar*, 47 F.3d at 1410. But in that case, the plaintiffs attempted to keep the case in Texas state court (their preferred forum) by suing as heirs (rather than personal representatives of the decedents) to limit their damages and to render the case unremovable. *Id.* at 1414-15. But the plaintiffs could not show that they were the sole heirs. And, therefore, they were not entitled to limit the recoverable damages and could not force remand. *Id.* There is no comparable argument here. Blue Cross also briefly argues in its reply that the limited damages request in the Texas case is "an admission of impermissible claim splitting." Doc. 54 at 9. But given that the damages claimed here are wider in scope, there is no apparent claim splitting in this case.

[6] Blue Cross also very briefly asserts that Vivature lacks standing to assert any such claim. But the authority it relies on is a Fourth Circuit case addressing statutory standing in the telecommunications context, which does not address the circumstances of this case. *See* Doc. 54 at 7 n.20.

5

services provided by the schools' athletic trainers. Vivature is then paid by receiving a percentage—20% to 35%—of the billings collected by the school. In this case, Vivature alleges that Blue Cross defamed it by making false accusations that have damaged Vivature's "reputational and economic interests" and interfered with its business. Doc. 26 at 11. Based on this, it is plausible that Vivature's damages could stem, at least to some extent, from the value of those business arrangements, which is in turn based on the underlying insurance claims. Even just considering Vivature's business with Washburn, Vivature alleges that the claims submitted on Washburn's behalf total nearly $1 million. Given this, it is not "legally certain" that the amount in controversy falls below the jurisdictional threshold.

Blue Cross next argues that Vivature is precluded from recovering "benefit of the bargain" damages for its fraud claim under Texas law, citing *Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143 (Tex. 2015).[7] But Blue Cross's reliance on *Zorrilla* is misplaced. *Zorrilla* held that, in a fraudulent inducement claim, "benefit-of-the-bargain damages are not available for fraud that induces a nonbinding contract." *Id.* (emphasis added). But Vivature does not assert such a claim and, thus, *Zorrilla*'s relevance to this case is not clear at this stage. At the very least, it does not demonstrate that Vivature is legally incapable of recovering the damages claimed.

Lastly, Blue Cross argues that *Tubbs v. Nicol* holds that, "as a matter of law," Vivature cannot assert a claim for tortious interference with prospective business relations regarding Vivature's relationship with Washburn University because it has an existing contract with Washburn. Doc. 38 at 23. But, again, that case is not supportive of the assertion Blue Cross makes and does not persuade the Court that Vivature's damages are legally certain to be below the jurisdictional threshold. *See Tubbs v. Nicol*, 675 F. App'x 437, 440 (5th Cir. 2017).

---

7   As explained below, Texas law governs aspects of this case.

6

Accordingly, for these reasons, the Court denies the motion to dismiss for lack of subject-matter jurisdiction.

## II. MOTION TO DISMISS FOR FAILURE TO STATE A CLAM

In its second motion, Blue Cross moves to dismiss the amended complaint under Rule 12(b)(6) for failure to state a claim. Doc. 39. Specifically, Blue Cross raises approximately 20 arguments challenging the adequacy of the amended complaint.[8] Vivature's amended complaint asserts four claims: (1) fraud, (2) defamation, (3) tortious interference with prospective business relations, and (4) tortious interference with contract. Doc. 26 at 9-12. Each is discussed in turn, along with Blue Cross's arguments.

### A. Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible if it is accompanied by sufficient factual content to allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id*. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility

