### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

ORCHESTRATE HR, INC., et al., )
)
          Plaintiffs, )
)
v. )   Case No. 19-cv-4007-HLT-TJJ
)
BLUE CROSS AND BLUE SHIELD )
OF KANSAS, INC., )
)
          Defendant. )

### MEMORANDUM AND ORDER

On September 8, 2020, Defendant filed an Emergency Motion to Stay This Court's Order Requiring In-Person Depositions (ECF No. 159), seeking a stay of that portion of the undersigned Magistrate Judge's order dated August 28, 2020 (ECF No. 153) which requires in-person depositions of certain witnesses. Defendant requested the stay pending review by District Judge Holly L. Teeter.[1] The Court ordered an expedited response and set a telephone hearing for September 11, 2020.[2]

At the conclusion of the hearing, the undersigned Magistrate Judge granted Defendant's motion and stayed her ruling that the individual depositions of Cathy Holmes, Marguerite Mzhickteno, and the Rule 30(b)(6) designee(s) take place in person at BCBSKS's campus located in Topeka, Kansas. The Court had read the parties' briefs and had devoted considerable

---

[1] Defendant filed its motion for stay at the same time it filed Defendant's Partial Objection to Magistrate's Order (ECF No. 158). The objection, which will be ruled by District Judge Teeter, also addresses the ruling that these depositions occur in-person and not remotely.

[2] ECF No. 162.

thought to the issues before the hearing. After discussion with counsel, Magistrate Judge James remained convinced that her Order dated August 28, 2020 was correct, but she did not presume to know how Judge Teeter will rule on Defendant's Partial Objection. Therefore, Magistrate Judge James found the likelihood of Defendant prevailing on its Partial Objection weighed against granting a stay. She also found it unlikely that Plaintiffs would suffer substantial harm if she stayed that portion of her Order, and found little in the way of public interest or a slight tilt of that factor towards granting a stay. However, given the gravity of possible transmission of COVID-19, Magistrate Judge James found irreparable harm could result if she did not grant the stay.

The following provides additional background and analysis.

**Legal Standards**

The general rule is that the court reviewing an application for stay assesses the movant's chances for success on appeal and weighs the equities between the parties.[3] Under this analysis, the court considers factors such as: (1) the likelihood the movant will prevail on review; (2) irreparable harm to the movant if the magistrate judge does not issue a stay; (3) substantial harm to the other party if the magistrate judge stays the order; and (4) public interests implicated by a stay.[4]

---

[3] *In re Motor Fuels Litig.,* No.07–MD–1840–KHV, 2010 WL 3724665, at *1 (D. Kan. Sept.16, 2010) (internal citation omitted).

[4] *Id*. *See Martinelli v. Petland, Inc.*, 10-407-RDR, 2010 WL 4627893, at *1 (D. Kan. Nov. 3, 2010) ("D. Kan. Rule 72.1.4(d) permits an application for a stay of a magistrate judge's order pending review by the district judge. Although the Federal Rules of Civil Procedure and this district's local rules do not provide factors to be considered when evaluating the appropriateness of a stay, magistrate judges in this district typically apply the criteria used in evaluating discretionary stays in other contexts.").

**The Parties' Positions**

In its motion, Defendant BCBSKS addressed each factor, although some by incorporating arguments from its concomitantly-filed Partial Objection. Rather than address the likelihood that its position will prevail before Judge Teeter, Defendant largely repeats the arguments made in its August 19, 2020 motion for protective order. However, Defendant includes the following new assertions: (1) the witnesses would face a greater health risk during a deposition than they would in an ordinary work day at BCBSKS; (2) Marguerite Mzhickteno faces a greater risk now that she is retired; (3) certain individuals will be required to spend 42 hours together; and (4) spikes in COVID-19 are likely following Labor Day. Each new assertion is conclusively stated with no support. Defendant also claims that Magistrate Judge James erred by failing to impose safety precautions such as requiring masks, social distancing, etc., without acknowledging its own campus requirements and Plaintiffs' counsel's offers to be tested for COVID-19, wear a face mask, and omit their local counsel and their corporate representative from the depositions. There is no record showing that Defendant has either accepted or rejected the offers of testing and reduced attendance.

On the issue of irreparable harm, Defendant raises the risk of contracting COVID-19.

Defendant denies that Plaintiffs would suffer substantial harm if the order is stayed, arguing that the depositions could go forward as noticed if Plaintiffs would agree to take them remotely.

Finally, Defendant argues that allowing Judge Teeter to review the ruling is in the public interest in light of the risk of participants contracting COVID-19.

For their part, Plaintiffs point to facts Defendant omitted from their Partial Objection. While Plaintiffs are accurate, some of the omissions are not relevant to consideration of a stay.

