**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **ORCHESTRATE HR, INC., et al.,** ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v.  ) | Case No. 19-cv-4007-HLT-TJJ |
| ) | |
| **BLUE CROSS AND BLUE SHIELD** ) | |
| **OF KANSAS, INC.,** ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant's Motion to Compel (ECF No. 193).[1] In a combined 70 pages of briefing and more than 250 pages of attachments, Defendant Blue Cross and Blue Shield of Kansas, Inc. ("BCBS") moves the Court to compel Plaintiff Vivature, Inc. to produce 192 documents listed on Vivature's Supplemental Privilege Log. Two weeks before BCBS filed this motion, Vivature had produced 24 of the documents at issue, but BCBS's motion makes no mention of that production. And in conferences with the Court that preceded this motion, the Court had listened to argument and directed the parties to continue conferring about the privilege log. Ultimately, after having repeatedly discussed the issue with counsel, the Court strongly suggested that any motion BCBS might file be narrowly focused. Instead, the first half of BCBS's motion is an apparent attempt to set the stage to later seek to remove Plaintiffs'

---

[1] Defendant filed this motion under seal as an attachment to Defendant's Motion for Leave to File Under Seal Defendant's Motion to Compel and Attachments (ECF No. 147). Defendant sought sealing because its motion quotes from and it has attached to its motion certain documents Plaintiff has identified as Confidential under the terms of the Amended Protective Order entered in this case (ECF No. 134). The Court has reviewed the documents and quotations. For the same reasons cited in the Court's order dated September 21, 2020 (ECF No. 171), the Court denies the motion for leave to file under seal (ECF No. 147). For administrative purposes, Defendant's Motion to Compel has been re-filed as ECF No. 193 and has retained its original filing date.

1

primary counsel from the case,[2] illustrating the alleged necessity of obtaining documents Vivature designates as privileged by pointing to documents Vivature has voluntarily produced. In all, BCBS devotes fewer than 5 pages to addressing any sort of individualized challenge to documents on the basis of attorney-client privilege, even though Vivature asserts that privilege as to every document BCBS challenges. Vivature also asserted word-product protection for 47 of the documents, which BCBS addresses in barely more than two pages. Nowhere does BCBS methodically analyze each privilege log entry it challenges. Instead, the Court was left to do that. And having done so, the Court concludes that with few exceptions, Vivature has met its burden to demonstrate the documents are privileged and it has not waived the privilege. Where it is unclear from the information provided for certain entries whether Vivature has waived the privilege, the Court will examine those documents *in camera*.

## I.     Relevant Background

On June 2, 2020, Vivature produced its first privilege log in this case, listing 935 communications. BCBS advised Vivature that it had concerns about the log, and the parties began discussing those concerns. BCBS sought additional time to file a motion to compel, and the Court granted the motion contingent upon the parties' ability to demonstrate their commitment to full compliance with the Federal Rules of Civil Procedure, this district's local rules, and the Kansas Bar Association's *Pillars of Professionalism* adopted by this district.[3] The Court discussed the privilege log with counsel during Status Conferences held on July 14 and July 21, 2020, and ultimately the parties reached an agreement by which Vivature would reevaluate the documents listed on its privilege log that were in dispute and provide different

---

[2] BCBS's first footnote suggests that Mr. Portela, Plaintiffs' lead counsel, is a "material/essential fact witness," and the briefing continues with repeated references to him as a "material witness."

[3] *See* ECF No. 122 (text-only order).

descriptions to give BCBS more information about the disputed documents and the bases for the privileges asserted. On August 3, 2020, Vivature produced this supplemental privilege log.

## II.    Legal Standards

### *Attorney-Client Privilege*

Rule 501 of the Federal Rules of Evidence dictates how privilege is determined. Pursuant to Rule 501, state law governs the applicability and scope of attorney-client privilege in diversity actions.[4] The parties agree that Texas law controls the application and interpretation of attorney-client privilege in this diversity case with claims based on Texas state law causes of action. This choice of law provision is largely responsible for the Court's finding that the privilege applies to the vast majority of communications at issue, and that Vivature has not waived the privilege.

