## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| ORCHESTRATE HR, INC., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 19-cv-4007-HLT-TJJ |
| | ) | |
| BLUE CROSS AND BLUE SHIELD | ) | |
| OF KANSAS,  INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiffs' Motion for Protective Order and Objections to Defendant's Subpoena to Washburn University (ECF No. 188). Plaintiffs request that the Court enter an order, pursuant to Fed. R. Civ. P. 26(c), limiting the scope of the Fed. R. Civ. P. 45 subpoena BCBSKS served on Washburn University of Topeka ("Washburn"). Washburn is not a party to this action. BCBSKS opposes the motion. For the reasons set forth below, the Court will grant the motion.

## I.     Relevant Background

On November 23, 2020, BCBSKS served on Washburn a "Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action."[1] The subpoena, which specified a production date of December 21, 2020, contains 39 sets of items to be produced, many of which include multiple subparts. On December 17, 2020, Plaintiffs filed this motion for protective order, which automatically stayed the discovery until further order.[2]

---

[1] As required by Fed. R. Civ. P. 45(a)(4), BCBSKS served on Plaintiffs a notice of intent to serve and a copy of the subpoena. Although the docket does not confirm service of this notice of intent, BCBSKS's response attaches a copy of the notice and Plaintiffs do not deny having received it. *See* ECF No. 210-1 at 32-34.

[2] *See* D. Kan. Rule 26.2(a).

On December 18, 2020, Washburn's General Counsel, Marc Fried, contacted BCBSKS's counsel via email to discuss the subpoena.[3] The parties' descriptions of the communications between Messrs. Fried and Cross are markedly different. Plaintiffs do not dispute the accuracy of BCBSKS's description, but assert it omits pertinent facts. BCBSKS describes the communication with Mr. Fried as follows:

> [P]rior to the original production deadline, Washburn expressly informed BCBSKS that it intended to fully comply with the Subpoena, but requested an extension of the deadline to produce the requested documents. In response, BCBSKS immediately agreed to accommodate Washburn's request for an extension to produce the requested documents. BCBSKS also made clear to Washburn that BCBSKS was not seeking to obtain any of Washburn's privileged communications, and further explained that, to the extent Washburn had any questions or concerns with the Subpoena, Washburn need only contact BCBSKS and it would accommodate Washburn in any way possible.

> Not only did Washburn not express any concerns regarding the Subpoena, Washburn's General Counsel, Mr. Marc Fried, informed BCBSKS that Washburn has already searched for and gathered the responsive documents, that he is reviewing those documents, and that Washburn was intending on producing all responsive documents to BCBSKS by January 25, 2021.[4]

Plaintiffs submitted an affidavit from Mr. Fried, who describes himself as having only a little familiarity with this action.[5] He states that on December 7, 2020, thirteen days after receiving the subpoena and two weeks before the date specified therein for Washburn to produce responsive documents, he received a call from then Plaintiffs' counsel, Tim Shultz, who advised Plaintiffs "would be filing a motion for protective order that might either stop the subpoena or result in the voluminous requests sent to Washburn being limited."[6] Mr. Fried believed he did

---

[3] Mr. Fried states he had previously left several voicemails but had not received a telephone call or other contact by BCBSKS in return.

[4] ECF No. 210-1 at 2.

[5] The affidavit appears at pages 2-8 of ECF No. 213-1.

[6] *Id*. ¶3. Mr. Shultz has since withdrawn his appearance as local counsel for Plaintiffs. In calling the requests "voluminous," Mr. Fried underscores his assertion that he does not believe he has ever received a document request as large as this one.

not need to file objections because a ruling on Plaintiffs' motion would protect Washburn from irrelevant or unduly burdensome discovery.[7]

Although Plaintiffs' counsel emailed a filed copy of the motion for protective order to Mr. Fried on December 17, 2020, Mr. Fried states he "did not see this email when it came in and as of January 17, 2021 it remained unopened."[8] On December 18, 2020, Mr. Fried tested positive for Covid-19. He suffered first from cold-like symptoms and later from fatigue, headaches, and lack of stamina. He isolated and was out of the office until January 4, 2021.[9] But also on December 18, Mr. Fried sent an email to Scott Raymond, one of BCBSKS's counsel, noting he had previously left him several unanswered voicemail messages and explaining Washburn would not be able to comply with the December 21 deadline because (1) he was just beginning to receive potentially responsive documents from others and hadn't reviewed them, (2) he expected to receive more documents to review, (3) he was quarantining, and (4) Washburn would be closed for the holidays. Mr. Raymond responded the same day, saying he would have outside counsel (Mr. Cross) contact Mr. Fried. Shortly thereafter, Mr. Cross sent an email to Mr. Fried and they also spoke by phone. Mr. Cross sent two more emails on December 23 and 28, each time seeking a date for Washburn's compliance.

Although Defendant's counsel presumably became aware of Plaintiffs' motion for protective order when it was filed and served on December 17, 2020, at no time did Mr. Raymond or Mr. Cross mention Plaintiffs' motion for protective order or inform Mr. Fried that Washburn's duty to comply with the subpoena had been stayed by the filing of the motion.

