IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ORCHESTRATE HR, INC., et al.,        )
                                     )
                    Plaintiffs,      )
                                     )
v.                                   )          Case No. 19-cv-4007-HLT-TJJ
                                     )
BLUE CROSS AND BLUE SHIELD           )
OF KANSAS,  INC.,                    )
                                     )
                    Defendant.       )

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiffs' Motion for Protective Order and Objections to Defendant's Subpoena on Stormont-Vail Healthcare, Inc. (ECF No. 189). Plaintiffs request that the Court enter an order, pursuant to Fed. R. Civ. P. 26(c), limiting the scope of the Fed. R. Civ. P. 45 subpoena BCBSKS served on Stormont-Vail Healthcare, Inc. ("Stormont"). Stormont is not a party to this action. BCBSKS opposes the motion. For the reasons set forth below, the Court will grant the motion in part and deny it in part.

## I.    Relevant Background

On November 23, 2020, BCBSKS served on Stormont a "Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action."[1]  The subpoena, which specified a production date of December 21, 2020, contains 46 sets of items to be produced, many of which include multiple subparts. On December 17, 2020, Plaintiffs filed

---

[1] As required by Fed. R. Civ. P. 45(a)(4), BCBSKS served on Plaintiffs a notice of intent to serve and a copy of the subpoena. Although the docket does not confirm service of this notice of intent, BCBSKS's response attaches a copy of the notice and Plaintiffs do not deny having received it. *See* ECF No. 251 at 26-28.

this motion for protective order, which automatically stayed the discovery until further order.[2]

Plaintiffs describe their efforts pursuant to D. Kan. Rule 37.2 to attempt to confer with BCBSKS before filing this motion. Plaintiffs and BCBSKS conducted two separate telephone calls lasting over one and a half hours total wherein each request and objection was discussed. During their discussions, Plaintiffs agreed to withdraw multiple objections. Plaintiffs assert BCBSKS declined to modify any request, provide a time range limitation. or limit the subpoena to the insurance claims at issue in this case. The Court finds Plaintiffs have complied with the requirements of Rule 37.2.

### III.   Legal Standard

In issuing a subpoena, a party must "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."[3]  Non-parties responding to Rule 45 subpoenas generally receive heightened protection from discovery abuses.[4]

Federal Rule of Civil Procedure 45 governs both motions to compel compliance with and motions to quash a subpoena served on a non-party. Under Rule 45(d)(2)(B), if the entity commanded to produce documents serves written objections to the subpoena, the serving party may seek compliance by filing a motion to compel production of the documents. If the non-party wishes to challenge the subpoena, it does so by filing a motion to quash. Rule 45(d)(3) sets forth circumstances under which a court must quash or modify a subpoena, including when the subpoena "requires disclosure of privileged or other protected matter, if no exception or waiver

---

[2] *See* D. Kan. Rule 26.2(a).
[3] Fed. R. Civ. P. 45(d)(1).
[4] *XPO Logistics Freight, Inc. v. YRC, Inc.*, No. 16-mc-224-CM-TJJ, 2016 WL 6996275, at *3 (D. Kan. Nov. 30, 2016) (citing *Speed Trac Techs., Inc. v. Estes Exp. Lines, Inc.*, No. 08-212-KHV, 2008 WL 2309011, at *2 (D. Kan. June 3, 2008)).

applies," and when the subpoena "subjects a person to undue burden."[5]  The rule also allows a court discretion to quash or modify a subpoena that requires the disclosure of a "trade secret or other confidential research, development, or commercial information."[6]

"The scope of discovery under a subpoena is the same as party discovery permitted by Fed. R. Civ. P. 26."[7]  In other words, the relevancy standards set forth in Rule 26 define the permissible scope of a Rule 45 subpoena. Relevancy is to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense.[8]  Information still "need not be admissible in evidence to be discoverable."[9]  When the discovery sought appears relevant, the party resisting discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevancy as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevancy that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.[10]  Conversely, when the relevancy of the discovery request is not readily apparent on its face, the party seeking the discovery has the burden to show the relevancy of the request.[11]  Relevancy determinations are generally made on a case-by-case basis.[12]  And Rule 26(b)(2)(C) provides "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it

---

[5]  Fed. R. Civ. P. 45(d)(3)(A).

