IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ORCHESTRATE HR, INC, et al.,

Plaintiffs,

v.

BLUE CROSS BLUE SHIELD KANSAS,

Defendant.

Case No. 5:19-cv-04007-HLT-TJJ

MEMORANDUM AND ORDER

Plaintiffs Orchestrate HR, Inc. and Vivature, Inc. (collectively "Vivature") filed this diversity action against Defendant Blue Cross Blue Shield Kansas and assert various tort claims. Currently before the Court is Blue Cross's motion to dismiss Vivature's third amended complaint. Doc. 277. As discussed below, the Court finds Vivature has plausibly stated additional claims for defamation, tortious interference, and fraud by nondisclosure and denies Blue Cross's motion.

I.   BACKGROUND

Generally stated, the allegations in this case involve Vivature's work with universities to help them bill insurers for medical services performed by the universities' licensed athletic trainers. Vivature contracts with schools and helps them file the insurance claims and receives a share of the billings collected. This dispute arose when Blue Cross denied many of the claims submitted by Vivature for the universities and began labeling the insurance claims as fraudulent or improper. Vivature contends that Blue Cross fraudulently induced it to change its claims-filing practices on a promise that claims would be paid, defamed Vivature to its clients, tortuously interfered with Vivature's contracts, and fraudulently failed to disclose certain information.

The complaint is now on its fourth version. In the third amended complaint, Vivature asserts claims for fraud, defamation, tortious interference with contract, and fraud by

nondisclosure. Doc. 262. The Court previously granted in part and denied in part a prior motion to dismiss the first amended complaint and a prior motion to dismiss the second amended complaint. *See* Docs. 69 and 244.[1] Briefly stated, the Court's prior rulings have limited the claims in this case to certain discrete events, statements, and contracts. *See* Doc. 69 at 1-2, 19; *see also* Doc. 244 at 1.

Undeterred, Vivature sought and was granted leave to file a 111-page third amended complaint that asserts somewhere between four and several hundred claims for fraud, defamation, tortious interference with contract, and fraud by nondisclosure. *See generally* Doc. 262. Blue Cross moves—again—to dismiss the third amended complaint, raising over a dozen arguments against the claims asserted in the third amended complaint. Blue Cross clarifies that it is only seeking dismissal of newly asserted claims and not those previously allowed. Doc. 278 at 4 n.12.

## II.   STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible if it is accompanied by sufficient factual content to allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotations omitted). In

---

[1] As the Court noted in its prior order, this case has spawned significant motion practice in addition to these motions to dismiss and consumed an inordinate amount of judicial resources. *See* Doc. 244 at 2 n.1.

undertaking this analysis, a court accepts as true all well-pleaded allegations in the complaint, though it need not accept legal conclusions. *Id.* Likewise, conclusory statements are not entitled to the presumption of truth. *Id.* at 678-79.

## III.   ANALYSIS

Blue Cross moves to dismiss the newly asserted claims in Vivature's third amended complaint, which include additional claims of defamation, tortious interference with contract, and fraud by nondisclosure. Vivature's claim of fraud is not challenged.

### A.   Defamation

"The elements of defamation under Texas law[2] are that: (1) the defendant published a statement; (2) that was defamatory concerning the plaintiff; (3) while acting with malice, if the plaintiff was a public figure, or negligence, if the plaintiff was a private individual, regarding the truth of the statement." *Encompass Office Sols., Inc. v. Ingenix, Inc.*, 775 F. Supp. 2d 938, 958 (E.D. Tex. 2011). Defamation is not subject to the Rule 9(b) standard for pleading, but "pleadings for a defamation claim must be sufficiently detailed to the extent necessary to enable the defendant to respond." *Id.*; *Garcia v. Tyson Foods, Inc.*, 890 F. Supp. 2d 1266, 1270 (D. Kan. 2012) (holding that a defamation claim must supply "sufficient notice of the communications complained" of (internal quotation and citation omitted)).

The Court has previously permitted a defamation claim based on a March 7, 2018 letter. Doc. 244 at 7; Doc. 69 at 19. The additional defamation claims Vivature attempted to assert in the second amended complaint were previously dismissed because Vivature only included examples of defamatory statements by reference to Bates numbers, and failed to otherwise allege what was contained in the documents or to whom the statements were made. Doc. 244 at 6-8. The primary

---

[2]   Texas law substantively governs this case. *See* Doc. 69 at 8-9.

problem with the defamation claims in the second amended complaint was that the substance of all the newly added claims were incorporated by reference to 1500 pages of exhibits. *Id.* at 8.

