IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ORCHESTRATE HR, INC., et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 19-cv-4007-HLT-TJJ |
| ) | |
| BLUE CROSS AND BLUE SHIELD ) | |
| OF KANSAS, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Motion to Add Mr. Jose Portela to Plaintiffs' Custodian List (ECF No. 305). Defendant asks the Court to expand Plaintiffs' custodian list to include Mr. Portela, Plaintiffs' outside counsel of record in this case, for the purpose of discovering non-privileged documents potentially relevant to the facts giving rise to the claims and defense of the parties. Plaintiffs oppose the motion. For the reasons discussed below, the Court will deny Defendant's motion.

**I.      Relevant Background**

This motion is unusual in that it relates to discovery matters, but is not directed to an alleged deficiency in any particular discovery request, response, or production. Rather, Defendant is asking the Court to revisit its earlier rulings that Mr. Portela is not a proper custodian, asserting there is new reason to believe Mr. Portela possesses discoverable non-privileged information that Defendant cannot otherwise attain. Referring to documents produced in this case by Plaintiffs and by non-parties Washburn University and Stormont-Vail Healthcare, Inc., along with Defendant's own documents, the motion asserts Defendant has learned Mr.

1

Portela was "personally and significantly involved in the facts that form the basis"[1] of this lawsuit. Defendant does not describe the documents as having been newly produced, but instead suggests their importance arises from being "directly relevant to specific elements of Vivature's newly pleaded claims of fraud by nondisclosure, defamation, and tortious interference with existing contract."[2]

During a Status Conference with the parties, Defendant previewed its intention to file this motion when counsel asserted that "volumes of documents" have been produced by Plaintiffs and third parties that "strongly indicate that there was a significant period of time where Mr. Portela was involved in the factual issues that are in the underlying dispute."[3] Defense counsel offered to supply examples of "[t]he communications, the business communications between Mr. Portela and third parties directly about these issues, directly about [Blue Cross and Blue Shield of Kansas, Inc.] . . . that would fall squarely within our request[s] that have been modified but have been allowed."[4] Mr. Portela asked the Court to require Defendant to identify any of the communications counsel was describing that were between BCBSKS and only Mr. Portela, because Plaintiffs did not intend to make a claim based on such communications and would likely "agree to drop" any claim in which that occurred.[5] The Court confirmed Defendant's motion would need to identify the specific communications that provide the support for Defendant's request, and defense counsel reiterated his earlier statement indicating identifiable communications exist.

---

[1] ECF No. 305 at 2.

[2] *Id.* at 6.

[3] ECF No. 306 at 15.

[4] *Id.* at 16.

[5] *Id*. at 20-21.

## II. Legal Standard

Fed. R. Civ. P. 26(b)(1) provides the general limits on the scope of discovery, limiting discovery to information, including ESI, that is "relevant to any party's claim or defense and proportional to the needs of the case." This proportionality standard requires consideration of the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.[6] Discovery of ESI—especially in cases where the parties anticipate a large amount of ESI to be searched, reviewed, and produced—makes proportionality considerations particularly significant.[7] Recognizing this, early in the case the parties agreed, with respect to the review and production of ESI, they would confer in good faith regarding the identities of ESI custodians.[8]

Relatively little legal authority exists on the standards a court should apply when parties are unable to agree on designated ESI custodians and a party seeks to compel another party to designate an additional ESI custodian or custodians.[9] Thus, after reviewing the limited legal authority that does exist and *The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*,[10] the Court

---

[6] Fed. R. Civ. P. 26(b)(1).

[7] *See The Sedona Principles*, *Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, 19 SEDONA CONF. J. 1, Principle 2, 51 (2018) (courts and parties should apply the proportionality standard embodied in Fed. R. Civ. P. 26(b)(1) when balancing the cost, burden, and need for ESI).

[8] Stipulated ESI Protocol § C.5., ECF No. 70.

[9] Notably, the Court has found no Tenth Circuit authority addressing this issue.

[10] 19 SEDONA CONF. J. 1 (2018).

has previously employed the following general principles[11] and does so again in this case.

First, "determining what is relevant and proportional under the circumstances for each matter often requires a highly fact-specific inquiry."[12] Second, absent agreement among the parties, the party who will be responding to discovery requests is entitled to select the custodians it deems "most likely to possess responsive information and to search the files of those individuals."[13] Third, unless the party's choice is "manifestly unreasonable or the requesting party demonstrates that the resulting production is deficient," the court should not dictate the designation of ESI custodians.[14] Fourth, the party seeking to compel the designation of a particular additional ESI custodian has the initial threshold burden of showing that the disputed custodian's ESI likely includes information relevant to the claims or defenses in the case.[15] This is because the party responding to discovery requests is typically in the best position to know and identify those individuals within its organization likely to have information relevant to the case.[16]

---

[11] *In re EpiPen (Epinephrine Injection USP) Mktg., Sales Practices & Antitrust Litig.*, No. 17-MD-2785-DDC-TJJ, 2018 WL 1440923, at *2 (D. Kan. Mar. 15, 2018).

