## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| ORCHESTRATE HR, INC., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 19-cv-4007-HLT-TJJ |
| | ) | |
| BLUE CROSS AND BLUE SHIELD | ) | |
| OF KANSAS,  INC., | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Request for Recusal (ECF No. 361).[1]

Defendant asks the undersigned Magistrate Judge to recuse or otherwise disqualify herself from

presiding over further proceedings in this action. Defendant asserts recusal is necessary to avoid

the appearance of partiality or impropriety and to promote confidence in the judiciary. Having

considered the motion at length, giving due regard to the statutory standards and their application

to the factual basis Defendant presents, and exercising commitment to the integrity of the federal

courts while recognizing my obligation as a judge assigned to this action, I conclude Defendant's

request is without merit and I will deny the motion.

### I.    Relevant Background

Among the damages Plaintiffs seek in this case is a sum equal to the total dollar amount

of improperly unpaid or underpaid health insurance benefit claims they submitted to Defendant

---

[1] Although self-styled as a request, Defendant appropriately filed the document as a motion and the undersigned directed Plaintiffs to treat it as such. *See* Text-Only Order dated August 3, 2022 (ECF No. 364). Plaintiffs filed a response (ECF No. 371), and Defendant filed its reply (ECF No. 377). No party requested an evidentiary hearing, and the Court agrees the motion can be decided on the papers.

on behalf of twelve colleges and universities in Kansas to whom Plaintiffs provided contractual services. Southwestern College is one of the schools.[2]   In a July 15, 2022 update to their supplemental Rule 26(a)(1) disclosures, Plaintiffs stated their actual damages. With respect to Southwestern College, Plaintiffs allege Defendant's improper actions resulted in $1,937,623.00 in improperly unpaid claims Plaintiffs submitted on behalf of the school.

If Plaintiffs recover damages, the schools will benefit. Plaintiffs' expert witness offers the following explanation:

> Vivature contracts with a school to help the school get paid for these eligible necessary medical services[3] which then provides more money to the school to spend on its athletes and students. For some schools, this source of income is not only important, but it is needed to ensure the continuity of care being provided to the athletes and students.
>
> As a result of those contracts, Vivature earns a percentage of the dollars of the claims paid and the school receives the balance of those funds. This results in revenue for Vivature and also provides the colleges and universities with funds which they can then use to provide a better collegiate experience for their students.[4]

Defendant points to this excerpt as support for its assertion that Plaintiffs are pursuing damages "at least partially on behalf of"[5] Southwestern College and the other Kansas schools. However, this assertion flies in the face of Defendant's contention that Plaintiffs may not recover any insurance benefits Defendant may owe to any school because (1) Plaintiffs have not alleged

---

[2]  Vivature and Southwestern College entered into a contract on or about June 2016 whereby Vivature agreed to provide credentialing, billing, and medical claims assistance for Southwestern College. Compl. (ECF No. 262) ¶111.

[3]  "One of the services provided by Vivature is that it works with [colleges and universities across the United States] to monetize the necessary medical services performed by its licensed athletic trainers. These trainers perform services, pursuant to a medical doctor's standing orders. As part of the services it provides, Vivature reviews a doctor's standing orders in order [to] create fields in Vivature's software for certified licensed athletic trainers to use. Those fields relate to services prescribed pursuant to a doctor's standing orders, which have been deemed medically necessary." Expert Report of Scott M. Wood (ECF No. 361-2) at 19.

[4]  *Id.* at 19-20.

[5]  ECF No. 361 at 3.

that Defendant breached its contractual or statutory obligations in administering and/or adjudicating insurance claims, and (2) Plaintiffs do not allege they are entitled to recover benefits under any school's policy.[6] "Vivature . . . has no legal right . . . to require BCBSKS to cover and pay any insurance claims Vivature submitted on behalf of the Kansas Schools, BCBSKS's insureds, or any other third party for that matter."[7]  Plaintiffs agree their "case is not predicated on an assignment of claims but instead [they seek] recovery for injury directly inflicted on Plaintiffs by BCBSKS."[8]  The Third Amended Complaint asserts claims for defamation, tortious interference, and fraud by non-disclosure.

