IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**ORCHESTRATE HR, INC. and VIVATURE, INC.,**

      **Plaintiffs,**

v.

**BLUE CROSS AND BLUE SHIELD OF KANSAS, INC.,**

      **Defendant.**

Case No. 19-4007-DDC

**MEMORANDUM AND ORDER RULING
<u>PLAINTIFFS' MOTION FOR PROTECTIVE ORDER</u>**

Plaintiffs have moved for a protective order against large chunks of defendant's Third Amended 30(b)(6) Notice of Deposition (Doc. 435). Defendant opposed the motion (Doc. 455) and plaintiffs replied (Doc. 463). After summarizing the legal principles governing a protective order motion in this context, the court announces its rulings below.

**<u>Authority Guiding the Court's Decisions</u>**

Two rules apply here. Rule 26(c) governs the standard for ruling on a motion for a protective order, and Rule 30(b)(6) governs the procedure for deposing a corporation or other business organization. The court touches on each briefly.

    **A.  Rule 26(c)**

Federal Rule of Civil Procedure 26(c) governs protective orders. Generally, the "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c)(1). The court "has broad discretion to utilize such a protective order to specifically define and/or narrow the disclosure or

discovery, including the terms, timing, and method of discovery." *Parker v. Delmar Gardens of Lenexa, Inc.*, No. 16-2169-JWL-GEB, 2017 WL 1650757, at *4 (D. Kan. May 2, 2017).

### B. Rule 30(b)(6)

Federal Rule of Civil Procedure 30(b)(6) lays out the requirements for a party to provide notice to depose corporations such as Orchestrate and Vivature. Rule 30(b)(6) states in relevant part:

> In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination. The named organization must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. Before or promptly after the notice or subpoena is served, the serving party and the organization must confer in good faith about the matters for examination. A subpoena must advise a nonparty organization of its duty to confer with the serving party and to designate each person who will testify. The persons designated must testify about information known or reasonably available to the organization.

Fed. R. Civ. P. 30(b)(6).

In a Rule 30(b)(6) deposition the corporate representative speaks solely on behalf of the corporation—his testimony represents the corporation's position on a topic, not his personal opinion. *Miller v. Union Pac. R.R.*, No. 06-2399-JAR-DJW, 2008 WL 4724471, at *2 (D. Kan. Oct. 24, 2008). And, importantly, that testimony binds the corporation (as opposed to employee testimony which doesn't bind a corporation). *Id.*

"Corporations have a duty to make a conscientious, good-faith effort to designate knowledgeable persons for Rule 30(b)(6) depositions and to prepare them to fully answer questions in a non-evasive manner about the designated subject matter." *Id.* at *3 (citing *Univ. of Kan. v. Sinks*, 565 F. Supp. 2d 1216, 1226 (D. Kan. 2008)). Because Rule 30(b)(6) "explicitly requires a corporation to designate persons to testify on its behalf as to all matters reasonably

available to it," our court "has held that the Rule 'requires persons to review all matters known or reasonably available to [the corporation] in preparation for the 30(b)(6) deposition.'" *Id.* (quoting *Sprint Commc'ns Co. v. Theglobe.com, Inc.*, 236 F.R.D. 524, 527–28 (D. Kan. 2006)). Because of these requirements, the content and *specificity* of 30(b)(6) Deposition Notices is important to ensure compliance with the rule and productive discovery.