---

[8] Vivature repeatedly argues that that Blue Cross's current Rule 12(b)(6) motion is improper under Rule 12(g)(2) because Blue Cross filed an earlier motion to dismiss the original complaint. The Court rejects this argument. The first motion was mooted when Vivature filed its amended complaint, which superseded the original complaint. *See Robbins*, 2019 WL 3453563, at *1; *see also Chavez v. Wal-Mart Stores, Inc.*, 2014 WL 12591252, at *1 (C.D. Cal. June 2, 2014) ("While 12(g)(2) prohibits a defendant from bringing successive motions to dismiss the same operative complaint, the law is clear that when an amended complaint is filed, it supersedes the original complaint and is therefore susceptible to a renewed motion to dismiss."). Vivature also suggests that certain arguments not made in Blue Cross's first—now mooted—motion are waived. *See* Doc. 51 at 24. But Rule 12(h)(1) specifically omits failure to state a claim (Rule 12(b)(6)) from the list of defenses than can be waived if not included in a prior Rule 12 motion. *See* Fed. R. Civ. P. 12(h)(1) (discussing when a party "waives any defense listed in Rule 12(b)(2)-(5)").

of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotations omitted). In undertaking this analysis, a court accepts as true all well-pleaded allegations in the complaint, though it need not accept legal conclusions. *Id.* Likewise, conclusory statements are not entitled to the presumption of truth. *Id.* at 678-79.

B. **Choice of Law**

In a diversity action, a federal court applies the choice-of-law rules for the state in which it sits. *Griffin v. Bank of America*, 971 F. Supp. 492, 496 (D. Kan. 1997). For tort claims, such as those asserted by Vivature, Kansas applies the doctrine of *lex loci delicti*, meaning that the law of the place where the tort occurred applies. *See Anderson v. Commerce Const. Servs., Inc.*, 531 F.3d 1190, 1194 (10th Cir. 2008); *Duff v. Gen. Motors Corp.*, 962 F. Supp. 1420, 1422 (D. Kan. 1997). Where the tortious action occurs in one state, but the injury occurs in another, the state where the injury occurred is the law that governs. *Deitchman v. Weiner*, 893 F. Supp. 1508, 1509 n.2 (D. Kan. 1995); *Kansas Mun. Gas Agency v. Vesta Energy Co., Inc.*, 840 F. Supp. 814, 822 (D. Kan. 1993) ("A tort occurs in the state where the injury occurs, even if the tortious act occurred in another state."). Specifically, "tortious interference claims and defamation claims are governed by the law of the state where the wrong was felt." *Snyder v. Am. Kennel Club*, 661 F. Supp. 2d 1219, 1230 (D. Kan. 2009) (finding that damage in the form of financial or reputational injury is felt in the state where the plaintiffs were residents).

The parties seem to agree that Texas law governs the substantive aspects of Vivature's claims.[9] And the Court agrees as well. Vivature alleges that Blue Cross's actions damaged Vivature "by causing pecuniary loss to Vivature's economic interest, damaging its reputation, and

---

9   Vivature makes no substantive argument about what law applies, other than to argue that Blue Cross—which argues that Texas law applies, Doc. 40 at 3—should be held to its assertion that Texas law applies. *See* Doc. 51 at 7 ("Having chosen its horse, [Blue Cross] should have to ride it.").

8

preventing Vivature from acquiring or continuing its relationships with Washburn and other schools." Doc. 26 at 9. Vivature is a Texas corporation with its principal place of business in Texas. *Id.* at 1. Given this, and the standards set forth above, the Court finds that Texas law governs Vivature's claims against Blue Cross.

### C. Analysis

#### 1. Fraud

In its fraud claim, Vivature alleges that Blue Cross represented that it would pay the claims submitted if Vivature modified its claim process. *Id.* at 4-5. The amended complaint references "substantial written and oral communications," multiple telephone calls, and hundreds of emails on this topic. *Id.* But only one communication is referenced specifically: an October 17, 2017 call between Mouzon Bass, Brandon Stanwix, and Vivature's attorney, with Cathy Holmes, Marguerite Mzhickteno, and Shelly King of Blue Cross. Vivature alleges that the representation about changes to Vivature's claims filing process was made on that call. *Id.* at 5. Vivature alleges this claim was false when made as evidenced by Blue Cross's "secret campaign of harm towards Vivature" and that Blue Cross never had any intention to pay any claims. *Id.* In response to Blue Cross's representation, Vivature allegedly spent "substantial time and monetary resources altering its claims submission process." *Id.* at 9-10.