The undersigned is fully familiar with the factual and procedural record through August 28, 2020. But Plaintiffs also reveal new communications between the parties after that date, along with the fact that on September 10, 2020, counsel Jose Portelo was tested for COVID-19 with a negative result. The new communications, with supporting exhibits identified, are as follows:

> September 4, 2020 – Defendant identifies four (4) different corporate representatives will be sitting for the mere nine (9) Court ordered topics. Defendant provides no dates of availability for any of the depositions to take place prior to September 14, 2020. For three (3) of the corporate representatives (Tina Zimmerman, Cathy Holmes, and Doug Scott) Defendant does not make them available until, all on the same day, September 14, 2020. The fourth corporate representative (Jay Robertson) is not made available until September 17, 2020. Exhibit A [ECF No. 164-1].

> September 4, 2020 – Plaintiffs email Defendant and ask Defendant to confirm that none of the corporate representatives have any availability for their deposition prior to September 14, 2020, even if Plaintiffs agree for the depositions to start early, go late, or take place on a weekend. Exhibit A [*Id.*]. No response has ever been received to that email.

> September 8, 2020 – Plaintiffs send a follow up email to the September 4, 2020 email. Exhibit A [*Id.*]. No response has ever been received to that email.

> September 8, 2020 – For the first time, Defendant calls Plaintiffs and advises that Defendant is objecting to [the order dated August 28, 2020] and that Defendant intends to file a motion to stay.[5]

Plaintiffs contend that by merely repeating its original arguments, Defendant has not demonstrated a likelihood of prevailing before Judge Teeter.

Similarly, Plaintiffs argue that Defendant has not shown irreparable harm because it offers no facts to distinguish its current position from its earlier decision that the depositions would take place, in person and according to its guidelines, at the Topeka campus.

---

[5] ECF No. 164 at 3.

Plaintiffs argue they would suffer harm in that the depositions would be further delayed, thereby necessitating another modification to the Scheduling Order due to another instance of Defendant failing to provide discovery.

Plaintiffs point to the public interest in administration of justice as a reason to deny a stay, pointing out that this case has been on file for over a year and a half and Defendant is still objecting to written discovery, and the first depositions in this case have yet to occur.

**September 11, 2020 Hearing**

During the hearing, the Court questioned counsel for both sides at length to better analyze the factors relevant to a motion for stay of a magistrate judge's ruling. The motion at hand is one for stay pending Judge Teeter's ruling on Defendant's Partial Objection; it is *not* a motion for reconsideration. Defendant agreed there was no change in circumstances. Accordingly, the undersigned did not consider any post-ruling arguments or communications between the parties in ruling on the request for stay. However, counsel's arguments during the 80-minute hearing did nothing to dissuade the undersigned from continuing to believe the August 28 Order was correct.[6] In fact, additional information provided by counsel in response to the Court's questions reinforces the ruling that the depositions at issue should proceed in person.

Defendant confirmed that if depositions were to be conducted at the BCBSKS campus, all attendees would be required to wear masks and social distancing would be enforced, as Defendant had consistently stated from the time it chose the campus as the deposition location. Although defense counsel did not know what the campus requirements are for social distancing,

---

[6] ECF No. 153. Trying to keep discovery on track, the Court entered the Order and noted that a Memorandum elaborating on the basis for the rulings would follow. *See* ECF No. 167.

5

his intent is that people would be spaced at least six feet apart. When questioned by the Court whether the conference room counsel had in mind would accommodate all the attendees sitting six feet apart, counsel could not definitively answer one way or the other, saying instead it would be "tight." Plaintiffs confirmed that their local counsel and corporate representative need not attend, lessening the number of persons present in each deposition, but Defendant indicated its counterparts would attend in person.[7]

Defense counsel also confirmed that the first time he mentioned remote depositions to Plaintiffs was on August 10. Four days earlier, Plaintiffs had asked for a specific location on the BCBSKS campus where the depositions would take place so they could share that information with the court reporter. Defense counsel replied that he would "get any additional/needed details regarding the location from BCBSKS and provide to the group," with no mention that the depositions would not go forward on the BCBSKS Topeka campus.[8] When defense counsel first mentioned remote depositions on August 10, he stated that the reason he did so was a growing concern among everyone on Defendant's side about a rise in COVID-19 cases.

On September 4, while Defendant was still under order to produce its Rule 30(b)(6) witnesses by September 14, Defendant for the first time designated its witnesses, naming four witnesses to testify on nine topics. Defendant represented that three witnesses would be available

---

[7] Upon questioning by the Court, defense counsel did not know whether BCBSKS would be willing to have its representative participate remotely.