In Texas, the evidentiary rules define the privilege as follows:

> A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client:
>
> (A) between the client or a representative of the client and the client's lawyer or a representative of the lawyer;
>
> (B) between the lawyer and the lawyer's representative;
>
> (C) by the client or a representative of the client, or the client's lawyer or a representative of the lawyer, to a lawyer or a representative of a lawyer representing another party in a pending action and concerning a matter of common interest therein;
>
> (D) between representatives of the client or between the client and a representative of the client; or
>
> (E) among lawyers and their representatives representing the same client.[5]

---

[4] *Kannaday v. Ball*, 292 F.R.D. 640, 646 (D. Kan. 2013); Fed. R. Evid. 501 ("[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.")

[5] Tex. R. Evid. 503(b).

The party asserting the privilege has the burden of proof,[6] and may establish a prima facie case for the privilege by testimony or affidavit.[7] "The prima facie standard requires only the minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true."[8] Once the party asserting the privilege establishes a prima facie case for the privilege, the burden shifts to the party seeking production to refute the claim of privilege.[9] The attorney-client privilege extends to the entire communication, including facts contained therein.[10] "Once it is established that a document contains a confidential communication, the privilege extends to the entire document, and not merely the specific portions relating to legal advice, opinions, or mental analysis."[11] And the Texas Supreme Court has eschewed interpreting Rule 503(b) to require "that the *primary* purpose of the communication be to facilitate the rendition of legal services; it only requires that the communication be made to facilitate the rendition of legal services."[12]

Generally, matters of strategy discussed between client and counsel are privileged.[13] In

---

[6] *In re Russo*, 550 S.W.3d 782, 789 (Tex. App. 2018).

[7] *In re Christus Santa Rosa Health Sys.*, 492 S.W.3d 276, 279 (Tex. 2016).

[8] *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004) (per curiam) (internal quotation marks & citation omitted).

[9] *See In re Christus Santa Rosa Health Sys.*, 492 S.W.3d at 279-80.

[10] *Huie v. DeShazo*, 922 S.W.2d 920, 923 (Tex. 1996).

[11] *Pittsburgh Corning Corp. v. Caldwell*, 861 S.W.2d 423, 425 (Tex. App. 1993); *see also In re ExxonMobil Corp.*, 97 S.W.3d 353, 358 (Tex. App. 2003).

[12] *In re Fairway Methanol LLC*, 515 S.W.3d 480, 489 (2017). BCBS fails to acknowledge Texas law by citing a Kansas case for the proposition that the privilege does not apply where the legal advice is merely incidental to the business advice. *See* ECF No. 193 at 25 and n.96.

[13] *In re Alexander*, 580 S.W.3d 858, 865-66 (Tex. App. 2019) (citing Tex. R. Evid. 503(b)(1); Tex. R. Civ. P. 192.5(a); *General Motors Corp. v. Gayle*, 951 S.W.2d 469, 474 (Tex. 1997); *In re AEP Tex. Cent. Co.*, 128 S.W.3d 687, 692 (Tex. App. 2003).

4

this vein, draft agreements and documents may be protected by the attorney-client privilege.[14]

Texas Rule of Evidence 503 also defines who qualifies as a "representative of the client":

(A) a person having authority to obtain professional legal services, or to act on advice thereby rendered, on behalf of the client, or

(B) any other person who, for the purpose of effectuating legal representation for the client, makes or receives a confidential communication while acting in the scope of employment for the client.[15]

"As such, the attorney-client privilege may apply to communications between attorneys and employees who are not executives or supervisors."[16]

### *Work-Product Doctrine*

The work-product protection is governed by Rule 26(b)(3) of the Federal Rules of Civil Procedure. The work product doctrine prevents disclosure of documents or tangible things that an attorney has prepared in anticipation of litigation.[17] The party asserting work product protection bears the burden to demonstrate that the doctrine applies to the document at issue,[18] and must show each of the following: (1) the communication at issue is a document or tangible thing prepared by or for the proponent or its counsel; (2) the communication qualifies as work product material prepared in anticipation of litigation; (3) the communication does not qualify for an exception to the doctrine; and (4) the proponent properly claimed that the email was subject to protection as trial-preparation material.[19]

---

[14] *In re Alexander*, 580 S.W.3d at 866. The Court recognizes this tenet of Texas law may control its ruling on certain of the documents to be reviewed *in camera*.

[15] Tex. R. Evid. 503(a)(2).

[16] *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d at 225 n.3.

[17] Fed. R. Civ. P. 26(b)(3)(A).

[18] *In re Grand Jury Proceedings*, 616 F.3d 1172, 1184-85 (10th Cir. 2010).