---

[7] *Id*. In no way does the Court find this explanation relieves Washburn of its failure to avail itself of the opportunity to seek to quash or limit the subpoena on any available basis.
[8] *Id*. ¶8.
[9] *Id*. ¶9.

Instead, Mr. Cross stated BCBSKS's willingness to give Washburn additional time beyond December 21, but he also wanted to pin down an agreed-upon production date.[10]

When he returned to work on January 4, 2021, Mr. Fried continued to suffer fatigue and lack of stamina for another week. On January 11, 2021, Mr. Fried emailed Plaintiffs' counsel Jose Portela to ask if Plaintiffs had filed the motion for protective order. Mr. Portela replied the same day, re-sending his original December 17 email (with a copy of the filed motion) which had informed Mr. Fried that filing the motion stayed Washburn's duty to produce documents until further order of the court.[11]

In his affidavit dated January 25, 2021, Mr. Fried also addresses the issue of burden, stating he had just started looking at and reviewing the more than 2,000 documents he received from the Washburn employees who as of that date had conducted manual searches. Mr. Fried expected to receive more documents to review. Given what he describes as requests that "are not specific and are broad," he states the efforts required of him and other Washburn employees are "time consuming and unreasonably burdensome," and he is unable to predict when Washburn would complete the task of gathering documents. Specifically, Mr. Fried states he alone will have to review each document because he has no full-time staff or paralegal, nor does he have access to e-discovery tools. He describes the cost to Washburn, a public entity, of reviewing and producing the documents as "significant in light of the budget for my department" and he questions whether the requests are relevant, proportional, and whether BCBSKS is able to obtain the documents elsewhere.[12]

Plaintiffs describe their efforts pursuant to D. Kan. Rule 37.2 to attempt to confer with BCBSKS before filing this motion. Plaintiffs and BCBSKS conducted two separate telephone

---

[10] *See id.* ¶¶10-14 and pages 26-33 (emails).
[11] *See id.* ¶¶15-16 and page 35 (email).
[12] *Id.* ¶¶17-19.

calls lasting over one and a half hours total wherein each request and objection was discussed. Plaintiffs provided BCBSKS with a draft of their motion and during their discussions agreed to withdraw multiple objections and significantly revise the motion. Plaintiffs assert BCBSKS declined to modify any request, provide a time range limitation, or limit the subpoena to the insurance claims at issue in this case. The Court finds Plaintiffs have complied with the requirements of Rule 37.2.

## III.    Legal Standard

In issuing a subpoena, a party must "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."[13]  Non-parties responding to Rule 45 subpoenas generally receive heightened protection from discovery abuses.[14]

Federal Rule of Civil Procedure 45 governs both motions to compel compliance with and motions to quash a subpoena served on a non-party. Under Rule 45(d)(2)(B), if the entity commanded to produce documents serves written objections to the subpoena, the serving party may seek compliance by filing a motion to compel production of the documents. If the non-party wishes to challenge the subpoena, it does so by filing a motion to quash. Rule 45(d)(3) sets forth circumstances under which a court must quash or modify a subpoena, including when the subpoena "requires disclosure of privileged or other protected matter, if no exception or waiver applies," and when the subpoena "subjects a person to undue burden."[15]  The rule also allows a court discretion to quash or modify a subpoena that requires the disclosure of a "trade secret or other confidential research, development, or commercial information."[16]

---

[13] Fed. R. Civ. P. 45(d)(1).

[14] *XPO Logistics Freight, Inc. v. YRC, Inc.*, No. 16-mc-224-CM-TJJ, 2016 WL 6996275, at *3 (D. Kan. Nov. 30, 2016) (citing *Speed Trac Techs., Inc. v. Estes Exp. Lines, Inc.*, No. 08-212-KHV, 2008 WL 2309011, at *2 (D. Kan. June 3, 2008)).

[15] Fed. R. Civ. P. 45(d)(3)(A).

[16] Fed. R. Civ. P. 45(d)(3)(B).

"The scope of discovery under a subpoena is the same as party discovery permitted by Fed. R. Civ. P. 26."[17]  In other words, the relevancy standards set forth in Rule 26 define the permissible scope of a Rule 45 subpoena. Relevancy is to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense.[18]  Information still "need not be admissible in evidence to be discoverable."[19]  When the discovery sought appears relevant, the party resisting discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevancy as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevancy that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.[20]  Conversely, when the relevancy of the discovery request is not readily apparent on its face, the party seeking the discovery has the burden to show the relevancy of the request.[21]  Relevancy determinations are generally made on a case-by-case basis.[22]  And Rule 26(b)(2)(C) provides "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that . . . the proposed discovery is outside the scope permitted by Rule 26(b)(1)."[23]

Pursuant to Federal Rule of Civil Procedure 26(c), a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]"[24]  The decision to enter a protective order is within the court's broad discretion.[25]

---

[17] *In re Syngenta AG MIR 162 Corn Litigation*, MDL No. 2591, No. 14-md-2591-JWL, 2017 WL 1106257, at *16 (D. Kan. Mar. 24, 2017) (citing *Schneider v. CitiMortgage, Inc.*, No. 13-4094, 2014 WL 4749181, at *2 (D. Kan. Sept. 24, 2014)).