[6]  Fed. R. Civ. P. 45(d)(3)(B).

[7]  *In re Syngenta AG MIR 162 Corn Litigation*, MDL No. 2591, No. 14-md-2591-JWL, 2017 WL 1106257, at *16 (D. Kan. Mar. 24, 2017) (citing *Schneider v. CitiMortgage, Inc.*, No. 13-4094, 2014 WL 4749181, at *2 (D. Kan. Sept. 24, 2014)).

[8]  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

[9]  Fed. R. Civ. P. 26(b)(1).

[10]  *Gen. Elec. Cap. Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003).

[11]  *McBride v. Medicalodges, Inc.*, 250 F.R.D 581, 586 (D. Kan. 2008).

[12]  *Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate*, No. 09-cv-2516-JAR, 2011 WL 765882, at *3 (D. Kan. Feb. 25, 2011).

determines that . . . the proposed discovery is outside the scope permitted by Rule 26(b)(1)."[13]

Pursuant to Federal Rule of Civil Procedure 26(c), a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]"[14] The decision to enter a protective order is within the court's broad discretion.[15] Despite this broad discretion, "a protective order is only warranted when the movant demonstrates that protection is necessary under a specific category set out in Rule 26(c)."[16] In addition, the party seeking a protective order bears the burden of establishing good cause.[17] The moving party must make "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."[18] The court has broad discretion "to decide when a protective order is appropriate and what degree of protection is required."[19] The Supreme Court has recognized "[t]he trial court is in the best position to weigh the fairly competing needs and interests of the parties affected by discovery. The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders."[20]

Along with these principles, this Court is mindful of its duty to construe and administer the Federal Rules of Civil Procedure "to secure the just, speedy, and inexpensive determination of every action and proceeding."[21]

---

[13] Fed. R. Civ. P. 26(b)(2)(C)(iii).

[14] Fed. R. Civ. P. 26(c)(1).

[15] *Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 482 (10th Cir.1995); *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

[16] *Herrera v. Easygates, LLC*, No. 11–CV–2558–EFM–GLR, 2012 WL 5289663, at *2 (D. Kan. Oct. 23, 2012) (citing *Aikens v. Deluxe Fin. Servs., Inc.*, 217 F.R.D. 533, 534 (D. Kan.2003)).

[17] *Layne Christensen Co. v. Purolite Co.*, 271 F.R.D. 240, 244 (D. Kan. 2010).

[18] *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981).

[19] *MGP Ingredients, Inc. v. Mars, Inc.,* 245 F.R.D. 497, 500 (D. Kan. 2007) (quoting *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 36 (1984)).

[20] *Seattle Times,* 467 U.S. at 36.

[21] Fed. R. Civ. P. 1.

### III.    Analysis

By filing a motion for protective order pursuant to Rule 26(c), Plaintiffs implicitly recognize they cannot avail themselves of the protections of Rule 45 because a motion to quash or modify a subpoena duces tecum generally may be made only by the party to whom the subpoena is directed.[22]  An exception to this rule exists when the party challenging the subpoena "has a personal right or privilege in respect to the subject matter requested in the subpoena."[23]  In their motion, Plaintiffs refer to a personal right in relation to the information BCBSKS is seeking from Stormont, but do not claim they are entitled to the exception.[24]  Plaintiffs correctly label their motion as one seeking protection from annoyance, embarrassment, oppression, and/or causing undue burden or expense, a remedy available to a party under Rule 26(c).

Stormont could have served objections on BCBSKS within 14 days after service of the subpoena, but it did not.[25]  BCBSKS interprets the silence as lack of objection, but Plaintiffs contend no meaning should attach because Stormont may still file a motion to quash or modify the subpoena following the Court's ruling on this motion for protective order. The Court draws no inference from Stormont's silence. Plaintiffs' Rule 26 motion is the only challenge to the subpoena's reach currently before the Court.