In the third amended complaint, the defamation "claim" spans 60 pages. Vivature alleges Blue Cross made "numerous statements to third parties . . . all of which are reasonably capable of a defamatory meaning" as to Vivature. Doc. 262 at ¶ 70. Vivature then lists 21 "communications," including the author, recipients, date sent, the alleged defamatory statement made, and how the statements were defamatory. *Id.* ¶ 73. Vivature also alleges that Blue Cross communicated to other Blue Cross entities that the insurance claims submitted by Vivature were fraudulent by affixing a U602 code on each claim. *Id.* at ¶¶ 76-79. Vivature alleges "the U602 code is used to designate a claim as being the result of fraud and abuse." *Id.* ¶ 79. The third amended complaint then lists 144 "U602 Communications," including the Blue Cross employee author, the Blue Cross entity institutional recipient, and approximate date. *Id.* ¶ 83. Vivature also alleges that Blue Cross filed a complaint with the Kansas Insurance Department in or around March 2017 and held a meeting with the same on May 8, 2017, and that by "reasonable conclusion" it believes defamatory allegations were made. *Id.* ¶ 87. Finally, the third amended complaint lists four letters and identifies the date, author, recipient, and what allegedly defamatory statement they contained. *Id.* ¶ 92.[3] Vivature contends that each of these statements caused it to suffer reputational and monetary damages, *id.* ¶ 86, and that Blue Cross failed to act with reasonable care in making these

---

[3] Blue Cross makes a brief argument in its reply brief that these four letters are effectively identical to a letter that the Court previously ruled was outside the statute of limitations. Doc. 286 at 17; *see also* Doc. 69 at 12. Although Blue Cross's motion alleges generally that all of Vivature's claims are outside the statute of limitations, it doesn't appear that it raised this specific argument until its reply brief that some of the claims should be dismissed based on the Court's previous rulings. Arguments made for the first time in a reply brief are generally not proper, and the Court declines to address on the current record whether any of Vivature's amended claims are subject to dismissal based on the law of this case, or whether the discovery rule is applicable to those claims. The Court cautions Vivature, however, that attempts to resurrect claims previously dismissed, or claims functionally identical to claims previously dismissed, will not be well-taken.

statements, *id.* ¶ 93. Given these allegations, the Court finds the third amended complaint plausibly alleges defamation.[4]

Blue Cross argues that Vivature's defamation allegations do not provide it with sufficient detail to respond. The Court finds this hard to believe given the 60 pages of allegations. Given that the previous iteration of the complaint only alleged general categories of statements made to general categories of institutional recipients, leaving the rest of the details in 1500 pages of attachments, the third amended complaint, which literally lists all the communications at issue, includes sufficient detail to put Blue Cross on notice of what it is defending against.[5]

Blue Cross also argues that Vivature has not alleged how the U602 Communications and letters are capable of defaming it. Doc. 278 at 15-17. But the third amended complaint plainly alleges that the U602 code denotes fraud, and the letters referenced misrepresentations by Vivature.

Finally, Blue Cross argues that "Texas law requires the plaintiff to plead and prove proximate causation of special damages as an essential element of its claim." *Id.* at 18 (emphasis omitted). But as Vivature points out, nothing must be proved at this stage, only pleaded.[6] And as explained above, Vivature has alleged these statements caused it to suffer reputational and monetary damages. This is sufficient at this stage, and Blue Cross's conclusory arguments to the contrary are not persuasive. Blue Cross's motion on this point is denied.

---

[4] Judge James concluded that Vivature's defamation claims were not subject to exclusion on futility grounds when she granted leave to file the third amended complaint. Doc. 261 at 9.

[5] Although the third amended complaint includes some of the less specific allegations previously deemed insufficient, Vivature has added information that nudges its allegations across the line of plausibility. *See Iqbal*, 556 U.S. at 680.

[6] Blue Cross further argues that "Vivature was in fact required to plead and prove proximate causation of special damages to either prevail on certain types of defamation claims or recover the special damages allegedly caused by the complained of statements . . . ." Doc. 278 at 19 (emphasis added). To be sure, Vivature faces a high hurdle in proving the massive case it has now managed to bring. But at this stage, Vivature is not prevailing or recovering on any claims. The issue is only whether it has plausibly stated claims, which it has.

### B. Tortious Interference with Contract

The Court previously dismissed Vivature's tortious-interference claims as to schools other than Washburn because the existence of other contracts was only briefly mentioned in a footnote and there were no specific allegations about how Blue Cross interfered with those other schools' contracts. Doc. 244 at 9.