[12] *The Sedona Principles, Third Edition*, 19 SEDONA CONF. J. 1, Cmt. 6.a., 119 (2018).

[13] *Firefighters' Ret. Sys. v. Citco Grp. Ltd.*, No. CV 13-373-SDD-EWD, 2018 WL 276941, at *4 (M.D. La. Jan. 3, 2018) (quoting *Mortgage Resolution Servicing, LLC v. JPMorgan Chase Bank, N.A.*, No. 15 Civ. 0293(LTS)(JCF), 2017 WL 2305398, at *2 (S.D.N.Y. May 18, 2017)).

[14] *Firefighters' Ret. Sys.*, 2018 WL 276941, at *4.

[15] *See MariCal, Inc. v. Cooke Aquaculture, Inc.*, No. 1:14-CV-00366-JDL, 2016 WL 9459260, at *2 (D. Me. Aug. 9, 2016) (plaintiffs established that ESI of defendants' CEO likely included information relevant to a claim or defense as contemplated by Rule 26(b)(1)).

[16] *See Enslin v. Coca-Cola Co.*, No. 2:14-CV-06476, 2016 WL 7042206, at *3 (E.D. Pa. June 8, 2016) ("Asking a court to compel a party to search the ESI of additional custodians is similar to asking a court to compel a party to undertake additional efforts to search for paper documents. In either case, the requesting party is second-guessing the responding party's representation that it conducted a reasonable inquiry for responsive information . . . .").

A fifth factor often considered is whether one's position as a senior executive might increase the relevance of that individual's files. *Mortgage Resolution*, 2017 WL 2305398, at *3. *See also Enslin*, 2016 WL 7042206, at *3 (rejecting the argument that specific individuals must be included as custodians by virtue of the fact they occupied senior roles in the company's

**III.     Analysis**

Defendant's motion is not based on a claim that Mr. Portela's communications fit within an exception to the attorney-client privilege or the protection afforded attorney work product. Instead, Defendant asserts Mr. Portela was personally and significantly involved in the facts that form the basis of the underlying dispute, thereby making him an agent of and imputing his knowledge to Plaintiffs without regard to privilege. According to Defendant, "there is no dispute that Mr. Portela was either privy to or otherwise had knowledge of the vast majority" of "hundreds of communications between BCBSKS and Plaintiffs" during the time in which BCBSKS allegedly fraudulently concealed facts from Plaintiffs.[17] And with respect to Plaintiffs' defamation and tortious interference with existing contract claims, Defendant describes Mr. Portela's communications with third parties as "specific discussions relating to the very facts upon which Vivature's newly asserted claims are predicated."[18]

The Court makes two preliminary observations about Defendant's effort to make it appear the case has changed significantly since the last time it sought to include Mr. Portela as a records custodian. First, Defendant's motion fails to include the list of communications evidencing counsel's assertion at the hearing that certain of Plaintiffs' fraud by nondisclosure claims are based on communications solely between Mr. Portela and Defendant.[19] Defendant's citation to the Third Amended Complaint noted above omits the rest of the quoted paragraph which identifies 30 separate "communications [which Plaintiffs allege] bestowed upon BCBSKS

---

information technology groups). That factor does not apply to this case.

[17] ECF No. 305 at 6 (quoting Third Amended Complaint (ECF No. 262) at ¶126).

[18] *Id.* at 9.

[19] Likewise, the motion does not identify which of Defendant's discovery requests Mr. Portela's communications "would fall squarely within," as counsel asserted at the hearing.

the duty to disclose the facts listed in Paragraph 124 above."[20] So although Plaintiffs' fraud by nondisclosure claim has a precatory reference to the existence of "hundreds of communications" between Defendant and Plaintiffs "regarding provider enrollment or claims handling and processing for Washburn and the Kansas Clients,"[21] Plaintiffs note that "identifying hundreds of instances of these communications would create an unruly complaint" discouraged by the District Judge.[22]

Second, contrary to Defendant's assertion, Plaintiffs added no new causes of action to the Third Amended Complaint, and with the exception of four documents that Defendant had recently produced, the Third Amended Complaint relies on no new exhibits or documents.[23]

Taken together, these observations prevent the Court from easily discerning how circumstances have changed since the Court last ruled that discovery in this case would not include a search of Mr. Portela's records. The Court therefore proceeds with its analysis using the applicable legal standards.