It is a very different matter to say Southwestern College *may benefit* if Plaintiffs are successful in this action, rather than to say Plaintiffs are *pursuing damages on behalf of* Southwestern College. Indeed, it is fundamentally inaccurate to state that Plaintiffs are pursuing damages on behalf of Southwestern College or any of the Kansas schools.

On April 18, 2022, the undersigned conducted a telephone discovery conference in this case to provide guidance to the parties on Plaintiffs' objections to certain requests contained in non-party subpoenas Defendant intended to serve on each of the twelve Kansas schools.[9]  At the beginning of the conference, the undersigned informed the parties that her spouse is a proud graduate of Southwestern College and would soon become a member of the college's Board of Trustees. The undersigned also disclosed that she and her spouse have endowed a scholarship for

---

[6] *See, e.g.,* Memorandum of Law in Support of Defendant's Rule 12(b)(6) Motion to Dismiss Plaintiffs' Third Amended Complaint (ECF No. 278) at 22-24.

[7] Defendant's Reply in Support of Its Rule 12(b)(6) Motion to Dismiss Plaintiffs' Third Amended Complaint (ECF No. 286) at 15 n.52.

[8] Plaintiffs' Response to Defendant's Motion and Memorandum of Law in Support of Defendant's Rule 12(b)(6) Motion to Dismiss Plaintiffs' Third Amended Complaint (ECF No. 284) at 33.

[9] Defendant served the subpoena on Southwestern College on April 27, 2022. *See* ECF No. 354.

Southwestern College students, and in the interest of full disclosure she invited counsel to share this information with their respective clients. One week later, defense counsel sent an email asking Judge James to repeat the details of the potential issues, to which she directed the following response on the same day:

> Judge James is happy to repeat the information she shared with counsel during the telephone conference on April 18. The purpose of the conference was to discuss the requests contained in Rule 45 subpoenas Blue Cross Blue Shield Kansas intends to serve on twelve colleges and universities. In Mr. Murray's email seeking a conference, he indicated the subpoenas contain mostly identical requests, and he attached a copy of the Southwestern College subpoena as a reference point for the issues the parties had discussed.

> Before discussing any substantive issues, Judge James informed counsel that her spouse, a graduate of Southwestern College, will soon become a member of the College's Board of Trustees. In addition, Judge James and her spouse have endowed a scholarship to be awarded to students at Southwestern College. It is not an athletic scholarship.

> While Judge James found it appropriate to disclose this information to counsel and for counsel to inform their clients, she deems it immaterial to her consideration of any issues that have arisen or may arise in this case.

On July 18, 2022, Defendant filed its Request for Recusal. Plaintiffs responded and Defendant filed a reply brief in support of its request.

## II.   Legal Standards

Defendant asserts disqualification is appropriate under 28 U.S.C. §§ 455(a), (b)(4), and (b)(5)(iii). The first requires a judge to "disqualify himself in any proceeding in which his impartiality might reasonably be questioned."[10] "If it would appear to a reasonable person that a judge has knowledge of facts that would give him an interest in the litigation then an appearance of partiality is created even though no actual partiality exists because the judge does not recall the facts, because the judge actually has no interest in the case or because the judge is pure in

---

[10] 28 U.S.C. § 455(a).

heart and incorruptible."[11] The standard is an objective one. "'The test under § 455(a) is not whether the judge believes he or she is capable of impartiality.' Rather, we ask whether a reasonable person, fully informed of the relevant facts, would 'question the judge's impartiality.'"[12] The facts are to be assessed as they would appear to a "well-informed, thoughtful, and objective observer, rather than the hypersensitive, cynical, and suspicious person."[13] Moreover, "each § 455(a) case is extremely fact intensive and fact bound, and must be judged on its unique facts and circumstances more than by comparison to situations considered in prior jurisprudence."[14]