## Rulings on Plaintiffs' Motion

### A. Objections, Generally

As a threshold matter, the court need not rule on plaintiffs' "objections" to defendant's Notice of Deposition. A party noticed under Fed. R. Civ. P. 30(b)(6) cannot avoid its obligation to produce a witness on a topic designated in the notice of deposition by objecting to it. Instead, when the responding party claims the notice improperly designates topics for testimony, requesting a protective order represents a proper method of response. *See* 8A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2103 n.12 (3d ed. 2010) (citing *New England Carpenters Health Bens. Fund v. First Databank, Inc.*, 242 F.R.D. 164, 165–66 (D. Mass. 2007)). *Cf. Lykins v. Certainteed Corp.*, No. 11-2133-JTM, 2012 WL 3542016 at *4 (D. Kan. Aug. 16, 2012) ("Although [d]efendants cannot rely upon their formal objections to the noticed Rule 30(b)(6) topics to either (1) instruct their designated witness not to answer . . . or (2) as an excuse for failing to produce a designated witness altogether, they can, however, rely upon their formal objections to the noticed Rule 30(b)(6) topics . . . for a protective order under Rule 26(c) or 30(d), filing a motion to limit discovery under Rule 26(b)(1)(C), or opposing a motion to compel . . . ."), *rev'd on other grounds*, 555 F. App'x 791 (10th Cir. 2014). Here, plaintiffs have elected to seek a protective order, and so the court decides the attendant disputes by ruling on that motion instead of deciding the objections.

### B. Rulings on Specific Objections

### 1. Plaintiffs' objection to time period used in the Notice of Deposition:

Plaintiffs object that defendant's Notice expands the duration of the topics from "ending in August 2019" to one ending in "the present." *See* Doc. 435 at 5. Plaintiffs contend this is improper because defendant, earlier in the case, convinced the court to limit discovery requests to end in August 2019. *Id.* Plaintiffs don't object to the Notice's use of "the present" as the end point, but they do oppose the asymmetry the Notice would impose. Plaintiffs also complain that defendant won't let them cure this imbalance by conducting a second deposition of defendant's corporate representative under Rule 30(b)(6). Plaintiffs' objection isn't persuasive, and the court now overrules it.

Plaintiffs chose to assert expansive claims in this action. They chose to claim fraud—and resulting damages—beginning in October 2017. Plaintiffs chose to allege 21 distinct defamatory statements beginning in December 2016 and attendant reputational damage. They chose to assert damage claims asserting defendant tortiously interfered with their contracts beginning "as early as at least January 2017[.]" Doc. 262 at 91 (Third Am. Compl. ¶ 120). In sum, plaintiffs have defined the reach of the issues in this case. It's a broad reach. Their decision also defines the scope of permissible discovery.[1]

### 2. Plaintiffs' quasi-objection to the "actual definition" of Non-Kansas School, Non-Kansas School Doctor, and Non-Kansas School Doctor Medical Group:

The court refers to the plaintiffs' position on these three terms as a quasi-objection because plaintiffs assert that they "do not object to the actual definition" of these terms. Doc. 435 at 5. Still,

---

[1] Nor can plaintiffs properly use a discovery objection as leverage to get something they want to accomplish in discovery. If plaintiffs believe defendant improperly has deprived them of discovery, they may seek relief under the Federal Rules of Civil Procedure. But plaintiffs' dissatisfaction with defendant's response to their discovery doesn't confer any right to withhold discovery from defendant.

plaintiffs claim, these definitions broaden the designated topics "could include over 100+ more schools." *Id.* at 6.  It appears they challenge these definitions in some undefined fashion.

But as defendant points out, much of the breadth of these terms comes from the width of plaintiffs' claims.  *See* Doc. 455 at 4.  The definition of the core concept used by these definitions is "Non-Kansas Schools." *See* Doc. 435 at 31.  Those schools consist of any school other than "the Kansas Schools"—another term defined by the Notice—who have:

- Submitted insurance claims, *and*

   (a) took improper action against plaintiffs "causing [plaintiffs] damage as alleged by plaintiffs in this case"

   (b) stopped using "some or all of [plaintiffs'] services as alleged by plaintiffs in this case"

   (c) terminated or did not renew its contract with plaintiffs "as alleged by plaintiffs in this case, and/or"

   (d) 34 colleges specifically identified by name.

*See id.*  The court has no difficulty overruling plaintiffs' challenge to the schools included within the scope of (a) through (c).  If a school fits within the reach of those components of the definition of a "Non-Kansas School," it's because plaintiffs' claims put it there.  Plaintiffs, as captains of their Complaint, get to choose the claims they assert.  But when a plaintiff launches a Complaint with broad claims, it can't complain credibly about the reach of attendant discovery.