Under Texas law, the elements of fraud are: (1) a material representation; (2) that was false; (3) the speaker knew it was false when made or made it recklessly; (4) it was made with the intention that the other party should act upon it; (5) the other party acted in reliance; and (6) the other party was injured. *Encompass Office Sols., Inc. v. Ingenix, Inc.*, 775 F. Supp. 2d 938, 954 (E.D. Tex. 2011).

9

Under Federal Rule of Civil Procedure 9(b), allegations of fraud are subject to a higher pleading standard. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); *Arena v. Wal-Mart Stores, Inc.*, 221 F.R.D. 569, 571 (D. Kan. 2004) ("Rule 9(b) requires plaintiff to set forth the 'who, what, where, and when' of the alleged fraud." (quoting *Nal II, Ltd. v. Tonkin*, 705 F. Supp. 522, 526 (D. Kan. 1989)); *Encompass*, 775 F. Supp. 2d at 954 ("Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out." (quoting *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010)). Intent can be alleged generally. Fed. R. Civ. P. 9(b).

Blue Cross primarily argues that Vivature cannot meet Rule 9(b)'s heightened pleading standard because Vivature has not identified the speaker and listener of the alleged misrepresentation, the content of the misrepresentation, or the time and place of the misrepresentation. Doc. 40 at 5-7.[10] The Court agrees that Vivature's amended complaint is not heavy on specific details, and any claims of fraud based on unspecified calls and emails is insufficient to state a claim of fraud. But the amended complaint does allege that on the October 17, 2017 conference call between Mouzon Bass, Brandon Stanwix, Vivature's attorney, Cathy Holmes, Marguerite Mzhickteno, and Shelly King, someone from Blue Cross "represented to Vivature that if Vivature made the substantial changes to its claims filing process, [Blue Cross] would process and pay the [c]laims as submitted by Vivature." Doc. 26 at 5. This satisfies the who, what, where, and when required to plead a fraud claim. *See Arena*, 221 F.R.D. at 571.[11]

---

[10] Blue Cross also very briefly argues that Vivature's fraud claim is not even plausible, let alone particularized. Doc. 40 at 4-5. But other than stating that "common sense rejects" Vivature's claim, Blue Cross does not elaborate on this argument, and the Court is not persuaded by it.

[11] Blue Cross also argues that Vivature has failed to plead facts establishing intent and falsity. Doc. 40 at 7-8. The Court disagrees and notes that intent need only be pleaded generally under Rule 9(b), which Vivature has done. *See* Doc. 26 at 4-5, 9-10.

Blue Cross also argues that the alleged false promise is not actionable under Texas law because it was not definite enough and Vivature could not have justifiably relied on such an indefinite and perpetual obligation. Doc. 40 at 10-11. But that ordinarily is a question of fact. *See Mercedes-Benz USA, LLC v. Carduco, Inc.*, 583 S.W.3d 553, 558 (Tex. 2019) ("Whether a party's actual reliance is also justifiable is ordinarily a fact question, but the element may be negated as a matter of law when circumstances exist under which reliance cannot be justified."). Given that Vivature has alleged it justifiably relied on that statement based on past experience with insurance providers, *see* Doc. 26 at 5, the Court disagrees that this element has been negated as a matter of law at the pleading stage.

### 2. Defamation

In its defamation claim, Vivature alleges two instances of defamation. The first instance is a February 14, 2017 letter from Douglas Scott of Blue Cross to Washburn. Doc. 26 at 6 (the "Scott letter"). The second instance involves a statement made by someone named "Becky" from Blue Cross to Blue Cross Blue Shield of North Dakota ("BCBSND") that certain claims submitted by Vivature were fraudulent. *Id.* at 6. BCBSND then "republished" Becky's statement about fraudulent claims to Washburn in a letter on March 7, 2018. *Id.* at 7, 10 (the "BCBSND letter").