[8] ECF No. 164-8 at 2. In the August 28 Order, the Court noted Defendant's pronouncement in a July 24 email that the depositions would be conducted in person on Defendant's Topeka campus. But this August 6 email demonstrates that two weeks later, Defendant was still communicating as if the depositions would be in person. This furthers the Court's concern, as expressed in the August 28 Order, that Defendant raised no objection to in-person depositions until after the parties failed to agree on deposition topics.

on September 14, and the fourth on September 17. Cognizant that the stated availability would not allow the corporate representative depositions to conclude by September 14, Plaintiffs suggested ways that might happen and offered to combine the 30(b)(6) and individual depositions of Cathy Holmes in one seven-hour session.[9] Defendant did not respond to Plaintiffs' inquiries. Instead, on September 8, Defendant indicated it planned to file this motion to stay.

The undersigned next sets forth the analysis underlying the ruling on the motion and makes additional comments intended to guide the parties' future conduct.

## **Analysis**

Both sides recite COVID-19 statistics for the Topeka and Dallas areas, along with other general information about the dangers and risks associated with various behaviors. The Court is well aware of these facts. But Defendant offers no specific facts which would support a finding that any deponent or participant in the depositions is at greater risk than the general population, or that any would put the other participants at greater risk. No facts support the assertion that being in a deposition would expose any witness to greater risk than he or she would face on a normal work day at BCBSKS. Defendant made no showing that attendees could not maintain a distance of six feet between them during each deposition, nor did Defendant explain what steps BCBSKS takes (other than to require face masks and an unspecified amount of social distancing) to minimize the risk to its employees during a normal work day. Defendant conclusively states

---

[9] During the hearing, Plaintiffs stated that if the depositions would be held in person, they would commit to taking the corporate and individual depositions of Cathy Holmes and the corporate deposition of Doug Scott in one seven-hour setting. Even though the manner for taking these depositions is currently undecided, the Court is encouraged that Plaintiffs are suggesting ways to streamline the process. The Court also learned that Cathy Holmes and Doug Scott are each designated to testify on a portion of a single topic.

that Marguerite Mzhickteno faces a greater risk now that she is retired, but without some factual basis the Court will not so find. Defendant also asserts that the Court is ordering certain individuals to be together for 42 hours. The Court did not order Defendant to identify four witnesses to testify on nine topics, nor did the Court order that each of those depositions extend to the maximum length of seven hours. And after Defendant identified its four witnesses on September 4, Plaintiffs made an offer which would limit the total time for in-person depositions to no more than 21 hours.

In addition, the Court had no reason to order safety precautions that Defendant has insisted it will institute and monitor, *i.e.*, masks and social distancing. Plaintiffs' lead counsel offered to and did get a COVID-19 test. These are issues reasonable counsel can and should resolve between them.

The Court also notes that courts in this District are open and have resumed conducting civil jury trials. While precautions are necessary in every location, lawyers are appearing in public courtrooms and elsewhere, and there is no basis for finding that the BCBSKS Topeka campus poses any greater risk than other locations.

As the Court learned during the hearing, irrespective of and before filing its Partial Objection and Motion for Stay, Defendant had failed to comply with the August 28 Order insofar as it gave a September 14, 2020 deadline for Defendant to produce its 30(b)(6) witnesses. In announcing three witnesses would be available on September 14 and one on September 17—while taking the position that each deposition will last seven hours—Defendant knew it was not complying and did not seek relief from the deadline. Even if Plaintiffs had agreed to take the depositions remotely, they would not have concluded by September 14.

**Additional Considerations**

Despite the number or length of emails lead counsel have exchanged in this case, it is clear to see they do not communicate well. During the Court's detailed discussion with counsel about scheduling, it became apparent that when local counsel are involved, communication improves significantly and posturing stops. As stated in each of the motions filed by local counsel seeking permission for counsel to appear pro hac vice, local counsel "agree [to] participate meaningfully in the preparation and trial of this case, to the extent required by the Court." And in the affidavit each applicant prepared, the affiant made the reciprocal commitment that local counsel would participate meaningfully in the preparation and trial of the case, again to the extent the court requires. Based on the repeated instances of disagreement and the level of hostility between lead counsel, along with the apparent ability of local counsel to communicate well and reasonably, the Court finds that intimate involvement by local counsel will likely result in greater progress in the case and better service to the clients. The Court is not ordering any specific action at this time, but warns the parties that if disputes arise during depositions, it would behoove both sides to make certain that local counsel are participating (whether in person or remotely) and are prepared to address the court. All parties are on notice that the Court may require specific "meaningful participation" by local counsel as necessary.

Dated this 18th day of September, 2020, at Kansas City, Kansas.

_Teresa J. James_
Teresa J. James
U. S. Magistrate Judge