[19] *Lloyds of London Syndicate 2003 v. Fireman's Fund Ins. Co. of Ohio*, 320 F.R.D. 557, 560 (D. Kan. 2017) (citing Fed. R. Civ. P. 26(b)(3)-(5).

**III.     Analysis**

The Court has carefully reviewed Vivature's Supplemental Privilege Log. As a preliminary matter, the Court finds that Vivature has satisfied the requirements of this district for the contents of a privilege log. "The information provided [in a privilege log] must be sufficient to enable the court to determine whether *each element* of the asserted privilege or protection is satisfied."[20]

The courts have required that a privilege log must include the following information:

> 1. A description of the document explaining whether the document is a memorandum, letter, e-mail, etc.;
>
> 2. The date upon which the document was prepared;
>
> 3. The date of the document (if different from # 2);
>
> 4. The identity of the person(s) who prepared the document;
>
> 5. The identity of the person(s) for whom the document was prepared, as well as the identities of those to whom the document and copies of the document were directed, "including an evidentiary showing based on competent evidence supporting any assertion that the document was created under the supervision of an attorney;"
>
> 6. The purpose of preparing the document, including an evidentiary showing, based on competent evidence, "supporting any assertion that the document was prepared in the course of adversarial litigation or in anticipation of a threat of adversarial litigation that was real and imminent;" a similar evidentiary showing that the subject of communications within the document relates to seeking or giving legal advice; and a showing, again based on competent evidence, "that the documents do not contain or incorporate non-privileged underlying facts;"
>
> 7. The number of pages of the document;
>
> 8. The party's basis for withholding discovery of the document (i.e., the specific privilege or protection being asserted); and

---

[20] *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 232 F.R.D. 669, 673 (D. Kan. 2005) (quoting *Hill v. McHenry,* No. 99–2026, 2002 WL 598331, at *2 (D. Kan. Apr. 10, 2002)).

> 9. Any other pertinent information necessary to establish the elements of each asserted privilege.[21]

The Court has also carefully reviewed the full entry for each of the 168[22] communications BCBS challenges, including whether counsel – in each instance, Jose Portela – was the author, direct recipient, or cc recipient of the communication. The Court also noted the other individuals who sent or received each communication, nearly all of whom were identifiable as Vivature employees or officers or as other lawyers, and who qualify as a "representative of a client" under the applicable Texas rule of evidence. Along with reviewing the Supplemental Privilege Log in detail, the Court read carefully the affidavits of Mr. Portela and Vivature's President Mouzon ("Muzzy") Bass III, both of which Vivature submitted in support of its privilege claims.

The Court found that fifty-two of the communications were from Jose Portela to Mr. Bass, or vice versa, with no other recipients. The subject matter, privilege comment, and privilege topic of each confirms they are subject to attorney-client privilege. Seventy-four of the communications were between Jose Portela, Muzzy Bass III, Credentialing Manager Sonseray Neufeld, then-Vice President Brandon Stanwix, and/or Executive Vice President Lance Wilson. The subject matter, privilege comment, and privilege topic of each of these communications also confirm they are subject to attorney-client privilege.[23] A handful or so of the challenged

---

[21] *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 232 F.R.D. at 673 (quoting *Hill,* 2002 WL 598331, at *2).

[22] BCBS challenges 192 communications, 24 of which Vivature had produced before BCBS filed this motion.

[23] Although Mr. Portela was included in each of these, it appears that certain of the documents the Court will review *in camera* may not include him or any other lawyer. That will not categorically exclude such documents from being privileged, as "Texas law does not require that a lawyer be the author or recipient of a communication in order for it to be privileged. Communications between "representatives of the client" are also protected if they otherwise meet the requirements of Rule 503." *Seibu Corp. v. KPMG LLP*, 3-00-CV-1639-X, 2002 WL

7

communications also include Ibrahim Saulat as an author or recipient. Although Vivature has not identified his position, Mr. Saulat has a Vivature email address and the subject matter and privilege comment indicate he is a representative of a client.[24] Three communications include Patrick Souter, a lawyer, and the subject matter and privilege comment reveal the discussion related to legal representation. Five items are attachments to emails included in the privilege log, and the subject matter and privilege comments indicate they share the privilege of the emails to which they were attached. The inclusion of this latter group confirms that Vivature has separately logged and described emails and attachments thereto, and has not combined an email and its attachments in a single entry.