[18] *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

[19] Fed. R. Civ. P. 26(b)(1).

[20] *Gen. Elec. Cap. Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003).

[21] *McBride v. Medicalodges, Inc.*, 250 F.R.D 581, 586 (D. Kan. 2008).

[22] *Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate*, No. 09-cv-2516-JAR, 2011 WL 765882, at *3 (D. Kan. Feb. 25, 2011).

[23] Fed. R. Civ. P. 26(b)(2)(C)(iii).

[24] Fed. R. Civ. P. 26(c)(1).

[25] *Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 482 (10th Cir.1995); *Seattle Times Co. v. Rhinehart*,

Despite this broad discretion, "a protective order is only warranted when the movant demonstrates that protection is necessary under a specific category set out in Rule 26(c)."[26] In addition, the party seeking a protective order bears the burden of establishing good cause.[27] The moving party must make "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."[28] The court has broad discretion "to decide when a protective order is appropriate and what degree of protection is required."[29] The Supreme Court has recognized "[t]he trial court is in the best position to weigh the fairly competing needs and interests of the parties affected by discovery. The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders."[30]

Along with these principles, this Court is mindful of its duty to construe and administer the Federal Rules of Civil Procedure "to secure the just, speedy, and inexpensive determination of every action and proceeding."[31]

## III.   Analysis

By filing a motion for protective order pursuant to Rule 26(c), Plaintiffs implicitly recognize they cannot avail themselves of the protections of Rule 45 because a motion to quash or modify a subpoena duces tecum generally may be made only by the party to whom the subpoena is directed.[32] An exception to this rule exists when the party challenging the subpoena "has a personal right or privilege in respect to the subject matter requested in the subpoena."[33]

---

467 U.S. 20, 36 (1984).
[26] *Herrera v. Easygates, LLC*, No. 11–CV–2558–EFM–GLR, 2012 WL 5289663, at *2 (D. Kan. Oct. 23, 2012) (citing *Aikens v. Deluxe Fin. Servs., Inc.*, 217 F.R.D. 533, 534 (D. Kan.2003)).
[27] *Layne Christensen Co. v. Purolite Co.*, 271 F.R.D. 240, 244 (D. Kan. 2010).
[28] *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981).
[29] *MGP Ingredients, Inc. v. Mars, Inc.*, 245 F.R.D. 497, 500 (D. Kan. 2007) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)).
[30] *Seattle Times*, 467 U.S. at 36.
[31] Fed. R. Civ. P. 1.
[32] *Peterbilt of Great Bend, LLC v. Doonan*, 05–1281–JTM, 2006 WL 3193371, at *2 (D. Kan. Nov. 1, 2006) (internal citation omitted)).
[33] *Smith v. Midland Brake, Inc.*, 162 F.R.D. 683, 685 (D. Kan. 1995).

And despite their assertion, Plaintiffs have provided no compelling basis for the Court to find they have either a personal right or privilege at stake.[34] Plaintiffs correctly labeled their motion as one seeking protection from annoyance, embarrassment, oppression, and/or causing undue burden or expense, a remedy available to a party under Rule 26(c).

While Washburn could have challenged the subpoena by filing a motion to quash, it did not. Accordingly, Plaintiffs' Rule 26 motion is the only viable challenge to the subpoena's reach. But before turning to that analysis, the Court finds it appropriate to address the issues raised by Mr. Fried's affidavit, which call into play the principles of Rule 1 and the Court's substantial latitude in fashioning protective orders.

When Plaintiffs filed this motion on December 17, 2020, defense counsel knew Washburn's obligation to comply with the subpoena had been stayed by operation of D. Kan. Rule 26.2(a). But when defense counsel spoke with Mr. Fried the following day and Mr. Fried asked for more time to comply with the subpoena, counsel "acted as if the document production deadline was still December 21, 2020"[35] and agreed to grant Washburn an extension. Six days later, defense counsel inquired when Washburn planned to comply.[36] Mr. Fried responded on December 28, 2020, saying he "would hope to be able to review and have everything to you by Monday January 25,[37] and counsel replied that January 25 would be "just fine."[38]

The Court presumes defense counsel likely believed Mr. Fried knew Plaintiffs had filed their motion for protective order and either Mr. Fried (1) was unaware the motion stayed the compliance deadline, or (2) knew the deadline was stayed but was choosing to voluntarily

---

[34] In their reply, Plaintiffs acknowledge their avenue to challenge the subpoena is through a Rule 26(c) motion for protective order despite the "personal interest or privilege" exception to the general rule. *See* ECF No. 213 at 4-5 & n.11.

[35] ECF No. 213-1 at 5.

[36] *Id*. at 29.

[37] *Id*. at 28.