### A.    Rule 26(c)

---

[22] *Peterbilt of Great Bend, LLC v. Doonan*, 05–1281–JTM, 2006 WL 3193371, at *2 (D. Kan. Nov. 1, 2006) (internal citation omitted).

[23] *Smith v. Midland Brake, Inc*., 162 F.R.D. 683, 685 (D. Kan. 1995).

[24] In their reply, Plaintiffs acknowledge their avenue to challenge the subpoena is through a Rule 26(c) motion for protective order despite the "personal interest or privilege" exception to the general rule. *See* ECF No. 216 at 3-4 & n.7.

[25] *See* Fed. R. Civ. P. 45(d)(2)(B) (objection to subpoena "must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served").

In their argument, Plaintiffs correctly cite the standard to determine whether a subpoena imposes an undue burden. A court is to consider "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed."[26] Plaintiffs articulate the same objections to several of the subpoena's requests: the information sought is not relevant to Vivature's claims or BCBSKS's alleged defenses, and the requested information is confidential to Stormont. Plaintiffs also assert the challenged requests are overly burdensome and disproportional to the needs of the case pursuant to Rule 26(b)(1),[27] and contend certain of BCBSKS's definitions are vague and ambiguous and would elicit privileged communications or a disproportionally large numbers of documents.[28]

BCBSKS asserts the Court may not consider Plaintiffs' objections, other than for undue burden, in the context of a motion for protective order because the type of objections Plaintiffs make are redressable only in a motion to quash the subpoena. And BCBSKS denies Plaintiffs have standing to bring a motion to quash because the subpoena was not directed to Plaintiffs, nor do Plaintiffs fit within the exception of those who have a personal right or privilege regarding the information requested. Nonetheless, BCBSKS addresses each of Plaintiffs' specific objections.

In their reply, Plaintiffs readily concede they cannot avail themselves of Rule 45, which is why they do not try to fit within the strictures of a motion to quash. Instead, they seek a ruling that insofar as the subpoena seeks documents outside the narrow bounds of relevance BCBSKS has advocated, or infringe on Plaintiffs' privilege, or require time-consuming review, it imposes

---

[26] ECF No. 189 at 5 (quoting *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter of Haverstraw, Inc.*, 211 F.R.D. 658, 662 (D. Kan. 2003)).
[27] ECF No. 189 at 7-10.
[28] *Id.* at 6-7.

an undue burden on Plaintiffs. It is unclear whether Plaintiffs are abandoning any argument that undue burden also falls on Stormont. But in part because the Court finds merit in Plaintiffs' asserted need for protection from undue burden, the Court need not consider whether Plaintiffs may seek a protective order for the purpose of protecting Stormont.[29]

"[A] party may move for a protective order to protect *itself* from 'annoyance, embarrassment, oppression, or undue burden or expense,' regardless of whether the moving party is seeking to prevent disclosure of information by a nonparty, as long as the moving party can tie the protected information to an interest listed in the rule, such as annoyance, embarrassment, etc."[30]  Indeed, case law in this District states the party moving for a protective order, even in relation to a third-party subpoena, must assert the movant needs protection from one or more of the dangers listed in Rule 26(c).[31]

## B.      Rule 26(b)(2)(C)

A court is required to limit the extent of discovery otherwise allowable if it determines the proposed discovery is outside the scope permitted by Rule 26(b)(1).[32]  Matters falling outside

---

[29] Plaintiffs cite cases from other districts where a party has been allowed to employ Rule 26 to seek relief from the burden imposed on the subpoenaed non-party. *See* ECF No. 216 n.10. Support also exists in this district. *See, e.g., Wichita Firemen's Relief Ass'n v. Kansas City Life Ins. Co.*, No. 11-1029-KGG, 2012 WL 3245451, at *3-5 (D. Kan. Aug. 8, 2012); *Hunsaker v. Proctor & Gamble Mfg. Co.*, No. 09-2666-KHV, 2010 WL 5463244, at *3-7 (D. Kan. Dec. 29, 2010).