Under Texas law, "[t]he elements of tortious interference with a contract are (1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss." *McGehee v. Hagan*, 367 S.W.3d 848, 854 (Tex. App. 2012).

In the third amended complaint, Vivature has moved the allegations regarding its contracts with schools other than Washburn out of a footnote, asserting that, in addition to Washburn, Vivature had contracts with Emporia State University, Allen County Community College, Benedictine College, Pittsburg State University, Midamerica Nazarene University, Tabor College, Kansas Wesleyan University, Southwestern College, McPherson College, Baker University, Fort Hays University, and Newman University. Doc. 262 at ¶¶ 103-115. Each paragraph states the approximate date the contracts were entered into and asserts that, under each contract, Vivature agreed to provide credentialing, billing, and medical claims assistance for each school. *Id.* Vivature alleges Blue Cross willfully and intentionally interfered with these contracts by "[d]esigning a scheme of claims handling and misinformation" designed to cause the schools to stop doing business with Vivature, *id.* ¶ 118.a. (alleging a scheme that targeted Vivature's claims for disparate treatment, automatically denied all claims, required unnecessary paperwork, refused to communicate with Vivature, misled Vivature and its clients, and sent payments directly to the insured instead of Vivature, the provider, or the schools); sending "incomplete and useless

6

communications" to Vivature, *id.* ¶ 118.b.; refusing to provide claims information; delaying or not processing claims; and making defamatory statements about Vivature to the schools. *See generally id.* ¶ 118. Vivature alleges these acts "were taken in relation to all of [its] contracts listed" in the third amended complaint. *Id.* ¶ 119.

Vivature further alleges that Blue Cross has admitted that it was targeting Vivature and segregating all claims submitted by Vivature on behalf of the schools, and that the "scheme" resulted in essentially all the claims being denied. *Id.* ¶ 120. Vivature contends these actions caused at least three schools (Baker, Fort Hays State, and Newman) to prematurely terminate their contracts with Vivature, which has caused a direct loss of profits for Vivature and damage to its reputation. *Id.* ¶ 121.a. As to the other schools, it has caused them to breach their contracts by either not billing or making fewer claims available for billing by Vivature. *Id.* ¶ 121.b.

The Court finds this sufficiently states a claim of tortious interference with each of these contracts under the standard outlined above.[7] Blue Cross's arguments to the contrary are not persuasive and its motion on this point is denied.

### C.     Fraud by Nondisclosure

The Court previously dismissed Vivature's fraud-by-nondisclosure claim because it failed to plead the significance of the nondisclosed facts or why Blue Cross had a duty to disclose them. Doc. 244 at 5.

The elements of fraud by nondisclosure are: (1) concealment or nondisclosure of material fact within a party's knowledge; (2) knowledge that the other party was unaware of the fact and could not discover the truth; (3) intent to act by concealment or nondisclosure of the fact; and (4) injury caused by the nondisclosure. *NuVasive, Inc. v. Renaissance Surgical Ctr. N., L.P.*, 853 F.

---

[7]     Judge James found likewise. Doc. 261 at 9-10.

Supp. 2d 654, 663 (S.D. Tex. 2012). "In order to be actionable, a claim for fraud by nondisclosure requires there to have been a duty to disclose." *Id.* at 661. Thus, to plead fraud by nondisclosure, a plaintiff must show a failure to disclose facts, a duty to disclose those facts, and that the facts were material. *EC & SM Guerra, LLC v. Philadelphia Indem. Ins. Co.*, 2020 WL 6205855, *3 (W.D. Tex. 2020).

The third amended complaint includes many of the allegations previously deemed insufficient. *See, e.g.*, Doc. 262 at ¶ 125. In general, it alleges that Blue Cross failed to disclose eight material facts, which all generally relate to Blue Cross's conclusion that Vivature was committing fraud, that claims submitted by Vivature's providers were not being paid, and that Vivature had been singled out and was not being treated similarly to other providers. *See id.* ¶ 124. But Vivature also alleges Blue Cross had a duty to disclose these facts in light of 30 communications between Vivature and Blue Cross apparently discussing the process for submitting claims and Vivature's efforts to ensure the claims were paid. *Id.* ¶¶ 126-127. Vivature alleges that Blue Cross was engaging in these communications while concealing the fact it had already determined Vivature was committing fraud and had taken steps to ensure no claims were paid. *Id.* ¶ 128. Vivature alleges that Blue Cross had "a duty to disclose the hidden facts" because Blue Cross "voluntarily provided [Vivature] with substantial information regarding [Blue Cross's] claims process, procedures, and policies" while failing to disclose that Blue Cross "was simply just creating a moving target designed to ensure that claims would not be paid and that the relationship between [Vivature] and Washburn and Kansas Clients would be so irreparably harmed that Washburn and Kansas Clients would stop doing business with [Vivature]." *Id.* ¶ 131.