### A.   Whether requiring Mr. Portela to be added to Plaintiffs' Custodian List is Relevant and Proportional

Because "determining what is relevant and proportional under the circumstances for each matter often requires a highly fact-specific inquiry,"[24] the Court examines Mr. Portela's alleged

---

[20]   Third Amended Complaint (ECF No. 262) at ¶126.

[21]   *Id.*

[22]   *Id.* and n.92.

[23]   *See* Plaintiffs' Motion for Leave to File Their Third Amended Complaint (ECF No. 253) at 12 ("Other than the use of four (4) new documents which were produced by BCBSKS on February 15, 2021, the entirety of the proposed Third Amended Complaint provides information based on the very same exhibits and documents identified in the Second Amended Complaint. No new causes of action are plead.").

[24] *The Sedona Principles, Third Edition*, 19 SEDONA CONF. J. 1, Cmt. 6.a., 119 (2018).

personal and significant involvement in the underlying matters. Defendant asserts that of the 1,430 documents Plaintiffs have produced, Mr. Portela has been "identified" in more than 25% of them, including 575 documents that "reflect" correspondence and communication "involving" Mr. Portela that specifically "relate to" and "involve" the facts upon which Plaintiffs' "newly asserted" claims are predicated. And among these 575 documents, Defendant asserts more than 150 are communication between Mr. Portela with no other Plaintiff representative as a sender or recipient.[25]

The Court does not find this recitation with such generalized references provides any new relevant information. Mr. Portela has acknowledged his long-time representation of Plaintiffs, so the fact that Plaintiffs have produced documents which "identify" him or "reflect" communications involving him is not news. With respect to the 150 communications Defendant refers to with Mr. Portela that do not include a representative of Plaintiffs, Plaintiffs point out the following: (1) none of the 20 documents produced by Washburn University that are solely between Washburn and Mr. Portela pre-date litigation, and all concern the litigation including third-party discovery in this case; (2) the three Stormont-Vail documents are triplicates of a February 14, 2018 letter Mr. Portela sent to the Kansas Department of Insurance, each attached to a different internal Stormont email with no copy to Mr. Portela; (3) 80 documents solely between Mr. Portela and Defendant or a third party were produced by Plaintiffs, and most relate to scheduling conference calls; and (4) of the 48 BCBSKS documents, most were also produced by Plaintiffs, and those that were not do not list Mr. Portela as the sender or recipient. Defendant's reply brief does not dispute Plaintiffs' description of the documents.

Defendant asserts that "because Mr. Portela is not a named custodian, Vivature has not even conducted a search for [any communications between Mr. Portela and other BCBS entities,

---

[25]  ECF No. 305 at 2-3.

the Kansas Schools, or governmental agencies]."[26] This assertion is not well-founded, as Mr. Portela is the custodian of more than 600 documents Plaintiffs have produced.[27] Moreover, the exhibits Defendant attaches to its motion to demonstrate Mr. Portela's communications on behalf of Plaintiffs regarding matters relevant to this action rarely provide support. For instance, Defendant recites that in 2017, "Mr. Portela became the primary Vivature representative with whom BCBSKS communicated regarding Vivature's submission of insurance claims on behalf of the Kansas Schools."[28] The internal BCBSKS email cited to support this assertion contains no such claim. Defendant next writes that "[o]ver the course of the next year [early 2017-early 2018], Mr. Portela remained in constant communication with BCBSKS regarding Vivature's submission of insurance claims,"[29] citing emails between Mr. Portela and BCBSKS personnel including in-house counsel Shelley King. The emails were written between January 18 and 31, 2018, which hardly supports a finding of constant communication over the course of a year. Defendant then writes that in "many instances, after speaking directly with BCBSKS's business representatives, Mr. Portela would relay the information he learned, and instruct Vivature on how to submit insurance claims."[30] But the attached documents comprise two emails, one from March 2017 and another from April 2017, both of which contain the same information that BCBSKS apparently did not want Plaintiffs to submit any additional claims at that time. And Defendant portrays Mr. Portela as overseeing communications between Plaintiffs and Defendant,

---

[26] ECF No. 305 at 9.

[27] ECF No. 308 at 13-14. Plaintiffs erroneously state the parties agreed upon "Portela" being an ESI search term they would apply. As the email offered in support indicates, "Portela" was a search term to be applied to Defendant's custodians' emails. *See id.* at 25.

[28] ECF No. 305 at 3.

[29] *Id*.