Subsection (b) sets forth specific circumstances in which recusal is required. Under subsection (b)(4), a judge must recuse when "[h]e knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding." Subsection (b)(5)(iii) requires recusal when "[the judge] or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person, is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding." The statute defines "financial interest" as "ownership of a legal or equitable interest, however small, or a relationship as director, adviser, or other active participant in the affairs of a party. . . ."[15] "To establish a 'financial

---

[11] *Liljeberg v. Health Servs Acquisition Corp.*, 486 U.S. 847, 860 (1988) (quoting *Hall v. Small Bus. Admin.*, 695 F.2d 175, 179 (5th Cir. 1983)).

[12] *Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1239 (10th Cir. 2020) (quoting *Burke v. Regalado*, 935 F.3d 960, 1054 (10th Cir. 2019)).

[13] *U.S. v. Jordan*, 49 F.3d 152, 156 (5th Cir. 1995).

[14] *Id.* at 157.

[15] 28 U.S.C. § 455(d)(4).

interest' in the subject matter in controversy, the effect of a favorable ruling must be direct rather than indirect, speculative or slight."[16]

A judge faced with a motion to recuse "is in the best position to appreciate the implications of those matters alleged in a recusal motion."[17]  Deciding the motion "requires a sensitive weighing of the circumstances in each case and is committed to the sound discretion of the . . . judge."[18]

> Faced with a motion to recuse, a "judge must carefully weigh the policy of promoting public confidence in the judiciary against the possibility that those questioning his impartiality might be seeking to avoid the adverse consequences of his presiding over their case." Under this balancing test, "a judge is as much obliged not to recuse himself" unnecessarily as he is obliged to recuse himself when necessary.[19]

## III.   Analysis

Defendant's recusal motion is based solely on the undersigned's spouse's status as a member of the Board of Trustees of Southwestern College.[20]  Defendant is correct in noting Plaintiffs' assertion that if they are successful in this action, Southwestern College could be entitled to 65 percent to 80 percent of any claimed damages recovered by Plaintiffs and attributable to Southwestern College. Defendant argues "Southwestern College, without question, has a significant and concrete financial interest in this litigation that will be directly and

---

[16] *McCann v. Commc'ns Design Corp.*, 775 F. Supp. 1535, 1541 (D. Conn. 1991) (citing *In re Placid Oil Co.*, 802 F.2d 783, 786-87 (1986)).

[17] *In re Drexel Burnham Lambert, Inc.*, 861 F.2d 1307, 1312 (2nd Cir. 1988).

[18] *In re Placid Oil Co.*, 802 F.2d at 786-87 (1986) (citing *In re City of Houston*, 745 F.2d 925, 927 (5th Cir. 1984)).

[19] *Doe v. Archdiocese of New Orleans Indem., Inc.*, No. 20-1338, 2021 WL 4460465, at *5 (E.D. La. Sept. 29, 2021) (quoting *In re Drexel*, 861 F.2d at 1312)).

[20] At the time of disclosure, the undersigned's spouse had been asked to join the Board and has since become a member.

substantially affected by the outcome of Plaintiffs' claims against BCBSKS."[21]

According to Defendant, the Supreme Court opinion in *Liljeberg v. Health Services Acquisition Corp.* involves "remarkably similar facts"[22] and supports its recusal request. Because Defendant relies exclusively on this one case, the Court examines it closely for guidance. In *Liljeberg*, Health Services Acquisition Corporation (Health Services) brought an action against John Liljeberg, Jr., seeking a declaration of ownership of a corporation known as St. Jude Hospital of Kenner, Louisiana (St. Jude). The case was tried without a jury and District Judge Collins found for Liljeberg. Ten months later, Health Services learned Judge Collins had been a member of the Board of Trustees of Loyola University while Liljeberg was negotiating with Loyola for the purchase of a parcel of land on which St. Jude would construct a hospital. "The success and benefit to Loyola of these negotiations turned, in large part, on Liljeberg prevailing in the litigation" before Judge Collins.[23]  When Health Services learned of Judge Collins's membership on the Loyola Board, it moved to vacate the judgment on the ground Judge Collins was disqualified under § 455(a) at the time he conducted the trial and entered judgment.