Part (d) is different, however.  Defendant reports that its need to inquire about these 34 colleges stems from plaintiffs' claim that the 34 "listen[ed]" to defendant's alleged statements.  If any of the 34 independently investigated plaintiffs, defendant reasons, then, "such information is relevant to" the issues whether defendant's statements were true and whether the statements defrauded plaintiffs at all.  Defendant makes a marginal point, but it takes the point too far.

Defendant can investigate and secure pertinent facts about these 34 schools in a fashion far more efficient and proportional than this Notice employs. The court thus grants plaintiffs protection from this part of the definition of "Non-Kansas Schools" as used in the Notice. Plaintiffs need not comply with part (d) of the definition, as used by the topics in defendant's Notice of Deposition.

**3. Plaintiffs' objection to Topics 19 and 20:** After other discovery rulings, defendant amended Topics 19 and 20. Topic 19 now seeks a corporate witness to testify about "[k]nowledge of or participation with any State Agency or Federal Agency Investigation of [plaintiff] Vivature or Vivature's submission of insurance claims." Topic 20 seeks a witness on the same topics for plaintiff Orchestrate. *See* Ex. A (February 3, 2023 email from defense counsel Jason Cross). These amendments don't nullify plaintiffs' objections to the two topics.

To the contrary, plaintiffs claim, the amended topics worsen the problem. This is so, they assert, because the amended request doesn't limit the topics to "the insurance claims which are the subject matter of this case, the schools which are the subject matter of this case or plaintiffs' claimed damages." *See* Ex. A (February 15, 2023 email from plaintiffs' counsel Jose Portela).

Plaintiffs never argue that this dispute about Topics 19 and 20 still remains an active dispute requiring a ruling. The court thus deems this portion of plaintiffs' motion moot and declines to grant plaintiffs any relief from Topics 19 and 20 (as amended per defense counsel's message, *see* Ex. A).

**4. Topic 21:** Plaintiffs' motion reports that they object to Topic 21 for the same reasons as Topic 19. Correspondence from defense counsel modified this topic to seek a witness with "[k]nowledge of or participation with any State Agency or Federal Agency investigation of" four specified individuals. *See* Ex. A (Cross email). Plaintiffs nonetheless

persist in their objection, claiming that the court should protect them because the amended topic doesn't limit the designation to insurance claims "which are the subject matter of this case," or the schools similarly at issue here. *See id.* (Portela email). Plaintiffs counteroffered, asking defendant to add that qualifier—investigations "in relation to any insurance claims which are the subject matter of this case"—to defendant's amended topic.

The court overrules plaintiffs' request for protection from Topic 21, as amended by defendant. While plaintiffs' additional qualification might make good sense, the Federal Rules of Civil Procedure don't confine the scope of permissible discovery as narrowly as plaintiffs' position would produce. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."). Plaintiffs have failed to demonstrate that the amended topic fails these touchstones in Rule 26. And defendant now has limited its topic to four specific individuals. The court denies this request for relief.

     **5.   Topic 22:** If enforced as written, this topic would require plaintiffs to produce a witness with "knowledge of participation with" any of 15 enumerated audits. Plaintiffs except three audits (SVH, Benedictine, "Kansas School Audits") from their objection. Doc. 435 at 8.

Defendant responds, arguing that the 12 audits still in dispute were conducted by "other BCBS entities regarding [p]laintiffs and insurance claims submitted by [p]laintiffs." Doc. 455 at 8. This information, defendant contends, is directly relevant to defendant's "alleged statements,

7

or the independent investigations and findings, caused these BCBS entities to deny or underpay claims submitted by [p]laintiffs, take 'improper action' against [p]laintiffs, caused [p]laintiffs' alleged damages, or affected [p]laintiffs' reputation, all as alleged by [p]laintiffs." *Id.*

Defendant hasn't convinced the court that this topic, with 15 subparts meets the standard in Rule 26. The court thus sustains plaintiffs' motion and limits Topic 22 to the three bullet points not contested by plaintiffs' objections, *i.e.*, SVH, Benedictine College, and Kansas School Audits.