Before turning to whether Vivature has adequately pleaded a defamation claim based on either instance, the Court first addresses Blue Cross's argument that Vivature's defamation claim based on these instances is untimely under Texas's one-year statute of limitations.[12] Blue Cross argues both instances are untimely under the one-year statute of limitations. In response, Vivature contends that the Texas savings statutes saves these claims. Doc. 51 at 29-30. But the Court need

---

[12] Tex. Civ. Prac. & Rem. § 16.002(a) states that "a person must bring suit for malicious prosecution, libel, slander, or breach of promise of marriage not later than one year after the day the cause of action accrues." Kansas likewise has a one-year statute of limitation for libel or slander. K.S.A. § 60-514(a).

not apply a savings statute because the Scott letter cannot be saved and the claim regarding the BCBSND letter does not need saving.

Specifically, Blue Cross sent the Scott letter on February 14, 2017. The statute of limitations based on that alleged act of defamation expired February 14, 2018—before the Texas case was filed on March 28, 2018. *See* Doc. 51 at 28-29; Doc. 24-1 at 47. Thus, the claim based on the Scott letter cannot be saved by the Texas case and is barred by the statute of limitations.[13] Conversely, the BCBSND letter was not sent until March 7, 2018. The statute of limitations as to that allegation did not expire until March 7, 2019, which is several months <u>after</u> Vivature filed this case on January 29, 2019. Accordingly, a defamation claim based on the BCBSND letter was timely asserted and does not need saving.[14]

Having resolved this initial issue, the Court turns to Blue Cross's argument that the amended complaint does not state a claim for defamation, focusing only on the BCBSND letter. "The elements of defamation under Texas law are that: (1) the defendant published a statement; (2) that was defamatory concerning the plaintiff; (3) while acting with malice, if the plaintiff was a public figure, or negligence, if the plaintiff was a private individual, regarding the truth of the statement." *Encompass*, 775 F. Supp. 2d at 958. Defamation is not subject to the Rule 9(b) standard for pleading, but "pleadings for a defamation claim must be sufficiently detailed to the extent

---

[13] Vivature argues that a discovery rule applies to defamation claims if the matter is not public knowledge, and in this case, Vivature "did not discover the defamatory statements until they were revealed to Vivature by the parties who received the statements." Doc. 51 at 31-32. Vivature also states it will "formally plead the discovery rule in an amended pleading if one is requested." *Id*. Notably, Vivature includes no information about how the discovery rule would have saved the Scott letter from the statute of limitations, or when it allegedly became aware of the statements. Nor is its vague reference to an amended pleading sufficient or in compliance with D. Kan. Rule 15.1. *See Albers v. Bd. of Cty. Comm'rs*, 771 F.3d 697, 706 (10th Cir. 2014) ("[A] bare request to amend in response to a motion to dismiss is insufficient to place the court and opposing parties on notice of the plaintiff's request to amend and the particular grounds upon which such a request would be based.").

[14] Because Vivature's tortious-interference claim is based on these same defamatory acts, the same statute-of-limitations analysis applies to the tortious-interference claim as it does to Vivature's defamation claim. *See Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 146-147 (5th Cir. 2007).

necessary to enable the defendant to respond." *Id.*; *Garcia v. Tyson Foods, Inc.*, 890 F. Supp. 2d 1266, 1270 (D. Kan. 2012) ("A claim of defamation complies with pleading requirements when it supplies 'sufficient notice of the communications complained of to allow [the defendant] to defend itself.'" (quoting *Bushnell Corp. v. ITT Corp.*, 973 F. Supp. 1276, 1287 (D. Kan. 1997)).

As explained above, a defamation claim based on the Scott letter is outside the statute of limitations. But as to the BCBSKS letter, Vivature alleges that a representative of Blue Cross ("Becky") told BCBSND that certain claims submitted by Vivature were fraudulent, and BCBSND then relayed that message to Washburn in a March 7, 2018 letter. Doc. 26 at 10. The letter itself is attached to the amended complaint, Doc. 26-1 at 79, and it reflects the sender, recipient, and date. This is "sufficient notice of the communications complained of." *Garcia*, 890 F. Supp. 2d at 1270 (quoting *Bushnell*, 973 F. Supp. at 1287).