Other than the documents enumerated below, the Court denies BCBS's motion because the challenged Supplemental Privilege Log entries are all properly identified as being protected by the attorney-client privilege. Because the Court makes this finding, it need not consider whether Vivature's claim of work-product protection for 47 of the communications is appropriate.

Contrary to BCBS's argument, under Texas law the privilege is not stripped if communications to or from Mr. Portela included business advice along with legal advice.[25] The

---

87461, at *2 (N.D. Tex. Jan. 18, 2002)**.**

[24] "The 'subject matter' test deems an employee's communication with the corporation's attorney privileged if two conditions are satisfied. First, that the communication is made at the direction of her superiors in the corporation. Second, where the subject matter upon which the attorney's advice is sought by the corporation and dealt with in the communication is the performance by the employee of the employee's duties of her employment." *In re USA Waste Mgmt. Res., L.L.C.*, 387 S.W.3d 92, 96 (Tex. App. 2012). The Court is not suggesting that the subject matter of communications is otherwise relevant to determining whether a communication is privileged. "The subject matter of the information communicated between attorney and client . . . is of no concern in determining whether the privilege or exemption is applicable to the documents." *Huie v. DeShazo*, 922 S.W.2d at 720.

[25] *Marathon Oil Co. v. Moye*, 893 S.W.2d 585, 591 (Tex. App. 1994) (recognizing that subject matter of a completed attorney-client communication is immaterial when deciding if the privilege applies).

8

privilege attaches not only to legal advice but also to the complete communication. "If the rules were limited to only legal advice and an attorney's mental impressions and opinions, the privilege would be destroyed. No client would ever dare give an attorney factual information regarding his case for fear that information would be subject to discovery by his opponent."[26]

Neither has Vivature waived certain claims of privilege through offensive use, as BCBS asserts. To find a waiver of the privilege through offensive use, the court must find three factors exist: (1) the party asserting the privilege is seeking affirmative relief; (2) the privileged information, if believed by the fact finder, would probably be outcome determinative; and (3) disclosure of the privileged communication is the aggrieved party's only means of access to the evidence.[27] Certainly Vivature is seeking affirmative relief in this action. But the Court rejects BCBS's assertion that "what Mr. Portela heard, thought, believed, or knew before, during, and after the October 17, 2017 call is directly relevant (and in fact likely dispositive) to Vivature's fraud claim."[28] The communications BCBS seeks to obtain that are dated on and near October 17, 2017 are exclusively between Mr. Portela and Messrs. Bass and Stanwix. BCBS has no basis to know if or how these communications are relevant to Vivature's reliance on allegedly fraudulent statements made by BCBS during the October 17 call, and has even less of a reason to say the communications are outcome determinative.[29] And while it is true that violating

---

[26] *Huie v. DeShazo*, 922 S.W.2d at 720.

[27] *TransAmerican Natural Gas Corp. v. Flores,* 870 S.W.2d 10, 11–12 (Tex.1994).

[28] ECF No 147-1 at 30.

[29] The Court shares the concern raised by Judge Jernigan in the U.S. Bankruptcy Court for the Northern District of Texas. When considering a similar argument, Judge Jernigan wrote:

> This court is extremely troubled by any suggestion that, any time a plaintiff who brings a fraud claim, of which reasonable reliance is an element, and such plaintiff was represented by an attorney at the time of the alleged fraud, the plaintiff's communications with his attorney are

9

Vivature's attorney-client privilege would be BCBS's only means of learning the substance of these communications, through discovery BCBS has undoubtedly probed facts relevant to the reliance element it describes. Moreover, Vivature repeatedly denies that it will use any privileged communications to support Plaintiffs' claims or overcome BCBS's defenses in this case, clearly recognizing that doing so would certainly lead to a strong waiver argument.

The Court need not consider the parties' relevance arguments with respect to "Non Washburn" and KSDOI documents, as the Court has found (with the possible exception of some listed below) they are protected by attorney- client privilege. However, the Court finds it appropriate to point out that in demanding communications between Plaintiffs and their counsel regarding the KSDOI investigation (and not communications directly with KSDOI), BCBS is taking a position diametrically opposed to the argument it made while resisting production of its own non-privileged documents related to KSDOI. Plaintiffs served Request No. 25 which asked for the following: "Communications with the KSDOI mentioning or referring to Vivature in relation to the Washburn claims and suggesting to the KSDOI that Vivature had committed fraud or taken an improper action." BCBS objected:

> Vivature's Request No. 25 seeks information that is outside the scope of permissible discovery. First, this Request is clearly intended to investigate expressly dismissed causes of action, as well as potential causes of action. Second, the request, on its face, goes well beyond Vivature's surviving defamation and tortious interference claims as limited by the Court's Order on BCBSKS's Rule 12(b)(6) Motion to Dismiss (Dkt. No. 69). Third, communications between one or more of BCBSKS's approximately 1,500 employees and the Kansas Insurance Department "mentioning or referring to

---

> vulnerable to being exposed in order to substantiate that the plaintiff was not warned—so to speak—by his lawyer. This seems to be what the Defendant is arguing. In other words, ***any reliance by FEI on the Defendant's actions, inactions, or silence cannot possibly have been reasonable (because surely FEI's attorneys were advising it in this regard), and FEI must open up its confidential attorney's files and let the Defendant see if it is correct.***

*In re Hallwood Energy, L.P.*, Bankr. No. 09–31253–11, 2010 WL 3211688, at *7 (Bankr. N.D. Tex. Aug. 11, 2010).

>       Vivature in relation to the Washburn claims and suggesting … that Vivature
>       had committed fraud or taken an improper action" has nothing to do with
>       whether Ms. Holmes made a fraudulent representation during the October 17,
>       2017 telephone call, or whether "Becky" defamed Vivature during the March
>       6, 2018 telephone call with BCBSND.[30]

While this change in positions is not the basis for the Court's ruling that Vivature has not waived certain claims of privilege through offensive use, it may be relevant to any sanctions the Court may determine to be warranted.

Finally, BCBS has presented no factual or legal basis that persuades the Court to reverse its earlier ruling that Mr. Portela is not a proper custodian. BCBS's motion is strong on hyperbole and weak on providing legally significant challenges to specific communications between Mr. Portela and his client representatives. Mr. Portela states he has produced all of his communications with BCBS, and that he has never claimed to be exempt from being a source of discoverable facts merely by being an attorney.[31] Nothing BCBS has argued gives the Court reason to doubt that the Supplemental Privilege Log is a complete listing of Mr. Portela's communications with his client which he believes to be privileged, nor that any further production from his communications would be proportional to the needs of the case. Making Mr. Portela a custodian would be contrary to the applicable privilege law.

## IV.    Conclusion

The Court finds that Plaintiff has successfully asserted attorney-client privilege for each of the communications challenged by BCBS, with the possible exception of the following 19 items. The Court will review these items *in camera* and rule on each: entry numbers **60** (attachment to an invoice, with no dispute regarding the invoice); **150** (same); **161** (same); **162** (same); **212** (same); **213** (fax cover sheet from Lisa); **214** (Lisa email to Bass re: UPS delivery

---

[30] ECF No. 104 at 41.

[31] *See* ECF No. 154 at 32.

notification); **240** (Bass email to Exchange Administrative Group); **271** (attachment to an invoice, with no dispute regarding the invoice); **297** (David Smith, recipient); **333** (David Smith, cc recipient); **334** (attachment to 333); **346** (David Smith, cc recipient); **347** (David Smith, cc recipient); **348** (David Smith, cc recipient); **351** (David Smith, cc recipient); **352** (David Smith, author); **353** (David Smith, cc recipient); **354** (David Smith, author).

After the Court rules on the items to be inspected *in camera*, the Court will provide further direction regarding possible sanctions pursuant to Fed. R. Civ. P. 37(a)(5)(B) or (C).

**IT IS THEREFORE ORDERED THAT** Defendant's Motion to Compel (ECF No. 193) is **DENIED IN PART AND TAKEN UNDER ADVISEMENT IN PART.** The motion is denied with respect to each Supplemental Privilege Log entry not listed above for *in camera* review.

**IT IS FURTHER ORDERED THAT** within ten business days[32] of the date of this order, Plaintiffs shall submit to the undersigned for *in camera* review the 19 communications reflected in the Supplemental Privilege Log entries listed above.

**IT IS FURTHER ORDERED THAT** Defendant's Motion for Leave to File Under Seal Defendant's Motion to Compel and Attachments (ECF No. 147) is **DENIED**.

**IT IS SO ORDERED.**

Dated this 22nd day of December, 2020, at Kansas City, Kansas.

Teresa J. James
U. S. Magistrate Judge

---

[32] The U.S. District Court for the District of Kansas will be closed on December 24 and 25, 2020, and on January 1, 2021. Those will not be business days.