[38] *Id*. at 27.

comply. The latter is unlikely, particularly in light of Mr. Fried's health at the time and the volume of documents called for by the 39 categories of items to be produced (with 60 subparts). But defense counsel's silence isn't the end of it. In its response, BCBSKS states Mr. Fried "informed BCBSKS that Washburn has already searched for and gathered the responsive documents, [and] that he is reviewing those documents."[39] The email correspondence between Mr. Fried and defense counsel attached to Mr. Fried's affidavit does not support that version of events. Instead, Mr. Fried states he told defense counsel that day of his Covid-19 diagnosis and accompanying stamina issues, and – in the future tense – he hoped to be able to review the documents and produce them by January 25.

These events prompt the Court to consider what action is appropriate not only under Rule 26(c), but also under Rule 26(b)(2)(C) and the Court's inherent authority.[40]

### A.      Rule 26(c)

In their argument, Plaintiffs correctly cite the standard to determine whether a subpoena imposes an undue burden. A court is to consider "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed."[41] Focusing on the heightened protection Washburn deserves as a non-party, Plaintiffs articulate objections to several of the subpoena's requests and contend the subpoena is unduly burdensome and overbroad from Washburn's perspective. These include objections that certain requests are overly burdensome, disproportional to the needs of the case, vague and ambiguous, irrelevant to

---

[39] ECF No. 210-1 at 2.

[40] "On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that . . . the proposed discovery is outside the scope permitted by Rule 26(b)(1)."   Fed. R. Civ. P. 26(b)(2)(C)(iii).

[41] ECF No. 188 at 5 (quoting *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter of Haverstraw, Inc.*, 211 F.R.D. 658, 662 (D. Kan. 2003).

the claims and defenses in this case, seek confidential information, are not narrowly tailored, and are protected by the work-product privilege and perhaps attorney-client privilege.[42]

BCBSKS asserts the Court may not consider Plaintiffs' objections, other than for undue burden, in the context of a motion for protective order because the type of objections Plaintiffs make are redressable only in a motion to quash the subpoena. And BCBSKS denies Plaintiffs have standing to bring a motion to quash because the subpoena was not directed to Plaintiffs, nor do Plaintiffs fit within the exception of those who have a personal right or privilege regarding the information requested. Nonetheless, BCBSKS addresses each of Plaintiffs' specific objections.

In their reply, Plaintiffs readily concede they cannot avail themselves of Rule 45, which is why they do not try to fit within the strictures of a motion to quash. Instead, they seek a ruling that insofar as the subpoena seeks documents outside the narrow bounds of relevance BCBSKS has advocated, or infringe on Plaintiffs' privilege, or require time-consuming review, it imposes an undue burden on Plaintiffs. It is unclear whether Plaintiffs are abandoning any argument that undue burden also falls on Washburn. But in part because the Court finds merit in Plaintiffs' asserted need for protection from undue burden, the Court need not consider whether Plaintiffs may seek a protective order for the purpose of protecting Washburn.[43]

"[A] party may move for a protective order to protect ***itself*** from 'annoyance, embarrassment, oppression, or undue burden or expense,' regardless of whether the moving party is seeking to prevent disclosure of information by a nonparty, as long as the moving party can tie the protected information to an interest listed in the rule, such as annoyance,

---

[42] ECF No. 188 at 8-13.

[43] Plaintiffs cite cases from other districts where a party has been allowed to employ Rule 26 to seek relief from the burden imposed on the subpoenaed non-party. *See* ECF No. 213 at 5. Support also exists in this district. *See, e.g., Wichita Firemen's Relief Ass'n v. Kansas City Life Ins. Co.*, No. 11-1029-KGG, 2012 WL 3245451, at *3-5 (D. Kan. Aug. 8, 2012); *Hunsaker v. Proctor & Gamble Mfg. Co.*, No. 09-2666-KHV, 2010 WL 5463244, at *3-7 (D. Kan. Dec. 29, 2010).

embarrassment, etc."[44] Indeed, case law in this District states the party moving for a protective order, even in relation to a third-party subpoena, must assert the movant needs protection from one or more of the dangers listed in Rule 26(c).[45]

### B.     Rule 26(b)(2)(C)

A court is required to limit the extent of discovery otherwise allowable if it determines the proposed discovery is outside the scope permitted by Rule 26(b)(1).[46] Matters falling outside the scope of Rule 26(b)(1) include those not proportional to the needs of the case considering the importance of the discovery in resolving the issues, and those in which the burden or expense of the proposed discovery outweighs the likely benefit.[47] The duty exists irrespective of a motion, as the rule imposes the requirement on a court either "[o]n motion or on its own."[48] Relatedly, the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b) and Rule 34.[49]

### C.     Undue Burden and Proportionality

---

[44] *Firetrace USA, LLC v. Jesclard*, No. CV-07-2001-PHX-ROS, 2008 WL 5146691, at *2 (D. Ariz. Dec. 8, 2008) (quoted with approval in *Martley v. City of Basehor, KS*, No. 19-02138-DDC-GEB, 2020 WL 4334984, at *3 (D. Kan. July 28, 2020)).