[30] *Firetrace USA, LLC v. Jesclard*, No. CV-07-2001-PHX-ROS, 2008 WL 5146691, at *2 (D. Ariz. Dec. 8, 2008) (quoted with approval in *Martley v. City of Basehor, KS*, No. 19-02138-DDC-GEB, 2020 WL 4334984, at *3 (D. Kan. July 28, 2020)).

[31] *See McDonald v. Kellogg Co.*, No. 08-2473-JWL, 2009 WL 10664465, at *2-3 (D. Kan. Nov. 5, 2009) ("Plaintiffs are seeking relief in the form of a protective order but have not asserted that a protective order is needed to protect them from any of the dangers listed in Rule 26(c)."); *Epling v. UCB Films, Inc.*, No. 98-4226, 2000 WL 1466216, at *2 (D. Kan. Aug. 7, 2000) (finding Rule 26(c) inapplicable where defendant sought a protective order regarding discovery sought from a third party but could not demonstrate that defendant would suffer annoyance, embarrassment, oppression, or burden).

[32] *See McKellips v. Kumho Tire Co., Inc.*, 305 F.R.D. 655, 667 (D. Kan. 2015) ("Under Rule

the scope of Rule 26(b)(1) include those not proportional to the needs of the case considering the importance of the discovery in resolving the issues, and those in which the burden or expense of the proposed discovery outweighs the likely benefit.[33]  The duty exists irrespective of a motion, as the rule imposes the requirement on a court either "[o]n motion or on its own."[34]  Relatedly, the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b) and Rule 34.[35]

### C.      Undue Burden and Proportionality

Whether under the Court's inherent authority and its obligation to limit the extent of discovery pursuant to Rule 26(b)(2)(C), or under the scope of a protective order as requested by Plaintiffs, it is necessary to examine whether the subpoena imposes undue burden. And the Court must examine whether the proposed discovery is proportional to the needs of the case.

Having ruled on numerous discovery disputes in this case, including a motion challenging another third-party subpoena BCBSKS served, the Court is familiar with the party's historical positions. Relevant to this motion is BCBSKS's consistent position that Judge Teeter's ruling on BCBSKS's Rule 12(b)(1) and Rule 12(b)(6) motions to dismiss Plaintiffs' original complaint[36] requires a very narrow view of relevance.[37]  From the beginning, the undersigned

---

26(b)(2)(C)(iii), the court must limit the extent of discovery otherwise allowed if 'the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.'") (quoting Fed. R. Civ. P. 26(b)(2)(C)(iii)).

[33] *See* Fed. R. Civ. P. 26(b)(1).

[34] Fed. R. Civ. P. 26(b)(2)(C).

[35] *Martinelli v. Petland, Inc.*, No. 10-mc-407-RDR, 2010 WL 3947526, at *3 (D. Kan. Oct. 7, 2010) (internal citations omitted); *Martin v. Grp. 1 Realty, Inc.*, No. 12-2214-EFM-DJW, 2013 WL 3322318, at *2 (D. Kan. July 1, 2013).

[36] ECF No. 69.

[37] *E.g.*, Defendants' Response to Plaintiffs' Motion to Compel and Extend the Scheduling Order (ECF No. 104) at 23( "[T]here is simply no legal or factual bases for suggesting that *each and*

has echoed Judge Teeter's view.[38]  During the first discovery conference in this case, the Court required Plaintiffs to withdraw their First Set of Interrogatories and First Set of Requests for Production they had served before Judge Teeter ruled on the motions to dismiss. In drafting replacement discovery requests, the Court directed Plaintiffs to abide by Judge Teeter's ruling.[39] When BCBSKS resisted discovery related to "the Washburn claims" because of the number of claims that would encompass,[40] the Court found Rule 26 proportionality required narrowing Plaintiffs' requests where the discovery was intended to require BCBSKS to individually review each Washburn claim.[41]  Similarly, the Court narrowed the time frame for relevant discovery. Plaintiffs advocated in favor of a time period of February 26, 2016 through trial, while BCBSKS believed the relevant period should be March 1, 2017 to April 30, 2018.[42]  The Court determined the appropriate period is January 1, 2017 to April 18, 2019, ending on the date Plaintiffs filed their amended complaint.[43]  And with respect to many of Plaintiffs' interrogatories and document requests regarding the Washburn claims, the Court directed Plaintiffs to choose 100 of those claims which significantly narrowed BCBSKS's duty to respond.[44]

---

*every* one of the 6,241 'Washburn Claims,' as well as *any and all* information and documents from BCBSKS's approximately *1,500 employees* that conceivably have any connection [to] one of those 6,241 claims (even the claims that were processed and paid by BCBSKS), is somehow relevant to Vivature's fraud, defamation, and tortious interference with existing contract claims as limited by the Court's Order.").