The Court finds Vivature has plausibly stated a claim of fraud by nondisclosure. The Court previously dismissed Vivature's fraud by nondisclosure claim because it failed to plead the

8

significance of the nondisclosed facts or why Blue Cross had a duty to disclose them. Here, Vivature has alleged that Blue Cross had a duty to disclose these facts because Blue Cross was instructing Vivature on how to submit claims while knowing that Blue Cross did not intend to pay them.[8] This plausibly alleges the significance of the facts and that Blue Cross had a duty to disclose them. *See Tornado BUS Co. v. BUS & Coach Am. Corp.*, 2015 WL 11120584, at *5 (N.D. Tex. 2015) (stating "a duty to disclose may arise: (1) when one party voluntarily discloses information, which gives rise to the duty to disclose the whole truth; (2) when one party makes a representation, which gives rise to the duty to disclose new information that the party is aware makes the earlier representation misleading or untrue; or (3) when one party makes a partial disclosure and conveys a false impression, which gives rise to a duty to speak").

Blue Cross also argues that Vivature failed to plausibly allege justifiable reliance and damages. Doc. 278 at 31. But the third amended complaint alleges that Vivature relied on Blue Cross to provide complete and accurate information, and had it known the nondisclosed facts, Vivature could have taken action to correct misunderstandings and misconceptions by Blue Cross, could have taken steps to modify its client's expectations, and would not have spent resources modifying the claims process. This is sufficient at the pleading stage. Blue Cross's motion on this point is denied.

### D.     Other Arguments

Blue Cross's motion makes some additional arguments: (1) that the third amended complaint is an improper shotgun pleading and violates Rule 8; (2) that Vivature's defamation and tortious-interference claims are outside the statute of limitations; and (3) that Vivature lacks

---

[8]   Judge James concluded that Vivature's attempt to re-plead fraud by nondisclosure was not futile because the "Third Amended Complaint sufficiently identifies the significance of the alleged undisclosed facts, describes how or why Defendant was obligated to disclose those facts, and states how the alleged omissions caused injury to Plaintiffs." Doc. 261 at 10.

9

prudential standing to assert its defamation, tortious-interference, and fraud-by-nondisclosure claims because they are in reality a claim for unpaid insurance benefits. As discussed below, the Court is not persuaded to dismiss the third amended complaint based on these arguments.

### 1. Rule 8

First, Blue Cross argues that the third amended complaint violates Rule 8 and should be dismissed. Vivature acknowledges the length of the complaint, but attributes it to Blue Cross's own allegedly bad actions and repeated motions to dismiss based on arguments that it was not provided with enough specifics to discern the claims against it.

The Court acknowledges—and shares—Blue Cross's frustration with how pleadings have gone in this case. Relatively simply claims like fraud or defamation should not be so difficult to plead in accordance with applicable law. The Court also shares Blue Cross's concern that it is still not clear exactly how many claims Vivature is bringing. There are ostensibly four claims: fraud, defamation, tortious interference, and fraud by nondisclosure. But the defamation claim is based on 21 "communications," 144 "U602 Communications," and four letters, which leaves the Court wondering whether Vivature asserts one defamation claim or 170 defamation claims. The tortious-interference claim extends to 13 unique contracts ostensibly interfered with in 11 different ways, leading to the question of whether it is one claim, 13 claims, or more. These concerns, coupled with the vexatious and scorched-earth litigation tactics of both parties, leaves the Court wondering how this case will ever be resolved.

Rule 8 requires that pleadings must contain "a short and plain statement" of the claims, and allegations that are "simple, concise, and direct." Fed. R. Civ. P. 8(a)(2), (d)(1). As discussed above, Vivature has plausibly stated its claims. It has alleged facts specific to each cause of action. Although the number of claims—and, more particularly, how Vivature intends to prove them in a

10

manageable manner—is concerning, it is not difficult to discern which of Blue Cross's actions Vivature takes issue with and why. *See In re Roberts*, 2021 WL 4438744, at *3 (10th Cir. 2021) (finding that a court abuses its discretion in dismissing a complaint that is lengthy but otherwise gives a defendant fair notice of the claims asserted).