[30] *Id*. at 4.

suggesting he did so impatiently, by writing the following: "Moreover, if BCBSKS had not responded to a call or email sent by another Vivature representative within a few days, Mr. Portela would be the one to 'follow-up' (often repeatedly) on behalf of Vivature."[31] The supporting documents are two sets of emails. The first set includes an email from Mr. Portela to BCBSKS, dated November 14, 2017, advising Vivature had not received a response to an email sent 11 days earlier asking for guidance. The second includes two emails from Mr. Portela to BCBSKS, dated September 27 and 29, 2017, reporting Vivature was concerned they had received no response to questions about test claims they had submitted one week earlier, despite having sent multiple follow-up emails and leaving messages. Mr. Portela copied Plaintiff representatives on these emails. So while Mr. Portela did send three emails seeking to elicit a response to inquiries from Plaintiffs, there is no indication he was the only person to do so nor that he did so repeatedly.

The Court similarly finds unpersuasive the exhibits Defendant submits to support its further contention that Mr. Portela was the primary representative of Plaintiffs in other respects. And specifically related to a complaint or referral Defendant made to the Kansas Department of Insurance regarding Plaintiffs, the attachments reveal the Department refused to disclose any information to Mr. Portela.

In sum, upon thorough examination of Defendant's arguments, the Court finds that adding Mr. Portela to the list of Plaintiffs' record custodians would not be proportional to Defendant's needs in this case, nor has Defendant demonstrated Plaintiffs' productions have been deficient because Mr. Portela is not a records custodian.

**B.     Impact of remaining factors**

While the Court's finding of lack of proportionality is a sufficient reason to deny

---

[31] *Id.*

Defendant's motion, an analysis of the other relevant factors confirms the Court's conclusion. The second factor to consider is that absent agreement among the parties, the party who will be responding to discovery requests is entitled to select the custodians it deems most likely to possess responsive information. Although Defendant asked Plaintiffs to include Mr. Portela when the parties supplemented their ESI protocol to identify records custodians and search terms, Plaintiffs declined and Mr. Portela does not appear on the parties' agreed-upon list.[32] The Court observes Plaintiffs are subject to the duty imposed by Fed. R. Civ. P. 26(e)(1) to supplement initial disclosures and responses to written discovery. Plaintiffs must supplement or correct any disclosures or responses "that in some material respect . . . [are] incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to [Defendant] during the discovery process or in writing."[33] If Plaintiffs determine a search of Mr. Portela's emails is necessary to fulfill their duty to supplement, they must do so as a matter of course.

The third factor directs that unless the party's choice is manifestly unreasonable or the requesting party demonstrates that the resulting production is deficient, the court should not dictate the designation of ESI custodians. As previously stated, Defendant has not demonstrated Plaintiffs' productions have been deficient because Mr. Portela was not a records custodian. Stated another way, Defendant does not address and therefore fails to demonstrate the likelihood that Mr. Portela is a custodian of communications it cannot obtain through other means.[34]

---

[32] ECF No. 308 at 24-25.

[33] Fed. R. Civ. P. 26(e)(1).

[34] *See Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 107 (S.D.N.Y. 2013) (party moving to compel additional proposed custodians "must demonstrate that the additional requested custodians would provide unique relevant information not already obtained").

Finally, the party seeking to compel the designation of a particular additional ESI custodian has the initial threshold burden of showing that the disputed custodian's ESI likely includes information relevant to the claims or defenses in the case.[35] Defendant has not met this burden. Despite assertions that Mr. Portela's electronic communications contain previously undisclosed relevant information, none of the exhibits to Defendant's motion were produced by Plaintiffs or third parties after August 17, 2020, when this issue was last briefed.[36] Nor does the Third Amended Complaint contain new claims.[37]

## IV.    Conclusion

Having found Defendant has not met its burden to demonstrate Mr. Portela should be added to Plaintiffs' custodian list in the absence of agreement between the parties, the Court will deny Defendant's motion. The Court will also deny Plaintiffs' unsupported request for attorneys' fees.

**IT IS THEREFORE ORDERED THAT** Defendant's Motion to Add Mr. Jose Portela to Plaintiffs' Custodian List (ECF No. 305) is **DENIED**.

**IT IS SO ORDERED.**

Dated this 21st day of March, 2022, at Kansas City, Kansas.

*Teresa J. James*
Teresa J. James
U. S. Magistrate Judge

---

[35] In its reply brief, Defendant argues Plaintiffs failed to show how adding Mr. Portela to its list of records custodians would be overly burdensome or disproportional. ECF No. 309 at 8-9. But it is Defendant who bears the burden to show its entitlement to the requested discovery.

[36] *See* ECF No. 308 at 2 n.7 (listing date each exhibit was produced).

[37] The Court finds inapplicable the cases Defendant cites to support its conclusory statement that this issue should be decided under agency law, and the argument that Plaintiffs may not use Mr. Portela as a shield is a non sequitur because Plaintiffs have consistently denied they intend to call Mr. Portela as a fact witness. *E.g., id.* at 12.