Following appeal and remand to a different district judge to conduct additional fact-finding, on a second appeal the Fifth Circuit concluded the appearance of impropriety was a sufficient ground to disqualify Judge Collins under § 455(a) based on the following facts. To construct and operate a hospital in Kenner as planned, Liljeberg had to obtain a state "certificate of need." He formed St. Jude for that purpose, and over the next two years St. Jude negotiated with Loyola University to purchase a portion of Loyola's land in Kenner and rezone Loyola's

---

[21]  ECF No. 361 at 8.

[22]  *Id.*

[23]  486 U.S. at 850. The remaining discussion of *Liljeberg* comes from pages 850-67.

adjoining land to greatly increase its value. Judge Collins was a member and regularly attended the meetings of Loyola's Board of Trustees, where the negotiations were regularly discussed and whose members were aware that Loyola's interest in the project depended on St. Jude obtaining a certificate of need.

At the same time, Liljeberg was also negotiating and reached an agreement in principle with Health Services[24] regarding their respective roles in developing the hospital Liljeberg wanted to build. Under the agreement, Health Services would purchase another site in Kenner and build the hospital on that land, prepare and file the application for a certificate of need, and retain Liljeberg as a hospital consultant. In turn, Liljeberg would transfer St. Jude to Health Services. Health Services executed an agreement with Liljeberg which it believed gave it title to St. Jude. But when Liljeberg successfully obtained the certificate of need (applied for by Health Services), they could not come to an agreement about the ownership of St. Jude.

Liljeberg then asked Loyola to reopen negotiations on the property purchase. Judge Collins attended the Loyola Board meeting where the Board discussed and formally approved a resolution to continue negotiations with the developers of the St. Jude Hospital, and eighteen days later Health Services filed the action against Liljeberg seeking a declaration of ownership of St. Jude. "Thus, Judge Collins had actual knowledge of the University's potential interest in the St. Jude hospital project in Kenner just a few days before the complaint was filed."[25]

Judge Collins tried the case less than two months later and immediately announced he intended to rule for Liljeberg.

Six days after the trial concluded, the Board met and discussed terms of a sale agreement

---

[24] It was actually Health Services' corporate predecessor with whom Liljeberg was negotiating, but for the sake of brevity the Court refers to the entity as Health Services.

[25] 486 U.S. at 856.

with Liljeberg, which included a provision that would void the sale if Liljeberg was unable to retain control over the certificate of need held by St. Jude. The Board's Real Estate Committee told the trustees the federal court had determined St. Jude would be awarded the certificate of need, which is what Judge Collins had announced at the conclusion of the trial. Judge Collins did not attend that Board meeting and did not read the minutes from it for nearly two months, or until eight days after he had entered judgment for Liljeberg and against Health Services. Judge Collins's findings of fact and conclusions of law from the trial credited Liljeberg's version of oral conversations that were in dispute and of critical importance to the result.

During the fact-finding conducted on remand, Judge Collins said he had forgotten about the University's interest in having a hospital constructed on its property. The district judge to whom the case was assigned on remand determined Judge Collins was not disqualified because he did not have actual knowledge of Loyola's interest in the litigation during the trial and before he entered judgment. But the Fifth Circuit reversed again, ruling that the appearance of impropriety was a sufficient ground for disqualification under § 455(a).