      **6.   Topic 25:**  This topic demands plaintiffs to identify a witness to testify about "any concerns, issues, or complaints" expressed by any one of 16 identified sources for Vivature's submission of claims "on behalf of any Kansas School [or] Non-Kansas School" or their doctors or trainers. Defendant since has narrowed this topic, eliminating three of the identified sources. *See* Ex. A (Cross email). Plaintiffs responded to the narrowed topic, recognizing that the amendment reduces the reach of their objection but doesn't obviate it.

Plaintiffs' objection also explains that their position on Topic 25 parallels their objection to Topic 19. That is, the topic isn't confined to the 12 Kansas Schools or the insurance claims at issue here. Doc. 435 at 8. In response to the slightly narrowed Topic 25, plaintiffs advised that they offered to "eliminate (d) from the definition of Non-Kansas School and limit this topic to the insurance claims which are at issue in this case" and, if defendant had agreed to their proposal, plaintiffs would agree to the amended topic.

The court's ruling in this Order about subpart (d) of the definition for Non-Kansas Schools has delivered plaintiffs the concession they sought. So, that part of plaintiffs' objection to Topic 25 is now moot. This ruling leaves just one aspect of plaintiffs' request for protection from Topic 25: Should the court issue a protective order limiting defendant's inquiry to

insurance claims at issue in this case? Rule 26 says no. The court thus declines to grant such relief for reasons explained in its analysis of Topic 21. *See supra* at 6–7.

      **7. Topics 37 and 38:** These two topics ask each plaintiff to designate a witness to testify about "[a]ny concerns, issues, or complaints raised or expressed about the 'Medical Record Signature Attestation Statement' that was attached to otherwise submitted in connection with any insurance claim [that plaintiff] Vivature submitted on behalf of the Kansas Schools and/or Non-Kansas Schools." Doc. 435 at 42. Topic 38 requests a witness from Orchestrate on the same subjects. *Id.* Plaintiffs assert that these topics—even if confined to include just the Kansas Schools—"could apply to more than 100,000 insurance claims." Doc. 435 at 9. Defendant responds that plaintiffs' objections to these topics rely on an improper hypothetical and boilerplate language such as "to the extent that . . ." Doc. 455 at 9. Defendant then recites a series of arguments about the reach of discovery motivated by plaintiffs' defamation claims. *Id.*

  Much of the discussion on these two topics is hard to follow. And neither party's position is particularly satisfying. The court will grant plaintiffs some relief, inserting the word "Representative" in place of the word "Any" at the beginning of Topics 37 and 38. Also, plaintiffs' designated witnesses must be prepared to explain how they determined that the selected "concerns, issues, or complaints" are representative of any others they received. This modification will grant plaintiffs relief from the expansive nature of defendant's request. And, it still provides defendant with some discovery on this subject. If defendant contends that these modified topics—once the 30(b)(6) deposition concludes—materially hampers defendant's ability to meet plaintiffs' claims, it may request appropriate relief. For now, however, the court limits Topics 37 and 38 to the subject matter as amended in this Order.

8. **Topics 44 and 45:** These topics request plaintiffs to designate witnesses—one for plaintiff Vivature and one for plaintiff Orchestrate—with knowledge of "any" cease and desist instruction or other "demand, instruction, or request to stop billing" that either plaintiff received or "was otherwise made aware of in relation to" that plaintiff's submission of insurance claims for "any Kansas School [or] Non-Kansas School" (or such a school's doctor or trainer). Doc. 435 at 43. These topics include the "Pro Cease and Desist Letter" phrase and its counterpart for SVH. *Id.* These requests, plaintiffs assert, are "overly broad, unduly burdensome, disproportionate to the needs of the case" and in any event aren't even relevant to plaintiffs' claims or defenses. *Id.* at 9–10. Plaintiffs also claim that the topics are vague and ambiguous. *Id.* Defendant responds, noting that the Third Amended Complaint "specifically allege[s] that [defendant's] alleged statements and acts caused schools to 'stop billing.'" Doc. 455 at 10 (quoting Doc. 262 at 18 (Third Am. Compl. ¶ 39)). Neither party's position is particularly winsome.