Blue Cross first argues that it did not publish the BSBSND letter. But as Blue Cross also notes, "if a reasonable person would recognize that his actions create an unreasonable risk that the defamatory matter will be communicated to other parties, his conduct becomes a negligent publication to those parties with the same consequences as a direct and intentional communication." *Stephan v. Baylor Med. Ctr. at Garland*, 20 S.W.3d 880, 889 (Tex. App. 2000). That is precisely what Vivature has alleged: that the circumstances were such that Blue Cross (though its agent or employee "Becky") "would have recognized that its actions would, and did, create an unreasonable risk that a defamatory statement would have been communicated to a third party, or with a specific intent to injure Vivature." Doc. 26 at 10; *see also id.* at 7 ("The likelihood that Blue Cross Blue Shield of ND would republish this false and defamatory information to Washburn was almost certain, and was known to [Blue Cross] . . . ."). This is sufficient at the pleading stage.

Blue Cross next argues that Vivature failed to allege compliance with the requirements of Texas's Defamation Mitigation Act ("DMA"), Tex. Civ. Prac. & Rem. §§ 73.051 through 73.062. Although Blue Cross does not allege what relief it seeks for this alleged failure, it cites *Tubbs v. Nicol*, which held that failure to follow the requirements of the DMA means that a defamation claim fails as a matter of law. Doc. 40 at 21; *see also Tubbs*, 675 F. App'x at 439. But, as Vivature points out, some Texas state courts have concluded otherwise, specifically breaking with the analysis in *Tubbs* and holding that there is "nothing in [the DMA] or the legislative history to suggest it is the purpose of the DMA to deprive a plaintiff of a defamation claim based on a failure to request a correction, clarification, or retraction." *Hardy v. Commc'n Workers of Am. Local 6215 AFL-CIO*, 536 S.W.3d 38, 47 (Tex. App. 2017); *but see Zoanni v. Hogan*, 555 S.W.3d 321, 328 (Tex. App. 2018). *Hardy* specifically noted that *Tubbs* did not analyze some of the specific provisions of the DMA and stated that it found *Tubbs* to be unpersuasive. *Hardy*, 536 S.W.3d at 44 n.4. Further, neither party has cited any authority addressing whether compliance with the DMA must be pleaded as an element of a defamation claim under Texas law. Thus, the Court finds no grounds to grant Blue Cross's Rule 12(b)(6) motion on this point.

Blue Cross finally claims that any allegedly defamatory statements are protected by qualified privilege, and therefore Vivature was required to plead actual malice. Doc. 40 at 21-23. The Court disagrees that Blue Cross has established at this stage, based solely on the pleadings, that qualified privilege applies. *Burbage v. Burbage*, 447 S.W.3d 249, 254 (Tex. 2014) ("[Qualified privilege] operates as an affirmative defense in the nature of confession and avoidance; the defendant bears the burden of proving privileged publication unless the plaintiff's petition affirmatively demonstrates privilege."). Blue Cross merely asserts the privilege by stating that it had an interest in the claims submitted by Vivature, something Vivature disputes. *See* Doc.

28 at 24; Doc. 51 at 32. At this stage of the case, and on the very limited argument offered, the Court finds that Blue Cross has failed to establish that the privilege applies or that Vivature's amended complaint affirmatively demonstrates a privilege.[15]

### 3. Tortious Interference with Contract

Vivature has alleged two tortious-interference claims in the amended complaint: tortious interference with prospective business relations and tortious interference with contract. Doc. 26 at 11-12. But in its briefing, Vivature has clarified that its claim for tortious interference with prospective business relations is asserted under Kansas law, and is asserted as an alternative to its claim for tortious interference with contract under Texas law. Doc. 51 at 33. Because choice-of-law rules dictate that Texas law governs, the Court finds no grounds for Vivature to assert an alternative claim under Kansas law. Accordingly, Vivature's claim for tortious interference with prospective business relations is dismissed.

Under Texas law, "[t]he elements of tortious interference with a contract are (1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss." *McGehee v. Hagan*, 367 S.W.3d 848, 854 (Tex. App. 2012). Given these elements, the Court concludes that Vivature has adequately stated a claim for tortious interference as to its relationship with Washburn, but not as to any other schools.