[45] *See McDonald v. Kellogg Co.*, No. 08-2473-JWL, 2009 WL 10664465, at *2-3 (D. Kan. Nov. 5, 2009) ("Plaintiffs are seeking relief in the form of a protective order but have not asserted that a protective order is needed to protect them from any of the dangers listed in Rule 26(c)."); *Epling v. UCB Films, Inc.*, No. 98-4226, 2000 WL 1466216, at *2 (D. Kan. Aug. 7, 2000) finding Rule 26(c) inapplicable where defendant sought a protective order regarding discovery sought from a third party but could not demonstrate that defendant would suffer annoyance, embarrassment, oppression, or burden).

[46] *See McKellips v. Kumho Tire Co., Inc.*, 305 F.R.D. 655, 667 (D. Kan. 2015) ("Under Rule 26(b)(2)(C)(iii), the court must limit the extent of discovery otherwise allowed if 'the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.'") (quoting Fed. R. Civ. P. 26(b)(2)(C)(iii)).

[47] *See* Fed. R. Civ. P. 26(b)(1).

[48] Fed. R. Civ. P. 26(b)(2)(C).

[49] *Martinelli v. Petland, Inc.*, No. 10-mc-407-RDR, 2010 WL 3947526, at *3 (D. Kan. Oct. 7, 2010) (internal citations omitted); *Martin v. Grp. 1 Realty, Inc.*, No. 12-2214-EFM-DJW, 2013 WL 3322318, at *2 (D. Kan. July 1, 2013).

Whether under the Court's inherent authority and its obligation to limit the extent of discovery pursuant to Rule 26(b)(2)(C), or under the scope of a Rule 26(c) protective order as requested by Plaintiffs, it is necessary to examine whether the subpoena imposes undue burden. And the Court must examine whether the proposed discovery is proportional to the needs of the case.

Having ruled on numerous discovery disputes in this case, the Court is familiar with the parties' historical positions. Relevant to this motion is BCBSKS's consistent position that Judge Teeter's ruling on BCBSKS's Rule 12(b)(1) and Rule 12(b)(6) motions to dismiss[50] requires a very narrow view of relevance.[51]  From the beginning, the undersigned has echoed Judge Teeter's view.[52]  During the first discovery conference in this case, the Court required Plaintiffs to withdraw their First Set of Interrogatories and First Set of Requests for Production they had served before Judge Teeter ruled on the motions to dismiss. In drafting replacement discovery requests, the Court directed Plaintiffs to abide by Judge Teeter's ruling.[53]  When BCBSKS resisted discovery related to "the Washburn claims" because of the number of claims that would encompass,[54] the Court found Rule 26 proportionality required narrowing Plaintiffs' requests where the discovery was intended to require BCBSKS to individually review each Washburn

---

[50]  ECF No. 69.

[51]  *E.g.*, Defendants' Response to Plaintiffs' Motion to Compel and Extend the Scheduling Order (ECF No. 104) at 23( "[T]here is simply no legal or factual bases for suggesting that each and every one of the 6,241 'Washburn Claims,' as well as any and all information and documents from BCBSKS's approximately 1,500 employees that conceivably have any connection one of those 6,241 claims (even the claims that were processed and paid by BCBSKS), is somehow relevant to Vivature's fraud, defamation, and tortious interference with existing contract claims as limited by the Court's Order.").

[52]  *E.g.,* Order dated February 14, 2020 (ECF No. 86) at 2 ("[R]elevance will be determined narrowly in light of Judge Teeter's rulings and Defendant's answer."); Order dated April 16, 2020 (ECF No. 92) at 2 ("Also, both sides are well aware of Judge James's oral and written statements that she will determine narrowly what is relevant in light of Judge Teeter's rulings and Defendant's answer.").

[53]  ECF No. 86 at 2.

[54]  ECF No. 92 at 3.

claim.[55] Similarly, the Court narrowed the time frame for relevant discovery. Plaintiffs advocated in favor of a time period of February 26, 2016 through trial, while BCBSKS believed the relevant period should be March 1, 2017 to April 30, 2018.[56] The Court determined the appropriate period is January 1, 2017 to April 18, 2019, ending on the date Plaintiffs filed their amended complaint.[57] And with respect to many of Plaintiffs' interrogatories and document requests regarding the Washburn claims, the Court directed Plaintiffs to choose 100 of those claims which significantly narrowed BCBSKS's duty to respond.[58]

In stark contrast to its position in favor of narrowing the field of discovery Plaintiffs should be allowed to conduct, the subpoena BCBSKS served on Washburn casts a wide net. For instance, the subpoena defines "Washburn Claims" to mean "the insurance claims, individually and/or collectively, submitted by Vivature/Orchestrate to BCBSKS relating to Washburn University or 'Washburn University Sports Medicine.'"[59] Under this definition, the subpoena would encompass nearly 5,700 insurance claims.[60]

Similarly, in response to a motion to compel previously filed by Plaintiffs, BCBSKS objected to a request asking for documents that "recogniz[e] assignment of benefits from insureds who are the insureds for the Washburn Claims" on the basis that "whether BCBSKS's recognizes assignment of benefits has nothing to do with Vivature's surviving causes of