[38] *E.g.,* Order dated February 14, 2020 (ECF No. 86) at 2 ("[R]elevance will be determined narrowly in light of Judge Teeter's rulings and Defendant's answer."); Order dated April 16, 2020 (ECF No. 92) at 2 ("Also, both sides are well aware of Judge James's oral and written statements that she will determine narrowly what is relevant in light of Judge Teeter's rulings and Defendant's answer.").

[39] ECF No. 86 at 2.

[40] ECF No. 92 at 3.

[41] *Id*. at 4.

[42] The parties stated these positions in submissions to the Court.

[43] ECF No. 92 at 5.

[44] *See* Order dated July 13, 2020 (ECF No. 125).

In stark contrast to its position in favor of narrowing the field of discovery Plaintiffs should be allowed to conduct, the subpoena BCBSKS served on Stormont casts a wide net. For instance, the subpoena defines "Washburn Claims" to mean "the insurance claims, individually and/or collectively, submitted by Vivature/Orchestrate to BCBSKS relating to Washburn University or 'Washburn University Sports Medicine.'"[45]  Under this definition, the subpoena would encompass nearly 5,700 insurance claims.[46]

Similarly, in response to a motion to compel previously filed by Plaintiffs, BCBSKS objected to a Request for Production asking for "[c]ommunications alleging, claiming, or suggesting that any of the Washburn Claims were fraudulent" because "Vivature's Request No. 6—on its face—is unduly burdensome and not proportional to the needs of this case."[47] BCBSKS likewise objected that discovery on "[t]he individual decisions on 6,241 insurance claims to which Vivature is not a party have nothing to do with whether Ms. Holmes made a fraudulent representation during the October 17, 2017 telephone call. . . . This information is relevant only to Vivature's attempts to investigate potential wrongful denial of insurance benefits claims—claims which are not part of the litigation and which Vivature cannot assert."[48]  Indeed,

---

[45]  Definition ¶10, ECF No. 251 at 35.

[46]  Defense counsel provided this number in a letter dated March 27, 2020 to Plaintiffs' counsel, which the parties provided to the Court.

[47]  ECF No. 104 at 30-31. BCBSKS continued: "To sufficiently search and review documents that do not specifically reference Washburn University, Vivature, or the applicable providers would require that BCBSKS review all documents during the time frame identified by the Court in its April 16, 2020 Order because they might contain some information (regardless of how relevant or material that information actually is to the claims or defenses in this lawsuit) regarding general claim submissions, processing, or payments. Requiring BCBSKS to engage in this effort would be unduly burdensome. First, documents which contain the type of information encompassing submissions, payments, and denials, are kept in various departments, within numerous repositories. Second, the data requested would be contained in multiple sources, including email archives, local computer drives, numerous different databases, network drives, etc."

[48]  *Id*. at 25.

BCBSKS repeatedly sought to significantly limit any discovery of its alleged fraudulent representations to the single phone call on which Judge Teeter allowed Plaintiffs' fraud claim to proceed.[49] Yet the subpoena contains four requests, each with five sub-parts, for documents related to these same insurance claims, as well as expansive categories of requests for documents making any mention of fraud or fraudulent activities.[50]

BCBSKS objected to Plaintiffs' request seeking "[d]ocuments and correspondence evidencing or mentioning [BCBSK's] payment or processing of the Washburn Claims" on various grounds including undue burden and not being proportional to the needs of the case.[51] Yet in nearly two dozen requests, BCBSKS calls on Stormont to produce documents related to any insurance claim submitted by either Plaintiff to BCBSKS.[52] Bearing in mind the only insurance claims BCBSKS mentions in relation to Stormont are for Washburn athletes, these expansive requests are not proportional.