Given these considerations, and given the history of this case, including the repeatedly amended pleadings and motions to dismiss, *see supra* note 1, the Court finds that dismissal of the third amended complaint under Rule 8 would not be appropriate at this juncture or serve the interests of Rule 1. However, as discussed below, the Court intends to convene a status/scheduling conference to discuss these issues and a plan for moving this case meaningfully towards resolution.

### 2. Statute of Limitations

Second, Blue Cross argues that many of Vivature's defamation claims, and by extension any tortious-interference claims based on acts of defamation, are outside the statute of limitations when dated to the filing of the third amended complaint, that the relation-back doctrine does not apply to save them because each defamation claim is viewed independently, and that Vivature has not pleaded sufficient facts regarding the discovery rule or fraudulent concealment.

In response, Vivature argues it has adequately pleaded its tolling theories, including the application of the discovery rule. Specifically, the third amended complaint alleges that the newly asserted claims relate back to the original complaint, that the discovery rule applies because Vivature could not have known about the facts giving rise to the new claims, and that most of the facts underlying these claims were only uncovered during discovery. Doc. 262 at ¶¶ 138-144. Vivature also alleges that Blue Cross fraudulently concealed much of the conduct alleged in the case. *Id.* ¶¶ 145-147.

The statute of limitations is an affirmative defense. Fed. R. Civ. P. 8(c); *see also Spencer v. Millsap & Singer, LLC*, 2021 WL 1564596, at *3 (D. Kan. 2021). Accordingly, "to dismiss a claim pursuant to Rule 12(b)(6) on this basis it must be clear from the face of the complaint that the claims are time-barred." *Cosgrove v. Kan. Dep't of Soc. & Rehab. Servs.*, 332 F. App'x 463, 467 (10th Cir. 2009). Given these allegations, the Court concludes that it cannot determine at this stage based only on the face of the third amended complaint that some or all of Vivature's claims are time barred.[9]

### 3. Prudential Standing

Third, Blue Cross argues Vivature lacks prudential standing because its claims are indirect and derivative injuries based on the denial of insurance claims for third parties. *See Superior MRI Servs., Inc. v. All. Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015) (stating that prudential standing requires a plaintiff to assert his own legal rights and interests as opposed to those of third parties). In response, Vivature asserts that it seeks recovery for injuries directly inflicted on Vivature by Blue Cross. The Court agrees with Vivature. The third amended complaint does not assert the rights of third parties. It alleges that Vivature suffered damages because of acts of fraud, defamation, and tortious interference by Blue Cross <u>against Vivature</u>. *Compare G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 539 (7th Cir. 2012) ("The claims in the complaint, therefore, are not premised on any obligation owed directly to the plaintiffs by Continental, but rather are premised on Continental's failure to meet its obligations under the policy to pay GSMC for damages arising from the explosion."). The parties may disagree how those damages should be measured, but the rights Vivature is asserting are its own.

---

[9] Undoubtedly, Vivature will eventually have to decide how it will prove not only the merits of each of its claims, but also that they are timely. Given the unwieldy nature of this case, the Court invites—and orders, as discussed below—some deep introspection as to how this will be meaningfully and practically accomplished.

Alternatively, Blue Cross argues that, even if Vivature had prudential standing, it would be required to plead and prove that it is entitled to recover the denied benefits under an insurance policy and that Blue Cross breached the insurance contract. Blue Cross's argument on this point is brief and not entirely clear. But the Court has previously questioned the "damages model" asserted by Vivature to the extent it is based on denied insurance benefits. *See* Doc. 69 at 5. And the Court agrees with Blue Cross that this "damages model"—to the extent it is proper—might likely require proof at some point that insurance claims were wrongfully denied. But to the extent Blue Cross seeks dismissal of something at this stage based on this argument, the Court finds such argument is premature. *See id.* at 5-6 ("But the Court cannot conclude that the allegations in the case have no relationship to the underlying insurance claims . . . . [I]t is plausible that Vivature's damages could stem, at least to some extent, from the value of those business arrangements, which is in turn based on the underlying insurance claims.").