The Supreme Court affirmed the Fifth Circuit, finding that Judge Collins's failure to remember did not excuse him from refusing to disqualify himself and vacate the judgment after he became aware of the appearance of impropriety. The Supreme Court identified certain facts that might reasonably cause an objective observer to question Judge Collins's impartiality, including the judge's "remarkable" failure to remember the University's interest in having a hospital constructed on its property in Kenner, particularly after having regularly attended Board meetings for years where the issue was discussed. The Court also found it "remarkable—and quite inexcusable" that Judge Collins failed to recuse himself after reading the minutes of the Board's meeting that mentioned his announcement in open court at the conclusion of trial that he intended to rule in Liljeberg's favor. The Supreme Court agreed with the Fifth Circuit's conclusion Judge Collins violated § 455(a) because of the appearance of impropriety, and also

found he violated § 455(b)(4) because in his role as fiduciary he knew of Loyola's financial interest in the subject matter in controversy.

The facts in this case are not "remarkably similar" to those in *Liljeberg*. Indeed, they are drastically different. Judge Collins sat on the Board of Trustees of a university and attended meetings while the Board was actively negotiating a sale of land for more than six million dollars[26] that would also substantially increase the value of its adjacent property through rezoning. Just eighteen days before the case at issue was filed, he attended a meeting where the Board discussed negotiations relating to the potential sale, demonstrating his actual knowledge of the financial interest at stake. Although he forgot about the negotiations, he was reminded when he read minutes of the meeting which included discussion of his trial and the ongoing negotiations. Still, Judge Collins took no action to inform the parties of his involvement or to recuse while he still retained jurisdiction over the action.

In contrast, the undersigned's spouse has recently joined the Board of Southwestern College. She did not sit on the Board during the time any of the actions at issue in this case occurred. Defendant has not described any action the Board has taken or may take that would affect or be affected by rulings the undersigned has made or may make. And this points to a further significant distinguishing issue. While District Judge Collins conducted a bench trial and ruled on the merits of the case in *Liljeberg*, applying the law to the facts as he found them, the undersigned Magistrate Judge will not rule on dispositive motions or preside over the jury trial in this case. Nor will the undersigned determine the admissibility of Plaintiffs' damages evidence, including expert witness reports or testimony. Moreover, in the event Plaintiffs prevail and recover damages, any insurance claim benefits Defendant may pay to Southwestern College would be a result of a contract between Defendant and Southwestern College.

---

[26] That was the value of the land in January 1982.

A.      **Whether recusal is appropriate under § 455(a)**

After reciting the undisputed facts concerning the information the Court shared with the parties, quoting the recusal statute and case law on the standards, and describing the *Liljeberg* case, Defendant's entire argument is as follows:

> Magistrate Judge James's spouse now is, or will soon be, a member on Southwestern College's Board of Trustees. Like the situation in *Liljeberg*, Magistrate Judge James's spouse, as a trustee, undoubtedly has an interest in the well-being of Southwestern College. And like in *Liljeberg*, that interest—*i.e.*, the well-being of Southwestern College—will be substantially and directly affected by the outcome of Vivature's claims against BCBSKS (Southwestern College, if Plaintiffs are successful, could receive 65%-80% of the nearly $2 million of claimed damages Plaintiffs have currently attributed to Southwestern College). The fact that this case involves the spouse of a judge does not alter the outcome. Both § 455(b)(4) and § 455(b)(5) expressly include the judge's spouse in their prohibitions.
>
> THEREFORE, for these reasons, and as explained in *Liljeberg*, it appears that Magistrate Judge James should recuse herself under 28 U.S.C. §§ 455(a), 455(b)(4), and 455(b)(5)(iii) so as to promote confidence in the judiciary and avoid even the appearance of partiality.[27]

Defendant has not suggested or shown that the undersigned's spouse receives financial or other benefits of any kind by virtue of being a member of the Southwestern College Board. Nor has Defendant suggested or shown that Southwestern College, which is not a party to this action, might receive financial or other benefits of any kind because the undersigned's spouse is a member of its board.[28]  The Court appreciates that "the determination under § 455(a) is not mechanical, but rather a reasoned consideration of all the facts, requiring the judge to 'carefully weigh the policy of promoting public confidence in the judiciary against the possibility that those questioning his impartiality might be seeking to avoid the adverse consequences of his presiding over their case. Accordingly, courts have declined to find that recusal is necessary under § 455(a)

---

[27] ECF No. 361 at 9-10.