Start with defendant's topics. They seek "any"—which here, means all—such communications for any Kansas School or Non-Kansas School. As these geographically based terms logically suggest, together, they include 12 specified colleges in Kansas *and* all other schools. So, defendant's position begins with the remarkable premise that they need plaintiffs to designate someone who knows about cease and desist notices for all the schools in the world. That's a big lift. But plaintiffs did put this idea into play, for ¶ 39 of the operative Complaint alleges that defendant's "wrongful actions have caused certain schools, such as Newman University to stop using Vivature's software or to stop billing for the services provided, and at least one school, such as [sic] Baker University, prematurely terminated its contract with

Vivature as a direct result of [defendant]'s improper actions.  This has caused Vivature to lose millions in lost profits . . . ."  Doc. 262 at 18 (Third Am. Compl. ¶ 39).

On balance, the court is persuaded that defendant's designations in Topics 44 and 45 seek discovery on a subject that is relevant to claims plaintiffs have elected to assert.  But the Notice's topics are far broader than Rule 26's proportionality clause will tolerate.  Just because *some* cease and desist notices are relevant doesn't mean that *every* such notice is relevant or that a request for all of them is proportional.  The court thus grants plaintiffs some protection on this topic but not the complete immunity they seek.  Specifically, the court's Order modifies Topic 44 to read as follows:

> 44. Knowledge of cease and desist, demand, instruction, or request to stop billing that Vivature received as a result of Vivature's submission of insurance claims.  This topic is restricted, however to the cease and desist, demands, instructions, or requests to stop billing received by:
>
> (a) the colleges, universities, and schools that Vivature uses to form any part of plaintiffs' damage claims in this case; and
>
> (b) as many as five other colleges, universities, or schools who—though plaintiffs' damage claims do not rely on that college, university, or school—were received by plaintiff Vivature between January 1, 2017, and the present.  If plaintiffs claim that plaintiff Vivature received fewer than five such notices during this time period, plaintiffs much produce a witness with knowledge about all such notices.

Topic 45 is modified in the same fashion as Topic 44 so it applies in the same fashion to plaintiff Orchestrate.  These two modified topics provide defendant with the discovery it needs without imposing a disproportional burden on plaintiffs.

**Conclusion and Advisory**

In sum, the court grants plaintiffs' Motion for Protective Order (Doc. 435) in part and denies it in part, as set forth in this Order.  The court concludes with a final observation about the parties' conduct during discovery and a look ahead.

When one reads this case's docket and the parties' discovery filings, it's evident:  The parties have chosen to engage in a sophisticated and expensive game of cat and mouse.  The discovery filings read like an asset purchase agreement for a complicated corporate acquisition.  Discovery responses appear carefully designed to hide responsive information and produce maximum uncertainty.  In a real sense, these parties deserve one another.

But their convention is not how this court conducts its business.  Neither the court nor the public who funds it should have to bear the cost of a private fight that's part of the parties' larger economic war with one another.  It's clear.  The parties have disputes with one another.  That's fine.  Courts exist to resolve disputes peaceably.  But courts don't exist to host to serial food fights about discovery issues.

The court is fully mindful that other members of our bench have tried to deliver a wake-up call to these parties.  *See, e.g.*, Doc. 306 at 5–7 (Judge Teeter's frank discussion with counsel about their discovery conduct).  Nor does the court necessarily assume that these words will succeed when others have failed.  But this Order does deliver a reminder about Fed. R. Civ. P. 37(a)(5). It provides that courts "must . . . require" the party or attorney who has necessitated a discovery motion to pay movant's reasonable expenses, including attorney's fees.

The parties are on notice.  The court will apply this provision liberally to any future discovery disputes.

**THEREFORE,** plaintiffs' Motion for Protective Order (Doc. 435) is granted in part and denied in part, as set forth in this Order.

**IT IS SO ORDERED.**

**Dated this 28th day of February, 2023, at Kansas City, Kansas.**

<u>s/ Daniel D. Crabtree</u>
**Daniel D. Crabtree**
**United States District Judge**