The amended complaint states that Vivature had "ongoing business relationship[s] with Washburn University and other schools," and that Blue Cross's actions "made it more difficult or burdensome for Vivature to perform under its contract," and "at least one school prematurely terminated its contract with Vivature as a direct result of [Blue Cross's] improper actions." Doc.

---

[15] For the same reasons, Blue Cross's claim of qualified privilege fails as to Vivature's tortious-interference claim.

15

26 at 12. Regarding the Washburn contract, Vivature alleged that it "entered into a contract with Washburn to provide credentialing, billing, and medical claims assistance for Washburn," and that it "would receive a percentage, varying from 20% to 35%, of the billings collected." *Id.* at 3. But there are no similar allegations regarding any other schools, other than the general reference that Vivature has ongoing relationships with "other schools," and a footnote listing other schools that Vivature "has/had contracts with." *Id.* at 3 n.1.

Further, as Blue Cross notes, Doc. 40 at 24, Vivature's claim of interference is essentially based on the same conduct it alleges in its defamation claim. As described above, Vivature has alleged that Blue Cross made performance under the various contracts more difficult by contacting Washburn and making "false accusations." Doc. 26 at 12. But again, this conduct only involves Washburn. There are no similar allegations of interference with other schools' contracts.[16]

Given this, the Court concludes that Vivature has adequately pleaded a claim for tortious interference with contract as to Washburn only, but not as to the myriad other schools Vivature has relegated to a footnote. Only Washburn's contract is specifically pleaded, and the only alleged interference is the allegedly defamatory statement sent to Washburn.

Accordingly, Vivature's claim for tortious interference with a contract survives but is limited to its contract with Washburn.

### III. MOTIONS TO STRIKE

In addition to the dispositive motions, Blue Cross filed four motions to strike. Docs. 41, 55, 56, 58. These motions refer to various declarations that Vivature filed in support of various

---

[16] The Court notes that Vivature has attached a declaration of Cam Clark to its responses to both motions to dismiss, which alleges that Blue Cross's conduct interfered with Vivature's contract with Newman University. *See* Doc. 52-2. But Clark's declaration was not attached to the amended complaint. *See infra* section III. Further, Newman University is not even listed in the amended complaint as one of the other schools that Vivature does business with. *See, e.g.*, Doc. 26 at 3 n.1. This is accordingly insufficient to allege a claim of tortious interference as to Newman University.

pleadings. *See* Doc. 24-1 (Mouzon Bass's declaration, attached to Vivature's response to the first (now moot) motion to dismiss); Doc. 26-1 (Bass's supplemental declaration attached to the amended complaint); Doc. 49-1 and Doc. 52-1 (Bass's second supplemental declaration, attached in response to Blue Cross's current motions to dismiss); and Doc. 49-2 and Doc. 52-1 (Cam Clark's declaration, attached in response to Blue Cross's current motions to dismiss).

Blue Cross cites no authority for striking the declarations. The Court notes that Rule 12(f) permits it to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." But the motions to strike simply assert that the declarations should be stricken because they are "improper and not competent or admissible proof," before asserting various evidentiary objections to almost every paragraph of each declarations. *See, e.g.*, Doc. 41 (objecting on grounds such as "Best Evidence Rule," "Conclusory," "Improper Legal Conclusion," and "No Personal Knowledge and Lack of Factual Predicate").

Motions to strike are disfavored. *Dolezal v. Starr Homes, LLC*, 2019 WL 587959, at *1 (D. Kan. Feb. 13, 2019) ("Striking a pleading is a drastic measure, and may often be brought as a dilatory tactic, thus motions to strike under Rule 12(f) are generally disfavored."). And courts "should decline to strike material from a pleading unless that material has no possible relation to the controversy and may prejudice the opposing party." *Falley v. Friends Univ.*, 787 F. Supp. 2d 1255, 1257 (D. Kan. 2011) (quoting *Wilhelm TLC Lawn Care, Inc.*, 2008 WL 474265, at *2 (D. Kan. Feb. 19, 2008)).