---

[55] *Id.* at 4.
[56] The parties stated these positions in submissions to the Court.
[57] ECF No. 92 at 5.
[58] *See* Order dated July 13, 2020 (ECF No. 125).
[59] Definition ¶11, ECF No. 210-1 at 41.
[60] Defense counsel provided this number in a letter dated March 27, 2020 to Plaintiffs' counsel, which the parties provided to the Court.

action."[61]  But in response to the instant motion, BCBSKS claims that information related to assignment of benefits is "directly relevant to Vivature's damages."[62]

In response to the same motion to compel, BCBSKS objected to a Request for Production asking for "[c]ommunications alleging, claiming, or suggesting that any of the Washburn Claims were fraudulent" because "Vivature's Request No. 6—on its face—is unduly burdensome and not proportional to the needs of this case."[63]  BCBSKS likewise objected that discovery on "[t]he individual decisions on 6,241 insurance claims to which Vivature is not a party have nothing to do with whether Ms. Holmes made a fraudulent representation during the October 17, 2017 telephone call. . . . This information is relevant only to Vivature's attempts to investigate potential wrongful denial of insurance benefits claims—claims which are not part of the litigation and which Vivature cannot assert."[64]  Indeed, BCBSKS repeatedly sought to

---

[61] ECF No. 104 at 23 ("Indeed, Request No. 35 specifically requested all 'policies, procedures, guidelines, or memoranda regarding recognizing assignment of benefits from insureds who are the insureds for the Washburn Claims.' Obviously, whether BCBSKS recognizes assignment of benefits has nothing to do with Vivature's surviving causes of action.").

[62] ECF No. 210-1 at 19-20 ("Here, the information sought in Request No. 7 is directly relevant to Vivature's damages because, among other things, this request would encompass assignment of benefits, if any, between certain BCBS members and Washburn. . . . Thus, if Washburn obtained assignment of benefits in connection with one of the Washburn Claims, Washburn (or Vivature) could have appealed the denial of that particular claim to the Home Plan. Indeed, Vivature sent an email to Washburn explaining that it was preparing assignment of benefits in connection with the Washburn Claims. To the extent Washburn not only obtained an assignment of benefits in connection with one of the Washburn Claims or another claim submitted by Vivature to BCBSKS, but appealed the Home Plan's denial of that Washburn Claim to the Home Plan, the Home Plan could have ultimately rendered payment to Washburn for the actual claim.").

[63] ECF No. 104 at 30-31. BCBSKS continued: "To sufficiently search and review documents that do not specifically reference Washburn University, Vivature, or the applicable providers would require that BCBSKS review all documents during the time frame identified by the Court in its April 16, 2020 Order because they might contain some information (regardless of how relevant or material that information actually is to the claims or defenses in this lawsuit) regarding general claim submissions, processing, or payments. Requiring BCBSKS to engage in this effort would be unduly burdensome. First, documents which contain the type of information encompassing submissions, payments, and denials, are kept in various departments, within numerous repositories. Second, the data requested would be contained in multiple sources, including email archives, local computer drives, numerous different databases, network drives, etc."

[64] *Id*. at 25.

significantly limit any discovery of its alleged fraudulent representations to the single phone call

on which Judge Teeter allowed Plaintiffs' fraud claim to proceed.[65]  Yet the subpoena lists well

more than a dozen paragraphs of items seeking documents related to these same insurance

claims, as well as expansive categories of requests for documents making any mention of fraud

or fraudulent activities.[66]

Similar to its repeated objections that certain of Plaintiffs' discovery requests had nothing

to do with the October 17, 2017 phone call, BCBSKS sought to narrow discovery by objecting to

many of the same requests on the basis they have "nothing to do with . . . whether 'Becky'

defamed Vivature during the March 6, 2018 telephone call with BCBSND."[67]  But again, the

subpoena directs Washburn to produce documents mentioning, discussing, or suggesting BCBSKS

made false or defamatory statements about Vivature or Orchestrate, and/or BCBSKS harmed

Vivature's or Orchestrate's reputation.[68]

BCBSKS objected to Plaintiffs' request seeking "[d]ocuments and correspondence

evidencing or mentioning [BCBSK's] payment or processing of the Washburn Claims" on various

grounds including undue burden and not being proportional to the needs of the case.[69]  Yet in six

---

[65] *Id. passim* (requests have "nothing to do with whether Ms. Holmes made a fraudulent representation during the October 17, 2017 telephone call.").

    The Court notes Judge Teeter's recent confirmation that the fraud claim asserted in Plaintiffs' Seconded Amended Complaint (ECF No. 194) is unchanged from the one that survived BCBSKS's Motion to Dismiss as set forth in her order dated November 26, 2019 (ECF No. 69). *See* Memorandum and Order (ECF No. 244) at 3 ("Blue Cross now moves to dismiss what it suggests is an expanded fraud claim in the second amended complaint. But Vivature clarifies that it has not added any new allegations of fraud. . . . Because Vivature represents that its fraud claim is unchanged, the Court reiterates its holding that Vivature has adequately stated a fraud claim based on the October 17, 2017 call. Doc. 69 at 10.").