In an earlier ruling on a motion to compel filed by BCBSKS, the Court rejected BCBSKS's argument that "what Mr. Portela heard, thought, believed, or knew before, during,

---

[49] *Id. passim* (requests have "nothing to do with whether Ms. Holmes made a fraudulent representation during the October 17, 2017 telephone call.").

The Court notes Judge Teeter's recent confirmation that the fraud claim asserted in Plaintiffs' Seconded Amended Complaint (ECF No. 194) is unchanged from the one that survived BCBSKS's Motion to Dismiss as set forth in her order dated November 26, 2019 (ECF No. 69). *See* Memorandum and Order (ECF No. 244) at 3 ("Blue Cross now moves to dismiss what it suggests is an expanded fraud claim in the second amended complaint. But Vivature clarifies that it has not added any new allegations of fraud. . . . Because Vivature represents that its fraud claim is unchanged, the Court reiterates its holding that Vivature has adequately stated a fraud claim based on the October 17, 2017 call. Doc. 69 at 10.").

[50] *E.g.*, ECF No. 251 at 40-41 (Request Nos. 25-28 seeking documents mentioning, discussing, or suggesting any of the Washburn Claims were "fraudulent" or "false," any insurance claim submitted by Vivature or Orchestrate to BCBSKS was "fraudulent" or "false," any insurance claim submitted by Vivature or Orchestrate that contains the NPI number of any Stormont Vail doctor was "fraudulent" or "false," Vivature or Orchestrate committed fraud, and/or Vivature or Orchestrate fraudulently submitted claims).

[51] ECF No. 104 at 42-43.

[52] *Id.* at 43-44.

and after the October 17, 2017 call is directly relevant (and in fact likely dispositive) to Vivature's fraud claim."[53]  The Court found BCBSKS has no basis to know if or how communications between Mr. Portela and employees of Plaintiff are relevant to Vivature's reliance on allegedly fraudulent statements made by BCBS during the October 17 call, and even less of a reason to say the communications are outcome determinative. But BCBSKS's subpoena directs Stormont to produce several categories of documents that would include communications between Mr. Portela and his clients, Mr. Portela and Washburn, and Mr. Portela and third parties, arguing again they are relevant to Plaintiffs' fraud claims and to BCBSKS's defense that Plaintiffs' claims are barred in whole or in part because of Vivature's own actions and omissions and Vivature's fraud.[54]

This litany of differences between positions BCBSKS has taken in earlier discovery disputes and the position it now takes to justify the scope of the Stormont subpoena explains in part the Court's finding that Rule 26(b)(2)(C) and Rule 26(c) require the subpoena to be limited. In addition, the Court finds Stormont will be subjected to undue burden if forced to produce all requested materials.

### D.      Specific requests

The Court finds those portions of Request Nos. 4 to 7 seeking documents related to anything other than the Washburn Claims – as that term has been defined by the Court, and not as defined by this subpoena – are not proportional to the needs of the case.

---

[53] ECF No. 196 at 9 (quoting ECF No 147-1 at 30.
[54] *See* ECF No. 251 at 20-21.

The Court finds those portions of Request Nos. 12 to 15 and 21 to 24 seeking documents related to anything other than the Washburn Claims – as that term has been defined by the Court, and not as defined by this subpoena – are not proportional to the needs of the case.

Request No. 16 is disproportional to the extent it seeks documents concerning anything other than the Washburn Claims, as that term has been defined by the Court. It is likewise disproportional in its request for documents "referring to" any monetary payments, or documents sent or received from "any other third party" not specifically mentioned therein. Finally, the request is disproportional with respect to any dates outside of January1, 2017 to April 18, 2019.

The Court has outlined above the inconsistency in BCBSKS's positions on relevancy related to the fraud in this case. Request Nos. 25 to 28 go far beyond what BCBSKS claims is relevant in Plaintiffs' discovery requests, but more to the point these requests are disproportional to the needs of the case in light of Judge Teeter's rulings on BCBSKS's motions to dismiss Plaintiffs' complaint. These requests are disproportional with respect to any dates outside of the period from January 1, 2017 to April 18, 2019.