### E. Case Management

The Court again acknowledges this is a contentious case. Previous warnings to the parties about their tone and tactics have largely gone unheeded if not outright ignored. The Court again implores the parties and counsel to drop the tiresome attacks on one another, carefully review Rule 1, and proceed accordingly. To ensure this occurs, the Court is imposing some specific guidelines and rules to govern this case going forward:

**Briefing**. All future dispositive motions and briefs must adhere to a 30-page limit. All future non-dispositive and discovery motions and briefs must adhere to a 20-page limit. This is an "all in" page limit. The title page, background, facts, preliminary statement, and signature block are included in this page limit. To be abundantly clear, the entire brief from the caption to the signature block is limited to these page limits absent further order. All text must be in 12-point

Times New Roman font, including footnotes, and all margins must be one inch. The body must be double-spaced. Footnotes may be single-spaced. If the parties abuse these limits by placing an inordinate amount of briefing in the footnotes or by incorporating exhibits by reference, the Court will revise these requirements to address the abuses. The parties are strongly encouraged to carefully consider how to best use the allotted pages in a way that facilitates the substantive resolution of this case.[10]

**Scheduling**. This case is now on its fifth amended scheduling order, with a generous amount of time still left. *See* Doc. 279. Mindful of the impact this order will have on this case moving forward, and to provide an opportunity to discuss these issues more fulsomely, the Court intends to set this matter for an in-person status/scheduling conference. Lead counsel and local counsel are required to attend. The undersigned and Judge James will attend. The parties are ordered to confer in good faith within three days of this order and email both chambers with at least three dates, all prior to December 13, 2021, on which both parties are available for an in-person conference in the Kansas City courthouse. The proposed dates should be mindful of the fact that two weeks before the status/scheduling conference, the parties will be required to submit to both chambers via email a joint document, limited to five pages, outlining any proposed adjustments to the current scheduling order necessitated by this order and highlighting any major discovery issues. In preparing this document, the parties should carefully consider the reasonable

---

[10] The Court notes that all the briefs related to the instant motion to dismiss exceeded 30 pages. District of Kansas Local Rule 7.1(e) limits the argument-and-authorities section of a brief to 30 pages. Although the parties possibly conform to that convention by careful placement of "arguments and authorities" headings, the additional pages of the briefs, couched as introductions or preliminary statements, were largely used as opportunities to attack the opposing party and make thinly veiled legal arguments. To be clear, the Court is aware of the parties' actions in this case and does not need a recap of the opposing party's alleged bad actions in every filing. The Court also notes that each brief contains well over one hundred dense footnotes often containing lengthy string cites. *See* Doc. 291 at 3-4 (noting that "all parties have a history of lengthy and excessive briefing in this case which rarely improves the substance or facilitates the Court's work"). The Court imposes page limitations on future briefs to discourage this behavior and to hopefully better target the issues for resolution.

needs of this case going forward and be mindful that further amendments to the schedule beyond this final adjustment will likely <u>not</u> be granted.[11]

**Scope**. The third amended complaint is now the operative pleading in this case. But as discussed above, the scope of these pleadings is concerning, and it remains unclear how these claims can be meaningfully addressed by either party on a dispositive motion or at trial. The parties are strongly encouraged to consider mutually agreeable methods to address this concern, and in particular, how the claims and defenses will be asserted in the pretrial order. The Court will expect preciseness in the pretrial order.

**Certification**. Lead counsel and local counsel for the parties shall certify in writing that they have read: (1) this order in its entirety, including this section about case management, and (2) Federal Rule of Civil Procedure 1. The certification shall be filed within <u>three days</u> of this order. The parties are forewarned that failure to abide by any of the conditions in this order will likely result in sanctions.

## IV.   CONCLUSION

THE COURT THEREFORE ORDERS that Blue Cross's Motion to Dismiss Vivature's Third Amended Complaint (Doc. 277) is DENIED.

THE COURT FURTHER ORDERS the parties to confer in good faith and provide chambers with three dates, all prior to December 13, 2021, for the upcoming status/scheduling conference within <u>three days</u> of this order. The parties shall also submit a joint, five-page document outlining any proposed changes to the scheduling order and highlighting any major discovery issues two weeks in advance of the status/scheduling conference.

---

[11]   A trial date has not yet been set. Doc. 279 at 2. But the parties have estimated the trial will take five days. *Id.*

THE COURT FURTHER ORDERS the parties to each file within <u>three days</u> of this order a certification that they have read this order in its entirety, including the section about case management, as well as Rule 1.

IT IS SO ORDERED.

<u>Dated: November 1, 2021</u>               <u>*/s/ Holly L. Teeter*               </u>
                                            HOLLY L. TEETER
                                            UNITED STATES DISTRICT JUDGE