[28] Defendant makes no mention of the Southwestern College scholarship in its argument for recusal or disqualification under § 455(a).

based on conclusory allegations of partiality."[29]

Moreover, absent a more specific factual allegation, recusal under § 455(a) is not warranted when the basis of the argument is largely the same as the movant's § 455(b) argument. "[C]ourts have been reluctant to use § 455(a) to expand the scope of § 455(b) by finding an appearance of partiality where the circumstances fall short of § 455(b), and the party does not offer additional facts to support recusal under § 455(a)."[30]

Applying the relevant standard, the undersigned finds that a reasonable person, knowing and understanding all the relevant facts, would not conclude the Court's impartiality might reasonably be questioned. Southwestern College is not a party to this action. Defendant served a subpoena on Southwestern College more than five months ago, with a return date of four weeks later. The time for Southwestern College to move to quash the subpoena has passed, as has the time for Defendant to move to enforce the subpoena, and neither motion was filed. The undersigned will not conduct the trial in this action or rule on the admissibility of evidence, including evidence of Plaintiffs' alleged damages. The possibility that Southwestern College may benefit as a result of magistrate judge rulings in this case is remote, and rests on the speculation that an award of damages to Plaintiffs could have collateral consequences for the College on whose board the undersigned's spouse sits. Simply put, a reasonable person, fully informed of the facts, would not question the undersigned judge's impartiality. With all due respect to upholding and promoting confidence in and integrity of the judiciary, this is an instance in which recusal based on remote, contingent, and speculative results "would grant

---

[29] *Exxon Mobil Corp. v. United States*, 110 Fed. Cl. 407, 412 (Fed. Cl. 2013) (internal citations omitted).

[30] *Id.* at 413. *See Barnett*, 956 F.3d at 1241 ("We cannot conclude that the spouse's support for [the university], without more, would allow a reasonable person to question the judge's impartiality.").

litigants the power to veto the assignment of judges . . . [and] carry a worthy policy too far."[31]

The Court declines to recuse under § 455a.

### B.      Whether recusal is appropriate under § 455(b)

Defendant contends the "interest that could be substantially affected by the outcome of the proceeding" is the undersigned's spouse's interest in the well-being of Southwestern College,[32] which could receive a significant portion of the damages Plaintiffs claim are attributable to the school. Defendant is correct that recusal under § 455(b) may result from an interest held by a judge's spouse.

Case law suggests that a spouse's interest in the well-being of a non-party, which is the basis of Defendant's claim, is not the type of interest § 455(b) contemplates. Instead, "[c]ourts have said of both the 'financial' and 'other' interest described in the statute that the term 'interest' means an investment or other asset whose value depends on the outcome, or some other <u>concrete financial effect</u> (such as how much property tax a judge pays)."[33] Under that standard, the undersigned has no knowledge of an interest that would cause disqualification.

But even if § 455(b) applies to an interest that is something other than financial, the possibility that Southwestern College could receive money if Plaintiffs are successful on the merits and prove their alleged damages would not substantially affect or be of significant benefit to the undersigned's spouse. Viewing the undersigned's spouse's interest in the well-being of Southwestern College as significant enough to cause disqualification could lead to absurd results. All judges and their family members are interested in the well-being of various institutions,

---

[31] *Drexel*, 861 F.2d at 1315.

[32] Likewise, Defendant makes no mention of the Southwestern College scholarship in its argument for recusal or disqualification under § 455(b).

[33] *Archdiocese of New Orleans*, 2021 WL 4460465, at *6.

causes, businesses, sports teams, individuals, and so on. As a federal employee, the undersigned has access to a health insurance program that includes multiple insurance companies, including Blue Cross Blue Shield. Every federal employee who chooses Blue Cross Blue Shield has an interest in its well-being, hoping to obtain affordable premiums and competitive coverage. Yet it is unrealistic to think that a judge would be disqualified in this case because of the health insurer provider the judge chose.