Based on these standards, and on the arguments presented in the motions, the Court finds no grounds to strike any of the declarations in part or in their entirety. The documents at issue are not even pleadings. *See Whitney Info. Network, Inc. v Weiss*, 2008 WL 11334989, at *2 (M.D. Fla. April 14, 2008) ("Plaintiffs' motions to strike are all directed at filings that do not constitute

17

pleadings—affidavits or declarations . . . . Thus, the remedy provided in Rule 12(f) is not available."). Further, Blue Cross has not identified anything "redundant, immaterial, impertinent, or scandalous" in the declarations, nor has it alleged any prejudice. Rather, Blue Cross asserts that it "merely (and properly) challenges the admissibility of the 'testimony' Vivature has sought to proffer." Doc. 53 at 3. But the admissibility of evidence is not at issue at this stage.[17] *See Wilhelm*, 2008 WL 474265, at *2 ("[T]he Court will not resolve factual disputes on the motion to strike."). And, to the extent Blue Cross objects to Vivature's attempt to add facts to the pleadings, such arguments could have been asserted in its reply briefs. Accordingly, Blue Cross has failed to establish grounds to strike any of the declarations, and its motions are denied.

The Court notes, however, that Vivature's attempt to continually add factual allegations through declarations to bolster its operative complaint is equally improper, especially in response to motions under Rule 12(b)(6). At this stage of the case, the operative pleading is the amended complaint, and the Court's analysis has been limited to the well-pleaded allegations in that document.[18] While Vivature is entitled to attach documents to its amended complaint or reference other documents, attaching evolving supplemental declarations with additional allegations in response to motions to dismiss for failure to state a claim is nothing more than an improper attempt to amend the complaint. That tactic does not comport with either Rule 15 of the Federal Rules of

---

[17] The Court notes that, under Rule 56(c), factual allegations in summary-judgment briefing must be supported by admissible evidence. But even in that context, motions to strike based on admissibility are not generally appropriate. *See, e.g.*, Fed. R. Civ. P. 56 advisory committee notes.

[18] Motions to dismiss for lack of subject-matter jurisdiction can be brought as a factual attack, meaning that the Court can look beyond the complaint to the underlying facts to evaluate subject-matter jurisdiction. *See Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). Blue Cross's Rule 12(b)(1) motion recites the standards for both a facial and factual attack on subject-matter jurisdiction. Doc. 38 at 15. But the Court notes that the only outside factual information relied in deciding that motion is Vivature's state-court petition, which Blue Cross attached to its motion.

Civil Procedure or D. Kan. Rule 15.1(a) and has created a moving target for both Blue Cross and the Court. Such improper tactics will not be tolerated.

## IV. CONCLUSION

THE COURT THEREFORE ORDERS that Blue Cross's Motion to Dismiss Vivature's Original Complaint (Doc. 10) is DENIED AS MOOT and without prejudice.

THE COURT FURTHER ORDERS that Blue Cross's Rule 12(b)(1) Motion to Dismiss Vivature's First Amended Complaint (Doc. 37) is DENIED.

THE COURT FURTHER ORDERS that Blue Cross's Rule 12(b)(6) Motion to Dismiss Vivature's First Amended Complaint (Doc. 39) is GRANTED IN PART and DENIED IN PART. Vivature's fraud claim survives but only as to the October 17, 2017 phone call. Vivature's defamation claim based on the BCBSND letter survives, but its claim based on the Scott letter is barred by the statute of limitations. Vivature's claim for tortious interference with prospective business relations is dismissed because it is asserted under Kansas law. And Vivature's claim for tortious interference with contract survives, but only as to its contract with Washburn. All dismissed claims are dismissed without prejudice.

THE COURT FURTHER ORDERS that Blue Cross's motions to strike (Doc. 41, 55, 56, and 58) are DENIED.

IT IS SO ORDERED.

Dated: November 26, 2019  /s/ *Holly L. Teeter*  
                                                HOLLY L. TEETER  
                                                UNITED STATES DISTRICT JUDGE