[66] *E.g.*, ECF No. 210-1 at 44-45 (Item No. 17 seeking documents mentioning, discussing, or suggesting any of the Washburn Claims were "fraudulent" or "false," any insurance claim submitted by Vivature or Orchestrate to BCBSKS was "fraudulent" or "false," Vivature or Orchestrate committed fraud, or Vivature or Orchestrate fraudulently submitted claims).

[67] ECF No. 104 *passim*.

[68] ECF No. 210-1 at 45.

[69] ECF No. 104 at 42-43.

separate ways, BCBSKS calls on Washburn to produce documents related to the Washburn Claims and any insurance claim submitted by either Plaintiff to BCBSKS.[70]

In an earlier ruling on a motion to compel filed by BCBSKS, the Court rejected BCBSKS's argument that "what Mr. Portela heard, thought, believed, or knew before, during, and after the October 17, 2017 call is directly relevant (and in fact likely dispositive) to Vivature's fraud claim."[71] The Court found BCBSKS has no basis to know if or how communications between Mr. Portela and employees of Plaintiff are relevant to Vivature's reliance on allegedly fraudulent statements made by BCBS during the October 17 call, and even less of a reason to say the communications are outcome determinative. But BCBSKS's subpoena directs Washburn to produce several categories of documents that would include communications between Mr. Portela and his clients, Mr. Portela and Washburn, and Mr. Portela and third parties, arguing again they are relevant to Plaintiffs' fraud claims and to BCBSKS's defense that Plaintiffs' claims are barred in whole or in part because of Vivature's own actions and omissions and Vivature's fraud.[72]

This litany of differences between positions BCBSKS has taken in earlier discovery disputes and the position it now takes to justify the scope of the Washburn subpoena explains in part the Court's finding that Rule 26(b)(2)(C) and Rule 26(c) require the subpoena to be limited. In addition, the Court finds Washburn will be subjected to undue burden if forced to produce all requested materials.

**D.    Specific requests**

---

[70] *Id.* at 43-44.
[71] ECF No. 196 at 9 (quoting ECF No 147-1 at 30.
[72] *See* ECF No. 210-1 at 33-34.

The Court finds Request Nos. 3 and 4 are not proportional to the needs of the case because Washburn's primary insurance policy is not important to resolving the issues in this case, nor is it relevant to Plaintiffs' claims or BCBSKS's defenses.

The Court finds Request No. 7, which seeks copies of contracts between Washburn and anyone else related to the Washburn Claims and/or any insurance claim submitted by either Plaintiff to BCBSKS, is so far afield of the issues in this case that it clearly is not proportional.

Request Nos. 9 to 16 all relate to monetary payments Washburn sent to or received from Plaintiffs or any third party related to the Washburn Claims and/or any insurance claim submitted by either Plaintiff to BCBSKS. The Court finds to the extent these requests seek information related to payments other than the Washburn Claims – as that term has been defined by the Court, and not as defined by this subpoena – the requests are not proportional to the needs of the case.

The Court has outlined above the inconsistency in BCBSKS's positions on relevancy related to the fraud and defamation claims in this case. Request Nos. 17 to 19 go far beyond what BCBSKS claims is relevant in Plaintiffs' discovery requests, but more to the point these requests are disproportional to the needs of the case in light of Judge Teeter's ruling on BCBSKS's motion to dismiss.

Request Nos. 20 to 25 direct Washburn to produce internal correspondence and communications "mentioning, discussing, or referring to" BCBSKS, Stormont Vail, BCBSND, either Plaintiff, or Jose Portela related to the Washburn Claims and/or any insurance claim submitted by either Plaintiff to BCBSKS. These requests are so overbroad as to lack proportionality to the needs of the case, and the Court finds the burden of producing documents that mention, discuss, or refer to a subject far outweighs any value the documents might have.

Similarly, Request Nos. 26 to 31 also call for documents "mentioning, discussing, or referring to" an even greater expanse of possible senders or recipients than those described in

Request Nos. 20 to 25, including any third party. These requests are not proportional to the needs of the case and the burden of producing them far outweighs any value they may have.

Request Nos. 32 to 35 all relate to the BCBSND letter, the state court lawsuit, this lawsuit, the Loo termination letter, and/or an audit findings letter dated February 24, 2017 from BCBSKS to Washburn University Sport Medicine, including internal and external communications. BCBSKS concedes Judge Teeter has dismissed Plaintiffs' claim related to the Loo termination letter, and the Court finds requests related to it are not proportional to the needs of the case. Plaintiffs contend documents responsive to these four requests may include documents entitled to protection under the work-product doctrine, which is not necessarily waived by voluntary disclosure to a third party. BCBSKS does not dispute this assertion. Plaintiffs are correct in stating that a party asserting work product immunity is not required to prove "non-waiver." The party seeking to invoke work product immunity must demonstrate (1) the materials sought to be protected are documents or tangible things; (2) they were prepared in anticipation of litigation or for trial; and (3) they were prepared by or for a party or a representative of that party.[73] The party asserting waiver of work product immunity has the burden to establish waiver.[74] Accordingly, the Court will permit Plaintiffs to review documents

---

[73] *Zapata v. IBP, Inc.,* 175 F.R.D. 574, 576 (D. Kan. 1997); *Mackey v. IBP, Inc.,* 167 F.R.D. 186, 200 (D. Kan. 1996). *See also* Fed. R. Civ. P. 26(b)(3).