Request Nos. 29 to 33 direct Stormont to produce internal correspondence and internal communications "mentioning, discussing, or referring to" BCBSKS, BCBSND, Washburn University and/or Washburn University Sports Medicine, either Plaintiff, or Jose Portela related to the Washburn Claims and/or any insurance claim submitted by either Plaintiff to BCBSKS and/or any insurance claims submitted by either Plaintiff that contains the NPI number of any Stormont doctor. These requests are so overbroad as to lack proportionality to the needs of the case, and the Court finds the burden of producing documents that mention, discuss, or refer to a subject far outweighs any value the documents might have.

13

Similarly, Request Nos. 34-38 direct Stormont to produce documents evidencing or referring to any internal meeting or internal telephone call during which BCBSKS, BCBSND, Washburn University and/or Washburn University Sports Medicine, either Plaintiff, or Jose Portela were discussed, mentioned, or referred to in relation to the same subjects as those listed in Request Nos. 29-33. These requests are likewise so overbroad as to lack proportionality to the needs of the case, and the Court finds the burden of producing documents that mention, discuss, or refer to a subject far outweighs any value the documents might have.

Request Nos. 39 to 42 all relate to the BCBSND Letter, the state court lawsuit, and/or this action. To the extent these requests would require Stormont to conduct a search for documents sent to or received from Jose Portela, any third party not specifically listed, or other insurance companies, they are not proportional. Moreover, the requests for meeting and telephone call documents shall be limited to those evidencing the meetings and telephone calls, and the requests for correspondence and communications shall be limited to those whose subject is the BCBSND Letter, the state court lawsuit, and/or this action. Finally, these requests are disproportional with respect to any dates outside of the period from January 1, 2017 to April 18, 2019.

Request Nos. 43 to 46 seek documents relating to either Plaintiffs' legal authority to (a) submit insurance claims on behalf of any Stormont Vail doctor, (b) submit insurance claims using the NPI number of any Stormont Vail doctor, and/or (c) receive any fee, commission, or other payments for professional services rendered by any Stormont Vail doctor. Plaintiffs have repeatedly disavowed they are asserting a cause of action for denial of claims. However, mere denial of claims is not the focus of these requests. The Court will allow these requests, with the following limits. Request Nos. 43 and 44 are limited to correspondence and communications in which the subject is Plaintiffs' legal authority to perform the functions described in (a,), (b), or

(c).   Request Nos. 45 and 46 are limited to documents evidencing meetings and telephone calls. Request Nos. 44 and 45 shall be limited to those whose subject is Plaintiffs' legal authority to perform the functions described (a,), (b), or (c). Documents sent to or received from Jose Portela, any third party not specifically listed, and other insurance companies are not to be produced in response to Request Nos. 44 and 45. All are limited to the period from January 1, 2017 to April 18, 2019.

One more issue bears noting. Plaintiffs relate in several instances BCBSKS's failure to respond in their meet-and-confer sessions to Plaintiffs' requests to explain the relevance of various requests. BCBSKS does not address the failure, yet its filing includes arguments in favor of relevance. To the extent BCBSKS may complain the Court has not fully considered its response – and the Court believes it has – the Court will not overlook the obligation to meet and confer in good faith.

## IV.   Conclusion

The Court sustains certain of Plaintiffs' objections and enters a protective order limiting the subpoena as set forth above. Within 14 days of the date of this order, unless Stormont has filed a motion to quash the subpoena, Stormont shall make available to BCBSKS those documents it deems responsive to the requests as limited by this order.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Protective Order and Objections to Defendant's Subpoena on Stormont-Vail Healthcare, Inc. (ECF No. 189) is granted in part and denied in part.

**IT IS FURTHER ORDERED** that within fourteen (14) days of the date of this order, Stormont shall make available to BCBSKS those documents it deems responsive to the requests at issue as limited by this order.

**IT IS SO ORDERED.**

Dated this 27th day of April, 2021, at Kansas City, Kansas.

Teresa J. James
U. S. Magistrate Judge