The events at issue in this case occurred many years before the undersigned's spouse became a member of the school's Board, and as a non-party the school has no present or expected future involvement in the case. Defendant posits Southwestern College could file a lawsuit against BCBSKS "unless BCBSKS pays every future health insurance benefits claim submitted to it by Plaintiffs on behalf of" the school.[34] Not only is this assertion speculative, but it presupposes the action would be filed in this district and would have the same magistrate judge assigned to it. If filed, both the district judge and magistrate judge would be randomly assigned.

The possibility of a future action by Southwestern College against BCBSKS seems even more unlikely in light of what appears to be their lack of a contractual relationship. In connection with the parties' dispute over subpoenas Defendant issued to the Kansas schools, Defendant provided a letter dated February 14, 2017, from its Director of Professional Relations to an individual at Southwestern College Sports Medicine, informing him that BCBSKS was exercising its option to terminate its Contracting Provider Agreement with him and Southwestern College Sports Medicine effective March 16, 2017. After that time, "all payment for covered services will go to [student athletes who are BCBSKS members]." Defendant has not indicated it entered into a new Contracting Provider Agreement with Southwestern College or Southwestern College Sports Medicine since that time.

---

[34] ECF No. 377 at 5.

Southwestern College is not a party to this action. Plaintiffs do not seek an assignment of claims. The connection between rulings in this case and Southwestern College are tangential at best, and the Court finds Defendant has presented no facts or argument that present a reason to recuse under § 455(b).

### C.      Plaintiffs' Response

Although Plaintiffs filed a response as the Court requested, their position does not form the basis of the Court's decision. Plaintiffs state that after Defendant filed this recusal request, Plaintiffs contacted Defendant and offered to "withdraw their damage claim relating to Southwestern College" if Defendant would withdraw its recusal request with prejudice. Defendant declined, saying the offer does not fully resolve the issues raised in its request.[35] Accordingly, the Court has decided the motion based on the current pleadings and treating Plaintiffs' allegations as including Southwestern College.

Plaintiffs also assert Defendant's motion is untimely. The Court does not agree and does not decide the motion on that basis.

### D.      Conclusion

Recusal decisions must reflect the need to foster public confidence through judicial conduct that appears impartial and does not violate the recusal statute. But "[u]nder section 455, [a] judge is as much obliged not to recuse himself when it is not called for as he is obliged to when it is."[36]  In deciding a recusal motion, judges "must balance [their] duty to appear impartial against several practical considerations, including the availability of other judges, the cost in

---

[35] Plaintiffs' Response (ECF No. 371) at 2. In its Reply, Defendant explained its reason for saying Plaintiffs' dismissal of their claims relating to Southwestern College would not cure the underlying issues. Defendant pointed to the possibility that Plaintiffs and Southwestern College could file future lawsuits. The Court has found this speculation unconvincing.

[36] *Muchnick v. Thomson Corp.*, 509 F.3d 136, 140 (2d Cir. 2007).

judicial resources of recusal and reassignment of the case to different judges, and the interest of the parties and the public in a swift resolution of the dispute."[37]

The Court takes seriously its ethical obligations as well as its duty to perform the duties assigned within its jurisdiction pursuant to 28 U.S.C. § 636. Such considerations are particularly important in light of lagging public confidence in the judiciary and increasing cynicism about ethics. The undersigned has therefore carefully considered her ethical obligations and her duties. In this instance, no conflict exists between the two considerations.

**IT IS THEREFORE ORDERED THAT** Defendant's Request for Recusal (ECF No. 361) is **DENIED**.

**IT IS SO ORDERED.**

Dated this 3rd day of October, 2022, at Kansas City, Kansas.

Teresa J. James
U. S. Magistrate Judge

---

[37] *Id.*

16