[74] *Johnson v. Gmeinder*, 191 F.R.D. 638, 643 (D. Kan. 2000) (citing *Aull v. Cavalcade Pension Plan,* 185 F.R.D. 618, 624 (D. Colo.1998) (party asserting work product has the burden to establish privilege is applicable; party asserting waiver has the burden to establish waiver); *In re Gibco, Inc.,* 185 F.R.D. 296, 298 (D. Colo. 1997) (same); *Hatco Corp. v. W.R. Grace & Co.,* No. 89–1031, 1991 WL 83126, *7 (D. N.J. May 10, 1991) ("[P]arty seeking to obtain protected work product bears the burden of proving that the protection has been waived."); *In re Convergent Technologies Second Half 1984 Securities Litigation,* 122 F.R.D. 555, 565 (N.D. Cal.1988) ("[T]he party asserting waiver [of work product immunity] has the burden of proving the facts necessary to support the finding.") *But see Musselman v. Phillips,* 176 F.R.D. 194, 201 (D. Md.1997) (party asserting immunity of work product provided to expert has burden "to demonstrate that the materials were not furnished to their expert to be used in forming an opinion, or that the expert did not consider the materials in forming the opinion")).

Washburn deems responsive to Request Nos. 32(a), (b), (c), (e); 33(a), (b), (c), (e); 34(a), (b), (c), (e); and 35(a), (b), (c), (e) before Washburn produces the documents to BCBSKS. If Plaintiffs claim work-product privilege for any of the responsive documents, they shall so advise BCBSKS and Washburn and shall prepare and serve a privilege log. Washburn shall not produce any documents listed on the privilege log until the parties have conferred in good faith and reached agreement or have conferred but have been unable to reach agreement despite diligent good-faith efforts.

Plaintiffs object to two subsections of Request Nos. 36 to 39 which seek documents relating to either Plaintiffs' legal authority to (1) assert causes of action against BCBSKS in their individual names arising from BCBSKS's denial of certain Washburn claims and/or (2) recover in their individual names the policy benefits of any Washburn Claim that was denied by BCBSKS. Plaintiffs have repeatedly disavowed they are asserting a cause of action for denial of claims. BCBSKS is of the opinion that Plaintiffs do not have standing or capacity to assert such cause of action, and contends these requests are relevant because BCBSKS has pleaded an affirmative defense to a cause of action Plaintiffs do not assert. The Court finds the argument unpersuasive, and subsections (c) and (d) of Request Nos. 36 to 39 are not proportional to the needs of the case.

One more issue bears noting. Plaintiffs relate in several instances BCBSKS's failure to respond in their meet-and-confer sessions to Plaintiffs' requests to explain the relevance of various requests. BCBSKS does not address the failure, yet its filing includes arguments in favor of relevance. To the extent BCBSKS may complain the Court has not fully considered its response – and the Court believes it has – the Court will not overlook the obligation to meet and confer in good faith.

IV.   **Conclusion**

The Court sustains Plaintiffs' objections and enters a protective order limiting the

subpoena as set forth above. Within 14 days of the date of this order, Washburn shall make available to Plaintiffs those documents it deems responsive to Request Nos. 32(a), (b), (c), (e); 33(a), (b), (c), (e); 34(a), (b), (c), (e); and 35(a), (b), (c), (e). And also within 14 days of the date of this order, Washburn shall make available to BCBSKS those documents it deems responsive to the remaining requests as limited by this order, along with a privilege log for any documents Washburn claims are privileged. Within 7 days of receipt of documents from Washburn, Plaintiffs shall provide BCBSKS with a privilege log for any documents they deem to be protected work product, and shall produce to BCBSKS any remaining documents Plaintiffs do not deem protected.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Protective Order and Objections to Defendant's Subpoena to Washburn University (ECF No. 188) is granted.

**IT IS FURTHER ORDERED** that within fourteen (14) days of the date of this order, Washburn shall make available to Plaintiffs those documents it deems responsive to Request Nos. 32(a), (b), (c), (e); 33(a), (b), (c), (e); 34(a), (b), (c), (e); and 35(a), (b), (c), (e). And also within fourteen (14) days of the date of this order, Washburn shall make available to BCBSKS those documents it deems responsive to the remaining requests as limited by this order, along with a privilege log for any documents Washburn claims are privileged.

**IT IS FURTHER ORDERED** that within seven (7) days of receipt of documents from Washburn, Plaintiffs shall provide BCBSKS with a privilege log for any documents they deem to be protected work product, and shall produce to BCBSKS any remaining documents Plaintiffs do not deem protected.

**IT IS SO ORDERED.**

Dated this 12th day of April, 2021, at Kansas City, Kansas.

Teresa J. James
U. S. Magistrate Judge