## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ORCHESTRATE HR, INC. and VIVATURE, INC., | |
| Plaintiffs, | |
| v. | Case No. 19-4007-DDC |
| BLUE CROSS AND BLUE SHIELD OF KANSAS, INC., | |
| Defendant. | |

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendant Blue Cross and Blue Shield of Kansas, Inc.'s Motion for Award of Attorney's Fees, ECF No. 534, which the District Judge has referred to the undersigned Magistrate Judge for disposition. ECF No. 546. The District Judge previously awarded Defendant its reasonable costs, including attorneys' fees, incurred in responding to Plaintiffs Orchestrate HR, Inc. and Vivature, Inc.'s motion to compel and directed Defendant to "present the issue to the court for decision" if the parties could not reach an agreement on the amount of that award. ECF No. 515 at 3. The parties could not reach an agreement, and on July 18, 2023, Defendant filed a motion for attorneys' fees seeking $39,806.50. ECF No. 534. Plaintiffs oppose the Motion on multiple grounds. ECF No. 539.

For the reasons explained below, the Motion is granted.

## I.      BACKGROUND

On April 28, 2023, Plaintiffs filed a seven-page motion to compel, ECF No. 504, and nine exhibits totaling 77 additional pages. ECF Nos. 504-1 to 504-9. The motion stated that the parties had engaged in meet-and-confer conferences beginning on April 19 and continuing until April 25, 2023. ECF No. 504 at 1 n.1. When these discussions reached an impasse, Plaintiffs filed a motion

seeking to compel documents from Defendant Blue Cross and Blue Shield of Kansas ("BCBSKS") pursuant to Plaintiffs' Sixth Set of Requests for Production, as partially amended.  *Id.* at 1.  As stated in the motion, the "dispute centers on the inclusion of BCBSKS' counsel in the definition of BCBSKS."  *Id.*  Specifically, Defendant objected to the express inclusion of "the Spencer Fane law firm"—the outside, retained law firm for Defendant in this litigation—in the definition of "BCBSKS" and "Your" or "You."  *Id.*

Defendant responded to Plaintiffs' motion to compel on May 5, 2023.  ECF No. 506.  The substantive portion of the brief spans three pages, with the signature block on the fourth page and a certificate of service on the fifth page.  *Id.*  Defendant also attached eight exhibits, spanning 121 pages in total.  *See* ECF No. 506-1 through 506-8.  Among those exhibits are:

- Exhibit 1, which is a 40-page document, which includes a two-page declaration from BCBSKS counsel Jason Cross and supporting exhibits reflecting some of the meet-and-confer communications between the parties regarding potential custodians and search terms for the document requests; and

- Exhibit 8, a 17-page exhibit, which includes a four-page declaration from Leslie Witterschein, Spencer Fane's internal Certified eDiscovery Specialist.  The declaration sets forth a detailed description of the time and effort entailed with responding to Plaintiffs' Requests for Production ("RFPs") and the projected costs of such efforts, which are estimated between $127,800 and $148,000.  ECF No. 506-8.  Ms. Witterschein's declaration includes as an exhibit the 11-page privilege log created by Defendant and produced to Plaintiffs, which reflects "any privileged, responsive documents and communications (including communications to or from Spencer Fane) within BCBSKS's custodians' files."  ECF No. 506-8 at 4 n.2, 7-17.

On June 2, 2023, the District Judge held a hearing on Plaintiffs' motion to compel and on a separate motion to compel filed by Defendant, ECF No. 481.  *See* ECF No. 515 (reciting the rulings made during the hearing).  As stated on the record and memorialized in a subsequent order, the District Judge granted in part and denied in part Defendant's motion and denied Plaintiffs' motion.  *Id.*  The District Judge found that the parties should cover their own fees and expenses with respect to Defendant's motion but that Defendant was entitled to its reasonable expenses,

including attorneys' fees, associated with Plaintiffs' motion to compel.  *Id.* at 3.  As the order states:

> The court awarded sanctions under Rule 37 for one of the two motions—as it advised the parties it would during a recent telephone conference.  *See* Fed. R. Civ. P. 37(a)(5)(B) (the court may "require the movant . . . to pay the party . . . who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees").  The court ruled that the parties will cover their own fees associated with defendant's Motion to Compel (Doc. 481).  And plaintiffs will pay both parties' attorney's fees and costs associated with their Motion to Compel (Doc. 504).  The court directed the parties to comply with D. Kan. Rule 54.2 to present their fee award agreement (if they reach one) and, failing that outcome, to present the issue to the court for decision.  *See* D. Kan. Rule 54.2.

*Id.* at 3.

On July 18, 2023, Defendant filed its Motion for Award of Attorney's Fees.  ECF No. 534.  In the Motion, Defendant requests that the Court award $39,806.50 in attorneys' fees based upon the following submitted lodestar:

| Attorney | Hourly Rate | Hours Billed | Total |
|---|---|---|---|
| Jason Cross | $740 | 26.7 | $19,758 |
| Casey Murray | $565 | 1.3 | $734.50 |
| Preston Enoch | $460 | 36.7 | $16,882 |
| Leslie Witterschein | $320 | 7.6 | $2,432 |
| **TOTALS** | | **72.3** | **$39,806.50** |

*Id.* at 13.

On August 1, 2023, Plaintiffs filed their response.  ECF No. 539.  Despite the District Judge's June 2, 2023 order explicitly memorializing that the Court had "awarded sanctions" and that "plaintiffs will pay both parties' attorney's fees and costs associated with their Motion to Compel (Doc. 504)," Plaintiffs argue that the Court should not award fees at all.  *Id.*  Plaintiffs

contend that the Motion is untimely, that their original position asserted in the motion to compel is substantially justified or that other circumstances make an award unjust.  Plaintiffs additionally argue that if the Court were to decide to impose fees, that the Court should deny or reduce the overall award because counsel's hourly rates are excessive, and counsel billed too many hours.  *Id.* at 9.  The Court first addresses Plaintiffs' timeliness and substantial justification/other circumstances arguments before turning to the issue of Defendant's reasonable attorneys' fees.

## II.     TIMELINESS OF DEFENDANT'S MOTION

In arguing that Defendant's Motion is untimely, Plaintiffs rely on the District Judge's order citing D. Kan. Rule 54.2 to claim that the time limits specified in that rule apply here.  The District Judge directed the parties to comply with "D. Kan. Rule 54.2 to present their fee award agreement (if they reach one) and, failing that outcome, to present the issue to the court for decision."  ECF No. 515.  The order did not state that the presentation of either the agreement or the motion was due within 30 days of the order or provide any other deadline for filing a motion seeking fees.

Local Rule 54.2 is entitled "Award of Statutory Attorney's Fees" and is included in "Section VII Judgment" of the Local Rules.  It provides in pertinent part:

> **(a) Consultation Required.** A party who moves for statutory attorney's fees pursuant to Fed. R. Civ. P. 54(d)(2) must promptly initiate consultation with the other party or parties.
>
> **(b) Where the Parties Agree.** If the parties reach agreement, they must file an appropriate stipulation and request for an order.
>
> **(c) Where the Parties Disagree.** If they are unable to agree, the moving party must file the following within *30 days of filing the motion*:
>
>> (1) a statement that, after consultation in accordance with this rule, the parties have been unable to reach an agreement with regard to the fee award; and
>>
>> (2) a memorandum setting forth the factual basis for each criterion that the court is asked to consider

D. Kan. Rule 54.2 (emphasis added).  As Plaintiffs note, the 30-day language refers to 30 days from when a party moves for statutory attorneys' fees under Federal Rule of Civil Procedure 54(d)(2)—not when a party moves for fees under Rule 37.  Rule 54(d)(2)(B)(i) requires that the motion be filed "no later than 14 days after the entry of judgment."  Plaintiffs argue that Defendant's Motion is untimely "[r]egardless of whether it was a 14 day or 30 day deadline" that applied.  ECF No. 539 at 3.

The undersigned does not read the District Judge's citation to the Local Rule as expressly or impliedly imposing either a 30-day or 14-day deadline for Defendant's motion for attorneys' fees under Rule 37.  For one, the 30-day period referenced in the Local Rule applies to materials that must be filed only *after* a motion for attorneys' fees is filed following a judgment, which is not applicable here.  The present Motion fits into neither category—materials that need to be filed within 30 days of filing a motion for attorneys' fees under Rule 54(d)(2) or a Rule 54(d)(2) motion for attorneys' fees following a judgment.  If the District Judge had intended to apply a deadline not applicable to Rule 37 motions for fees, he would have done so explicitly.  He did not.  Rather, the plain language of the order directs the parties to utilize the procedure set forth in the Local Rule in presenting the matter to the Court.  Because the District Judge did not impose a deadline for filing the present Motion, it is not untimely.

## III.    SUBSTANTIAL JUSTIFICATION OR OTHER CIRCUMSTANCES MAKING AN AWARD UNJUST

When a motion to compel is denied in full, Federal Rule of Civil Procedure 37(a)(5)(B) requires an award of reasonable expenses incurred in opposing the motion unless "the motion was substantially justified or other circumstances make an award of expenses unjust."  "Generally, the party opposing the request for fees bears the burden of showing that special circumstances would not support the award."  *Ad Astra Recovery Servs., Inc. v. Heath*, No. 18-1145-JWB-ADM, 2020

WL 4346965, at *3 (D. Kan. July 29, 2020), *objections overruled*, No. 18-1145-JWB, 2020 WL 6939748 (D. Kan. Nov. 25, 2020).  Ultimately, "[t]he potential or actual imposition of expenses is virtually the sole formal sanction in the rules to deter a party from pressing to a court hearing frivolous requests for or objections to discovery."  *Centennial Archaeology, Inc. v. AECOM, Inc.*, 688 F.3d 673, 680 (10th Cir. 2012) (addressing sanctions under Rule 37(a)(5) and (b)(2)(C) and quoting the advisory committee's note to the 1970 amendments).

Plaintiffs devote the bulk of their brief to arguing that the Court should not assess fees at all because their motion to compel was substantially justified and because other circumstances make an award of fees unjust.  ECF No. 539 at 3-7.  But the parties disagree as to whether this is a live issue at this point.  Defendant contends that Plaintiffs waived this issue by not timely filing a motion to reconsider within 14 days of the District Judge's June 7, 2023 order imposing fees, consistent with D. Kan. Rule 7.3.  Defendant is correct that Plaintiffs did not file a motion to reconsider by the June 21, 2023 deadline.  Plaintiffs, however, argue that during the June 2, 2023 hearing, the District Judge granted leave for Plaintiffs to address the issue of substantial justification in their brief in response to any motion for attorneys' fees.  ECF No. 539 at 3.

Plaintiffs' interpretation is not consistent with the District Judge's order, which memorialized that the "court awarded sanctions under Rule 37" and further stated that "plaintiffs will pay both parties' attorney's fees and costs associated with their Motion to Compel[.]"  ECF No. 515 at 5.  Even if the Court had left this issue open, the undersigned has independently analyzed this issue on its merits and, for the reasons explained below, finds that Plaintiffs have not

shown that their position was substantially justified or that any other circumstances make an award unjust.[1]

### A.      Substantial Justification

"Substantially justified," as it appears in Rule 37, means "a genuine dispute or if reasonable people could differ as to the appropriateness of the contested action." *Lester v. City of Lafayette, Colo.*, 639 F. App'x 538, 542 (10th Cir. 2016) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). Substantial justification does not require justification "to a high degree, but rather justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person." *Id.* (citing *Pierce*, 487 U.S. at 565).

As an initial matter the Court agrees with Defendant that the bulk of the substantial justification arguments Plaintiffs now raise were considered and rejected by the District Judge when he ruled on the motion to compel and determined that Plaintiffs should be sanctioned. And according to Defendant, the District Judge warned the parties at the pre-motion discovery conference that the Court would award reasonable fees if it denied Plaintiffs' motion, which it did. *See* ECF No. 548 at 2.

The Court reads Plaintiffs' brief as asserting primarily two arguments in support of its position. *First*, Plaintiffs argue that their express inclusion of Spencer Fane's name within the definition of Defendant was not as broad as the District Judge's interpretation because the definition excluded certain categories of documents and applied only to specific RFPs. ECF No.

---

[1]      Plaintiffs raise additional attacks on the District Judge's order itself, which the Court will not consider. If Plaintiffs believed the District Judge had erred in the ruling or required clarification regarding the District Judge's comments, they should have filed a timely motion to reconsider. *See* D. Kan. Rule 7.3 (stating that except for motions under Fed. R. Civ. P. 59(e) or 60, motions to reconsider must be filed within 14 days of the order). They did not do so, and so the Court will not take up these arguments now.

539 at 4.  The undersigned disagrees with this characterization of the District Judge's comments during June 2, 2023 hearing and disagrees that including defense counsel's outside litigation law firm within the definition of Defendant itself—even with the exclusions and even accepting that only specific RFPs were implicated—is anything but overly broad on its face and disproportionate to the needs of the case.  As the District Judge observed during the hearing, the burden on Defendant to identify and log responsive documents for which it claimed privilege would be onerous.  ECF No. 514 at 9:21-10:14.

It is important to note that Spencer Fane is outside litigation counsel for Defendant and that the record before the Court indicates that Spencer Fane was hired by Defendant *after* Plaintiffs initiated litigation.  Plaintiffs originally filed suit in Texas state court in March 2018 and Defendant hired Texas counsel from Spencer Fane at that time to act as litigation counsel.  *See* ECF No. 506-1 at 2 ("Spencer Fane was first retained by BCBSKS to act as its litigation counsel in this dispute after Plaintiffs filed their original lawsuit in Texas state court in March 2018.  After that lawsuit was dismissed for lack of personal jurisdiction, Plaintiffs refiled the lawsuit in the District of Kansas in January 2019").  No party appears to allege that there is a relationship between Spencer Fane and Defendant outside of this litigation, such as Spencer Fane acting as outside corporate counsel or in another role in which Spencer Fane would be likely to have relevant documents falling outside of the attorney-client or work product privileges.  Because of the limited relationship between Defendant and Spencer Fane, it is unlikely that Spencer Fane has many relevant, responsive documents that would not be privileged.

The undersigned further finds that Plaintiffs' general definitions section in its RFPs is objectionable on its face because it is overly broad and disproportionate to the needs of the case. The general definition defines Defendant as follows:

1. "BCBSKS," "Your," or "You" shall refer to Blue Cross and Blue Shield of Kansas, as well as any related entities, and any agent, employee, attorney, or other person acting on their behalf. This specifically includes, but is not limited to, the Spencer Fane law firm.

> • Communications by Spencer Fane, that were solely with others at Spencer Fane, do not need to be produced or logged.

> • No Spencer Fane attorney notes, Spencer Fane memoranda, drafts of pleadings and drafts of discovery requests need to be produced or logged, unless those notes or memoranda were circulated to third parties.

> • To the extent You claim a responsive document is privileged, it should be logged.

ECF No. 504 at 1-2. While it is not unusual to see attorneys included within the definition of a party, such requests typically are focused on in-house attorneys who often serve in capacities that create documents falling outside of any privileges, such when they provide business advice as opposed to legal advice. Here, Plaintiffs expressly named Defendant's outside litigation law firm that was hired after the litigation began, and this definition on its face necessarily implicates attorney-client privileged materials. Plaintiffs' exclusions to this definition do not make a meaningful difference with respect to the time and effort involved with preparing a privilege log listing responsive documents related to outside litigation counsel's files. Arguably, Plaintiffs' clarification that "[t]o the extent You claim a responsive document is privileged, it should be logged," merely confirms that these requests were expressly intended to fish for privileged documents. In other words, the definition is not narrowly tailored to target relevant information proportional to the needs of the case, as the District Judge also found.

*Second*, Plaintiffs argue that "the initial burden was not on Plaintiffs to show that the logging of any Defendant's litigation-related communications are proportional before Defendant[]

bypass[es] the requirement of a privilege log." ECF No. 539 at 5. Plaintiffs misstate the applicable legal standard on a motion to compel. When a discovery request or definition is objectionable on its face, as is the case here, the proponents of the discovery request—Plaintiffs—bear the initial burden to show how the discovery they seek is proper and within the scope of the Federal Rules. *See Allen v. Mill-Tel, Inc.*, 283 F.R.D. 631, 633-34 (D. Kan. 2012) ("If, however, the discovery requests are facially objectionable in that they are overly broad or seek information that does not appear relevant, the burden is on the movant to demonstrate how the requests are not objectionable."). Plaintiffs cannot justify a facially objectionable definition by pointing to a failure by Defendant to timely compile a privilege log.

Plaintiffs also contend that they discussed with Defendant ways to make the preparation of a privilege log less burdensome by deviating from the traditional requirements of a privilege log. But regardless, a privilege log is not automatically required in response to an overly broad discovery request (or in this case, RFPs subject to an overly broad definition), particularly when it would result in a significant undertaking to identify and log responsive documents. *See Ad Astra Recovery Servs., Inc. v. Heath*, No. 18-1145-JWB-ADM, 2019 WL 4466903, at *3 (D. Kan. Sept. 18, 2019) (revisiting an earlier ruling when it was later discovered that responding to RFPs implicated more than 14,000 client files, triggering the need for a defendant to review all materials to screen for privileged communications and then log them—finding the requests to be out of line with Rule 26's proportionality requirement).

Plaintiffs could have served far more targeted discovery requests if they believed there were Spencer Fane-related relevant, responsive, and non-privileged materials. Instead, Plaintiffs included defense counsel's law firm in the definition of Defendant itself. Plaintiffs did not

meaningfully narrow the definition through meet-and-confer efforts and, in sum, Plaintiffs have not shown that their position is substantially justified.

## B.    Other Circumstances

Plaintiffs have not shown that other circumstances make an award of reasonable fees unjust.  Plaintiffs' arguments on this point overlap with the substantial justification arguments addressed above and with the below arguments concerning the proper amount of fees to assess. Plaintiffs argue that: (1)  it should not take four lawyers close to $40,000 to draft a response brief, which is excessive and contrary to prior positions Defendant has taken in this case; (2) Defendant failed to avail itself of proposed agreements that would have lessened the burden to Defendant— presumably in producing a privilege log, but that is not entirely clear; and (3) Plaintiffs were entitled to a privilege log to assess Defendant's claim of privilege.

As to the first argument, Plaintiffs do not point to any authority that their disagreement on the amount of reasonable fees is itself a circumstance that makes an award of *any* fees unjust.  The Court previously addressed the second and third arguments in the context of substantial justification and rejects them for the same reasons.  Plaintiffs have not shown that other circumstances make an award of fees unjust.  Having found that Defendant is entitled to its reasonable attorneys' fees related to the motion to compel, the Court next turns to the appropriate amount.

## IV.    REASONABLE ATTORNEYS' FEES

### A.    Legal Standard

The Court must independently analyze the reasonableness of requested attorneys' fees.  *See King v. Fleming*, 899 F.3d 1140, 1155 (10th Cir. 2018) (reviewing an award of fees as a Rule 11 sanction); *see also Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998) (quoting

*Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).   To determine whether requested fees are reasonable in this context, the Court relies on the lodestar method, multiplying the hours counsel reasonably spent by a reasonable hourly rate.   *Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1257 (10th Cir. 2005); *Rogers v. Bank of Am., N.A.*, No. CIV.A. 13-1333-CM, 2014 WL 6632944, at *1 (D. Kan. Nov. 21, 2014) ("Reasonable attorneys' fees under Rule 37(a)(5) are typically calculated using the lodestar methodology, which requires the court to multiply the hours counsel for the party seeking attorneys' fees reasonably spent on the discovery motion by a reasonable hourly rate."); *see also Gutwein v. Taos Cnty. Det. Ctr.*, No. CV 15-672 RB/WPL, 2016 WL 9774935, at *1 (D.N.M. Nov. 16, 2016) (collecting cases using the lodestar method to calculate reasonable fees awarded under Rule 37).

"[T]he lodestar method 'produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a *comparable case*.'"   *In re Syngenta AG MIR 162 Corn Litig.*, 61 F.4th 1126, 1192 (10th Cir. 2023) (emphasis original and citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010)).   The lodestar method "produces a presumptively reasonable fee that may in rare circumstances be adjusted to account for the presence of special circumstances." *Anchondo v. Anderson, Crenshaw & Assocs., L.L.C.*, 616 F.3d 1098, 1102 (10th Cir. 2010).

In determining whether to depart from the lodestar calculation, courts consider the factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).   These factors are:

> (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) any prearranged fee[;] (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9)

the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*In re Syngenta AG MIR 162 Corn Litig.*, 357 F. Supp. 3d 1094, 1111 (D. Kan. 2018) (citing *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454-55 (10th Cir. 1988)).

"[T[he *Johnson* factors' applicability and weight in 'common fund situations w[ill] undoubtedly be different' than in statutory fee situation" or here, in evaluating a discovery sanction.  *In re Syngenta AG MIR 162 Corn Litig.*, 61 F.4th at 1193 (citing *Uselton v. Com. Lovelace Motor Freight, Inc.*, 9 F.3d 849, 853 (10th Cir. 1993)); *see also Pipeline Prods., Inc. v. Madison Companies, LLC*, No. 15-4890-KHV, 2019 WL 3252743, at *2 (D. Kan. July 19, 2019) ("[C]ourts more often consider the *Johnson* factors when awarding compensatory attorneys' fees under a fee-shifting statute rather than when assessing attorneys' fees as a punitive sanction [under the Federal Rules].").  The Tenth Circuit has declined to find error when a district court does not explicitly invoke the *Johnson* factors or when it considers only those factors "most applicable to this case . . . ."  *In re Syngenta AG MIR 162 Corn Litig.*, 61 F.4th at 1196 n.44; *see also Anchondo*, 616 F.3d at 1103-04 ("[I]t has only become clearer that the lodestar determination is primary and that the propriety of such a determination is not automatically called into doubt merely because the trial court did not expressly discuss the *Johnson* factors.").

"The fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Case v. Unified Sch. Dist. No. 233, Johnson Cnty., Kan.*, 157 F.3d 1243, 1249 (10th Cir. 1998) (internal brackets and quotations omitted).

### B.      The Parties' Meet-and-Confer Efforts

With the hope that the parties could avoid spending even more time and expense on this discovery dispute, the Court directed the parties to meet and confer on this issue.  ECF No. 515. The Court begins with this issue because it provides context to the present briefing as well as certain glaring omissions in the briefing—namely, Plaintiffs' wholesale failure to meaningfully address reasonable hours expended and reasonable market rates in the briefing on the present Motion despite having significant time to review and analyze Defendant's actual billing records.

To assist in the Court-ordered meet-and-confer discussions, Defendant first provided its billing records to Plaintiffs on June 21, 2023.  *See* ECF No. 534-4 at 2.  For time not yet billed to its client, defense counsel set forth the additional hours spent preparing for and attending the June 2, 2023 hearing.  *Id.*  In response, Plaintiffs' counsel could have explained its objections to any specific time entry but apparently chose not to do so.  Instead, Plaintiffs responded: "We cannot agree to this amount."  ECF No. 534-5 at 2.  Defendant alleges that "Plaintiffs rejected BCBSKS's proposed fee award, without any explanation, and did not provide BCBSKS any sort of counteroffer."  ECF No. 534 at 1-2.

The record does not reflect that Plaintiffs undertook any meaningful efforts to meet and confer regarding Defendant's attorneys' fees generally or Defendant's billing records specifically, as the District Judge's order had required.  Plaintiffs do not indicate that they made any material efforts to resolve this fee dispute, which is the result of their conduct.  Instead, they forced this issue to motion practice again, resulting in both sides incurring additional fees briefing the issue of fees.

Plaintiffs had every opportunity to confer with Defendant to attempt to reach an agreement in whole or in part regarding fees.  On the record before the Court, Plaintiffs declined to do so,

again triggering briefing on the issue of fees.  As the Tenth Circuit has stated in the context of a common fund fee dispute, "[a] request for attorney's fees should not result in a second major litigation."  *In re Syngenta AG MIR 162 Corn Litig.,* 61 F.4th at 1213 (quoting *Hensley*, 461 U.S. at 437).  This is especially true for Rule 37(a)(5) fees awarded in conjunction with briefing a discrete discovery motion.

## C.      Reasonable Hours Expended

The party seeking fees can demonstrate reasonable hours expended by submitting time records that reflect the hours for which it seeks compensation and how the counsel allocated those hours to specific tasks.  *Cadena v. Pacesetter Corp.*, 224 F.3d 1203, 1215 (10th Cir. 2000).  The fee applicant should exercise billing judgment with respect to the number of hours worked and billed.  *Hensley*, 461 U.S. at 437.  Billing judgment consists of winnowing hours actually expended down to hours reasonably expended.  *Praseuth*, 406 F.3d at 1257.[2]  The Court may reduce hours

---

[2]     The Tenth Circuit has not articulated a definitive set of factors the Court must consider in determining reasonable hours expended in conjunction with attorneys' fees assessed under Rule 37.  Citing a recent order issued by the District Judge, Defendant has made arguments concerning the reasonableness of its hours billed based on the factors the Tenth Circuit has articulated, including:

> (1) whether the tasks being billed would normally be billed to a paying client, (2) the number of hours spent on each task, (3) the complexity of the case, (4) the number of reasonable strategies pursued, (5) the responses necessitated by the maneuvering of the other side, and (6) potential duplication of services by multiple lawyers.

*Shigo v. Clark*, No. 21-2079-DDC, 2022 WL 16854271, at *4 (D. Kan. Nov. 10, 2022) (quoting *Robinson*, 160 F.3d at 1281 (10th Cir. 1998)).  In that case, the District Judge was deciding a request for statutorily allowed attorneys' fees following judgment, and the quoted Tenth Circuit case similarly reviewed a district court's decision in the same context.  Although the Court generally has considered these factors in reaching its conclusion, it does not specifically address each one for the simple reason that they are more appropriately targeted at requests for statutorily allowed fees at the conclusion of a case, not briefing on a discrete discovery motion.  *Compare with Nat'l R.R. Passenger Corp. v. Cimarron Crossing Feeders, LLC*, No. 16-CV-1094-JTM-TJJ,

claimed that are "unnecessary, irrelevant and duplicative." *Case*, 157 F.3d at 1250. The Court also is "justified in reducing the reasonable number of hours if the attorney's time records are sloppy and imprecise and fail to document adequately how he or she utilized large blocks of time." *Id.* (internal quotations omitted). But the Court is not required to "identify and justify each disallowed hour" or to "announce what hours are permitted for each legal task." *Id.*

Defendant seeks an award of 72.3 hours billed by four attorneys, which, on its face, appears high for a single discovery dispute. But as discussed below, defense counsel billed these hours to its client and then exercised billing judgment in further reducing the hours submitted to the Court. Additionally, as Defendant notes, because Plaintiffs' definition section as applied to the RFPs implicated a significant amount of information from each member of Spencer Fane's legal team, Defendant necessarily addressed both attorney-client privilege concerns and justified its burden objections in responding. ECF No. 534 at 7. Ultimately, for the reasons explained below, the Court finds these hours to be reasonable.

### 1.    Defendant's Time Records and Defendant's Exercise of Billing Judgment

Defendant submitted time records, filing as an exhibit its billing invoices to its client for time expended in opposing the motion to compel. ECF No. 534-1. Plaintiffs raise no issues regarding the sufficiency of Defendant's time records, and the Court finds these to be adequate records supporting Defendant's fee request.

---

2018 WL 1992413, at *3 (D. Kan. Apr. 27, 2018) ("In determining the reasonableness of hours spent in relation to a discovery motion, the Court considers factors such as the complexity of the issues raised, the need to review the record and pleadings, and the need to conduct legal research, in addition to the length of the briefing. The Court may exclude hours related to overstaffing, duplication, and excessiveness, or that are otherwise unnecessary."); *Bryant v. Westlake Mgmt. Servs., Inc.*, No. 21-1058-JAR-ADM, 2021 WL 11644602, at *2 (D. Kan. Oct. 29, 2021) (not addressing any specific factors but finding 7.3 hours of time to be reasonable based on the court's own review of the briefs and exhibits).

Defendant exercised billing judgment in the hours submitted to the Court.  The vast majority of the entries on the billing invoices are expressly excluded, including entries reflecting time spent dedicated to other projects on the same day that counsel worked on the response to the motion to compel.  *See generally* ECF No. 534-1 at 16-71.  Despite Plaintiffs' assertion that meet-and-confer discussions with Defendant began on "April 19 and continuing until April 25," ECF No. 504 at 1 n.1, the first time entry for which Defendant seeks payment is not until April 28, 2023, which is when counsel for Defendant began to review and assess Plaintiffs' motion to compel.  ECF No. 534-1 at 28.

Defendant also submitted a declaration from Nick Badgerow supporting the reasonableness of the requested attorneys' fees.  *Id.*  Mr. Badgerow is another Spencer Fane attorney representing Defendant in this litigation, although he does not have any time entries at issue in this Order.  Mr. Badgerow's declaration describes a billing judgment decision to review the invoices submitted by Spencer Fane to Defendant and to exclude 1.6 hours of Ms. Witterschein's time to ensure that the time submitted to the Court was time spent related to the motion to compel only.  ECF No. 534-1 at 14 n.16.

Defendant's billing records end on June 2, 2023, the day of the motion to compel hearing.  ECF No. 534-1 at 56; ECF No. 513.  Defendant does not include any time entries for the review of the transcript from the June 2, 2023 hearing, which was filed on June 5, 2023, ECF No. 514, or even for the review of the District Judge's order on the motion to compel, which was filed on June 7, 2023.  ECF No. 515.  Moreover, Defendant does not seek fees for the hours spent briefing the present Motion.  Although courts have not reached a uniform conclusion, many have found time spent briefing a fee motion is compensable on a fee award assessed under Rule 37(a)(5), the theory being that Rule 37(a) sanctions should encompass all expenses that would not have been incurred

had the opposing party conducted itself properly.  *See, e.g., Ad Astra*, 2020 WL 4346965, at *7 (approving an award of fees under Rule 37(a)(5) that included time spent briefing the subsequent motion for fees); *see also Ad Astra*, 2020 WL 6939748 (assessing additional fees incurred as a result of the briefing on the objections to the magistrate judge's order).[3]

Arguably, Defendant could have requested additional fees for the time spent on these tasks. In the exercise of billing judgment, Defendant did not.  In addition, Defendant "does not seek to recover any costs."  ECF No. 534-1 at 14, ¶ 41.  These actions help support the overall reasonableness of Defendant's requested fee award.

## 2.    The Reasonableness of Defendant's Submitted Hours

"A district court should approach this reasonableness inquiry 'much as a senior partner in a private law firm would review the reports of subordinate attorneys when billing clients[.]'" *Robinson*, 160 F.3d at 1281.  "Hours that an attorney would not properly bill to his or her client cannot reasonably be billed to the adverse party, making certain time presumptively unreasonable." *Case*, 157 F.3d at 1250.

Defendant submitted reasonably detailed and itemized billing records—which it actually billed to its client— reflecting the time for which it now seeks compensation.  *See* ECF No. 534-1.  Those records reflect: 26.7 hours billed by Mr. Cross; 1.3 hours billed by Casey Murray; 36.7 hours billed by Preston Enoch; and 7.6 hours billed by Ms. Witterschein.  The time entries indicate that this time was spent: reviewing and assessing the motion to compel; communicating among

---

[3]    *See also Chung v. Lamb*, No. 14-CV-03244-WYD-KLM, 2018 WL 7141325, at *2 (D. Colo. June 7, 2018) (considering the issue on an award of fees to a party that prevailed on a motion to compel and noting that "[a]ttorneys' fees can also be awarded under Rule 37(a)(5)(A) for the time spent preparing fee statements and defending awards of attorneys' fees" (collecting cases)); *L.H.H. ex rel. Hernandez v. Horton*, No. 2:13-CV-452-PRC, 2015 WL 1057466, at *5 (N.D. Ind. Mar. 10, 2015) (concluding that Rule 37 does not prevent recovery of fees resulting from hours spent on a fee petition).

counsel regarding the motion; conducting legal research and drafting the response brief and accompanying declarations; creating a privilege log exhibit to substantiate Defendant's burden objections; preparing for the hearing on the motion to compel; and attending the hearing.  *Id.*

Mr. Badgerow's declaration states that he has independently reviewed the billing records submitted on behalf of Spencer Fane and found that the "hours expended by Spencer Fane in connection with BCBSKS's Response to Plaintiffs' Motion were reasonable."  ECF No. 534-1 at 6-7.  Because Mr. Badgerow is litigation counsel in this case, the Court does not interpret his declaration as a traditional expert declaration, but instead as evidence that Defendant's billing records were independently reviewed before submission to the Court.[4]

In response, Plaintiffs do not point to a single time entry that they contend is unreasonable, duplicative, sloppy, or otherwise objectionable—a highly unusual approach in opposing a request for a fee award.  *See generally* ECF No. 539; *see also Canada v. Colvin*, No. CIV-15-426-R, 2016 WL 4536699, at *1 (W.D. Okla. Aug. 10, 2016) (awarding 13.2 hours where defendant did not object to the hours and taking up only defendant's challenge to the remaining 12.3 hours billed), *report and recommendation adopted,* No. CIV-15-426-R, 2016 WL 4535046 (W.D. Okla. Aug. 30, 2016); *see also Stroup v. United Airlines, Inc.*, No. 15-CV-01389-WYD-STV, 2018 WL 10613861, at *4 (D. Colo. Dec. 5, 2018) (discussing the court's own "painstaking review" of billing statements, defendant's objections to "virtually every billing entry" and noting that "trial courts need not, and indeed should not, become green eye-shade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011))).  Instead, Plaintiffs generically argue that it should not

---

[4]   While any declaration submitted by an attorney for the law firm seeking an award of fees necessarily is self-interested in the outcome of the award, Plaintiffs do not attack the accuracy or completeness of the detailed facts included in Mr. Badgerow's declaration.

take four lawyers nearly $40,000 to prepare a three-page response brief.  This argument, divorced from any specificity of any kind, is unpersuasive.  A blanket assertion that the amount must be rejected as facially unreasonable is particularly unpersuasive considering Plaintiffs' earlier request in this litigation for $60,000 in attorneys' fees in opposing Defendant's motion to compel.  *See generally* ECF No. 223.

To begin, Defendant's response brief was not limited to three pages.  Plaintiffs' argument ignores the exhibits attached to that brief, including Ms. Witterschein's detailed declaration.  ECF No. 506-8.  Although her declaration spans 4.5 pages, it contains information demonstrating that Ms. Witterschein conducted a thorough review of the time and effort it would have taken Defendant and Spencer Fane to respond to the discovery requests as drafted by Plaintiffs and at issue in Plaintiffs' motion to compel.  Her declaration identified: the number of attorneys implicated by Plaintiffs' decision to demand broad categories of documents from Spencer Fane; where the responsive data is stored; the anticipated size of the collection; the projected cost of collecting the anticipated data; and the projected time and cost to review the data and to identify and log any privileged materials.  *See id.*  In other words, hours were spent gathering the information that was summarized in that declaration.

Moreover, "[l]ength of a brief is not always an accurate indicator of time reasonably expended."  *Pipeline Prods.*, 2019 WL 3252743, at *4.  This is particularly true where courts impose shortened page limits or an expedited briefing schedule, which "requires the parties to devote effort to presenting their issues concisely, which often requires billable time that is not necessarily reflected in a brief's length."  *Id.*; *see also* ECF No. 534-1 at 9-10 (Mr. Badgerow's declaration stating "as every litigator well-knows, it is far more difficult to provide a detailed and

comprehensive response in just three pages (which was the case with BCBSKS's Response to Plaintiffs' Motion) as opposed to ten pages.").

To the extent Plaintiffs argue that Defendant had too many attorneys involved in this dispute, again Plaintiffs fail to point to any impermissible duplication of effort. Plaintiffs could have disclosed how they were able to staff this dispute more efficiently. They could have disclosed how many hours their own counsel billed in conjunction with the motion to compel or come forward with any other evidence suggesting that Defendant spent too much time on the issue. But they have not, and the record before the Court does not indicate that Defendant overstaffed this case. For example, at the hearing on the motion to compel, three attorneys appeared on behalf of Plaintiffs—two Dallas attorneys and their local counsel—while Defendant was represented by two attorneys. ECF No. 514 at 1. This does not reflect overstaffing by Defendant.

With respect to a discovery dispute implicating wide-ranging attorney-client privilege concerns—particularly here, when the entire outside litigation law firm was included within the definition of the party with only limited exclusions—Defendant argues that it was important for Defendant's counsel to dedicate a significant amount of time and effort to responding to the motion because of the consequences if Defendant lost. ECF No. 534 at 7. The Court would expect to see disputes related to attorney-client privilege to include more senior counsel. This was an important issue not just for Defendant but for Spencer Fane given the scope of the document requests.

Moreover, because Defendant argued that Plaintiffs' requests were burdensome, Defendant was obligated to factually support this objection, which is typically a time-intensive task in this District. *See, e.g., Sprint Commc'ns Co. L.P. v. Charter Commc'ns, Inc.*, 341 F.R.D. 291, 302–03 (D. Kan. 2022) ("Objections that discovery is unduly burdensome must contain a factual basis for the claim, and the objecting party must usually provide an affidavit or other evidentiary proof of

the time or expense involved in responding to the discovery request." (internal quotations omitted)).

Ms. Witterschein's declaration provides that required factual basis. She estimated that it would have cost Defendant between $127,800 to $148,000 to produce responsive documents, review them for privilege, and to log the withheld documents. ECF No. 506-8. The Court will not require a party to gather and provide the factual information necessary to properly support a discovery objection only to then penalize that party on a fees motion by disallowing the time required to do so.

Despite Plaintiffs' failure to cast doubt on the appropriateness of any individual billing entry, the Court has independently reviewed each billing entry submitted by Defendant. These are not time entries that were reconstructed after the motion to compel order or that were never submitted to a client. Instead, these are contemporaneous billing records that were submitted by Spencer Fane to Defendant monthly. As is appropriate and consistent with the Court's expectations, the highest number of hours was billed by Mr. Enoch, the most junior lawyer working on the litigation.

The Court therefore finds that Defendant has provided sufficient evidentiary support in the form of its billing statements and Mr. Badgerow's declaration supporting the reasonableness of the hours submitted by Defendant, particularly when Plaintiffs do not question any specific time entry in these billing statements.

### D.      Reasonable Hourly Rates

"To determine what constitutes a reasonable rate, the district court considers the prevailing market rate of the relevant community." *Lippoldt v. Cole*, 468 F.3d 1204, 1224 (10th Cir. 2006) (internal quotations omitted); *see also Perdue*, 559 U.S. at 551 (same). The relevant community

is "the area in which the litigation occurs" or "the area in which the court sits." *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983) (overruled on other grounds); *accord Case*, 157 F.3d at 1256. Unless the case "is so unusual or requires such special skills that only an out-of-state attorney possesses, the fee rates of the local area should be applied even when the lawyers seeking fees are from another area." *Lippoldt*, 468 F.3d at 1225. The party seeking fees "must provide evidence of the prevailing market rate for similar services by 'lawyers of reasonably comparable skill, experience, and reputation' in the relevant community." *Id.* at 1224-25 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)).

### 1.    Relevant Community for Local Rate Determination

Both sides appear to agree that local rates apply in this case. ECF No. 534-1 at 5 (stating that the rates are "reasonable in this community"); ECF No. 539 at 8 (stating that in examining what is a reasonable hourly rate, the Court should look to the "prevailing market rate . . . in the relevant community."). But the question becomes which community provides these local rates. Plaintiffs appear to argue that Northeast Kansas is the relevant community. *Id.* Defendant argues that the relevant community is the area in which the litigation occurs or where the Court sits, which in this case includes the Kansas City metropolitan area. ECF No. 534-1 at 7-8. Ultimately, Defendant argues that the Kansas City area is the relevant community. *Id.* at 8, ¶ 23.

The history of this litigation complicates determining the relevant community. Plaintiffs in this lawsuit are two Texas corporations. ECF No. 1. Plaintiffs originally sued Blue Cross and Blue Shield of Kansas (later amending to name Blue Cross and Blue Shield of Kansas, Inc.), a Kansas corporation with its principal place of business in Topeka. ECF Nos. 1, 262. Plaintiffs originally filed their lawsuit in Texas state court in March 2018, and Defendant hired Texas counsel from Spencer Fane at that time to act as litigation counsel. *See* ECF No. 506-1 at 2; *see*

*also Orchestrate HR, Inc. v. Blue Cross & Blue Shield of Kansas,* DC-18-04078 (193rd Dist. Ct., Dallas County, Tex.).

When the litigation was re-filed in Kansas, both sides continued to rely on Texas-based counsel.  Plaintiffs have Topeka local counsel, who moved for pro hac vice admission for Texas counsel the day Plaintiffs filed this case.  ECF No. 3.  Currently, Plaintiffs' counsel of record consists of one Topeka attorney and two Dallas attorneys.  Defendant's counsel of record consists of four Spencer Fane attorneys in three offices: two in the Dallas, Texas office; one in the Kansas City, Missouri office; and one in the Overland Park, Kansas office.

While Plaintiffs originally designated Topeka, Kansas, as the place of trial, ECF No. 1, trial is now scheduled to occur in Kansas City, Kansas.  ECF No. 543 at 62.  This case was originally randomly assigned to a Topeka District Judge and a Kansas City Magistrate Judge.  It was later reassigned to a Kansas City District Judge and again randomly reassigned to the currently presiding Kansas City District Judge.  ECF Nos. 44, 413.  The originally assigned Magistrate Judge conducted numerous hearings and conferences by phone.  *See* ECF Nos. 72, 75, 82, 87, 122, 126, 162, 299, 341.  The District Judges conducted some hearings by phone but also set in-person hearings in the Kansas City, Kansas courthouse.  *See e.g.,* ECF Nos. 297 (setting a status conference before the District Judge and the Magistrate Judge), 451, 489 and 519.  The Kansas City District Judge then referred the present motion to the undersigned Topeka Magistrate Judge. ECF No. 54.

Considering the circumstances of this case, the Court finds that the area in which litigation occurs is broad enough to encompass the Kansas City metropolitan area.  The District Judge presiding over this case recently found in a different case that the District of Kansas was the relevant community for determining market rates, considering that the case "includes a cast of

skilled lawyers who maintain offices in markets as large as New York and as small as Topeka, Kansas," the increasingly virtual world in which litigation now occurs, and the fact that the plaintiffs had designated Kansas City as the place of trial but a Wichita-based magistrate judge had handled all scheduling and discovery matters, among other things. *M.B. v. Howard*, 555 F. Supp. 3d 1047, 1062-63 (D. Kan. 2021). "Balancing all this geography on just one scale," the court concluded "that the relevant geographic market includes both the Kansas City Metropolitan area (which includes a limited portion of Missouri) and the northeastern portion of Kansas." *Id.* at 1062; *see also Lawson v. Spirit AeroSystems, Inc.*, No. 18-1100-EFM-ADM, 2020 WL 6343292, at *17 (D. Kan. Oct. 29, 2020) (finding that the relevant market was the District of Kansas), *aff'd*, No. 18-1100-EFM, 2021 WL 4844058 (D. Kan. Oct. 18, 2021).

In deciding what is a reasonable rate, the "[t]he relevant market does not include, however, other markets where counsel of record maintain their offices." *M.B.*, 555 F. Supp. 3d at 1062. While both sides rely heavily on Dallas attorneys, the Court would not characterize this litigation as so complex that sophisticated local counsel could not handle it proficiently. *See also id.* at 1062-63 (reaching the same conclusion). The Court notes, however, that this is not a run-of-the-mill lawsuit in federal court. The length of the Pretrial Order reflects the underlying factual complexity of this case, ECF No. 543, and this lawsuit has an unusually complicated and protracted procedural history, reflected by a docket that has more than 560 entries. The Court would anticipate that experienced attorneys would both prosecute and defend a lawsuit like this.

### 2.    The Reasonableness of Defense Counsel's Hourly Rates

#### a.    Defendant's Requested Rates

Having determined the relevant market, the Court next turns to the reasonable rates for the Kansas City metropolitan area. Defendant's Spencer Fane attorneys have requested attorneys' fees based on the following hourly rates:

- $740 per hour for Mr. Cross, the managing partner of Spencer Fane's Dallas office, which is a reduction of his standard hourly rate of $795;

- $565 per hour for Mr. Murray, a partner in the firm's Kansas City office, which is a reduction of his usual $595 rate;

- $460 per hour for Mr. Enoch, a partner in the firm's Dallas office, which is a reduction of his usual $500 rate; and

- $320 per hour for Ms. Witterschein, who is of counsel in the firm's Dallas office, which is a reduction of her usual $490 rate.

ECF No. 534 at 13. According to the Motion, these rates are reduced from each attorney's standard hourly rate normally charged to clients. *Id.*

To support the reasonableness of the requested rates, Defendant make three primary arguments. *First*, Defendant explains in detail the experience, reputation and abilities of each attorney who has submitted time. ECF No. 534-1 at 11-14. Defendant details the educational background for each attorney, their legal experience, and honors or certifications they have received. *Id.* Defendant then ties this experience to the legal issue at the heart of the motion to compel. Defendant argues that this was not a typical discovery dispute for all the reasons previously addressed above.

*Second,* Defendant explains that for each attorney, the hourly rate requested is below what each attorney typically charges their clients, including in the Kansas City area. In the usual case, "[t]he best evidence of the value of the lawyer's services is what the client agreed to pay," *Centennial Archaeology*, 688 F.3d at 680. In this case, defense counsel is invoicing a sophisticated client based in Kansas using these rates. This is strong evidence of the reasonableness of these rates.

*Third,* Defendant argues that these rates are commensurate with rates for other attorneys in the Kansas City area with similar experiences. In support of this argument, Defendant again relies

on Mr. Badgerow's declaration.  As outlined in the declaration, Mr. Badgerow has practiced in the State of Kansas for 44 years, including extensive work on attorney ethics and compliance with the Model Rules of Professional Conduct.  ECF No. 534-1 at 4, 14.  Of particular relevance to the issue of reasonable fees, he states he has served as a member of Spencer Fane's fee committee, which establishes the hourly rates charged by counsel and employees of the firm.  He represents that such work has required him to be familiar with fees and rates charged by other firms in the Kansas City area.  *Id.* at 4-5.

According to the declaration, the Texas lawyers' rates would be and are in fact much higher in their respective community, but they have been reduced for this case and to match rates in this community.  *Id.* at 8.  But "[b]oth the standard and reduced rates are well within what is reasonable in this jurisdiction, and more specifically, the Kansas City area."  *Id.*  Moreover, even $740 per hour charged by Mr. Cross "is reasonable and comparable to the rates charged by other attorneys in this community with backgrounds similar to those of Mr. Cross, and well-below the rates which senior and experienced lawyers could and would charge in this community . . . ."  *Id.*

In addition to Mr. Badgerow's declaration, Defendant cites to examples of similar rates approved by courts in the Kansas City area.  ECF No. 534 at 6 n.26.  These requested rates are not materially higher than rates that have been approved in this District in recent years.  *See, e.g., James v. Boyd Gaming Corp.*, No. 19-2260-DDC-ADM, 2022 WL 4482477, at *14-15 (D. Kan. Sept. 27, 2022) (approving a collective action settlement attorneys' fee award based on a lodestar cross-check involving standard hourly rates in the Kansas City metropolitan area that are at and substantially above the hourly rates requested in this litigation); *id.* at ECF No. 166-2 at 12. Plaintiffs could have but did not challenge the relevance of any of the cases cited by Defendant or any aspect of Mr. Badgerow's declaration.  *See Rogers*, 2014 WL 6632944, at *2 ("Although

Plaintiff only offers her own attorney's affidavit, Defendant does not object to the hourly rates used in calculating the amount of attorneys' fees requested.")

Because Defendant has provided adequate evidence of prevailing market rates, the Court need not resort to its own knowledge to establish what are reasonable rates in the community.  *See Case*, 157 F.3d at 1257 ("Only if the district court does not have before it adequate evidence of prevailing market rates may the court, in its discretion, use other relevant factors, including its own knowledge, to establish the rate.").[5]   The Court finds that Defendant has supported the reasonableness of the requested hourly rates.

### b.       Plaintiffs' Challenge to Defendant's Requested Rates

In arguing that the rates should be reduced, Plaintiffs provide virtually no evidence of contrary prevailing market rates.  Instead, Plaintiffs devote just a few paragraphs to the matter— pointing to Defendant's prior filing challenging the hourly billing rates of Plaintiffs' out-of-state counsel and relying on the KBA's study, *A Flash Report on the 2017 Economics of Law Practice Survey in Kansas*.  ECF No. 539 at 8; *see also* ECF No. 230 at 6 (Defendant's prior brief).

The Court does not find the 2017 "Flash" KBA survey helpful in deciding what is an appropriate rate in the Kansas City metropolitan area in 2023.  For one, the survey is now six years old, which makes it an unreliable indicator of rates in 2023.  At most, the Court would construe the KBA survey as providing the absolute floor for rates in 2023, not the ceiling as Plaintiffs appear to argue.  Moreover, as this District has previously observed, the rates in the survey "are aggregate

---

[5]       If the Court were to independently review Defendant's proposed rates, Defendant's rates are in line with the undersigned's own extensive knowledge of prevailing market rates in the Kansas City metropolitan area—the same area in which the undersigned practiced law for nearly 18 years until taking the bench in 2022.  In 2021, the undersigned's normal billable hourly rate charged to clients in the Kansas City metropolitan area was higher than any rate requested by defense counsel.

figures that are not narrowly tailored to the particular type of litigation and attorneys necessitated by this case." *Pipeline*, 2019 WL 3252743, at *7. "[T]he court is not required to award fees at a mean rate as of 2017 or even at a rate in the 75th percentile but instead to award fees at a rate the market would presently command for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id.* The Court agrees, and to that end, Mr. Badgerow's declaration is the more persuasive evidence of the prevailing market rates in 2023 for similar services by lawyers of reasonably comparable skill, experience, and reputation.

According to Plaintiffs, because Defendant previously relied on the KBA's study to argue for a reduction of Plaintiffs' counsel's rates, the Court should impose reduced rates on defense counsel. ECF No. 539 at 8. Setting aside that this description of Defendant's brief is not entirely accurate (Defendant opposed Plaintiffs' rates on multiple grounds), it also plainly ignores that Plaintiffs, too, took a different position when it was Defendant that stood to be taxed with Plaintiffs' reasonable fees. *See* ECF No. 223-5. When Plaintiffs sought fees more than two years ago, they argued that $695 per hour, a rate not much lower than the rate requested for one of Defendant's attorneys, was reasonable in February 2021. *See* ECF No. 223-5 (affidavit of Plaintiffs' counsel supporting a request of attorneys' fees). The Court would expect that all counsel's hourly rates have gone up in the two years since that briefing, and Plaintiffs do not address their own inconsistency.

It is no surprise that a party would vigorously advocate for lower rates when it was being sanctioned and higher rates when seeking fees two years later. But imposing rates based on a party's prior position in litigation is contrary to the analysis the Court must undertake, which is to award prevailing market rates for similar services by lawyers of reasonably comparable skill, experience, and reputation in the relevant community—not based arguments advanced in a prior

brief.  *See City of Las Cruces v. Lofts at Alameda, LLC*, No. CV 17-809 JCH/GBW, 2022 WL 2753994, at *5 (D.N.M. July 14, 2022) (declining to presumptively impose rates awarded earlier in the case under the "law of the case doctrine" because the court must determine reasonable rates based on the evidence before it, which may change over time).

Plaintiffs have not directly addressed or called into question any aspect of Mr. Badgerow's declaration.  Plaintiffs could have—but did not—submit a declaration or affidavit from their own local counsel providing their own fees in 2023 or otherwise describing fees in 2023 for the Kansas City metropolitan area.  Instead, Plaintiffs ask the Court to do what the Tenth Circuit has said cannot be done—ignore market rate evidence provided by a party.  *Case*, 157 F.3d at 1256 ("The district court abused its discretion in setting rates that ignored the market rate evidence before it.").  For the reasons explained above, the Court finds that Defendant has supported the reasonableness of its requested rates for the type of work performed by attorneys of such skill in the relevant community.

### E.        Whether the *Johnson* Factors Weigh in Favor of Any Adjustment to the Lodestar

As previously explained, the lodestar amount is presumed to be a reasonable fee.  *Robinson*, 160 F.3d at 1281.  While the court may adjust this lodestar amount based on the *Johnson* factors the lodestar analysis generally remains the primary consideration when determining a reasonable fee and often subsumes the *Johnson* factors.  *See Fox v. Pittsburg State Univ.*, 258 F. Supp. 3d 1243, 1254 (D. Kan. 2017).

Although Defendant briefed the *Johnson* factors, Defendant does not request an upward adjustment from the lodestar amount.  While Plaintiffs do request a downward adjustment as discussed above, Plaintiffs do not argue that any specific *Johnson* factor warrants a downward departure.  Nonetheless, the Court has considered the twelve *Johnson* factors, to the extent they

apply in this context as discussed throughout this Order and does not find that these factors weigh in favor of a downward adjustment of the lodestar amount.

## IV.    CONCLUSION

Because Plaintiffs have not shown that their motion to compel was substantially justified or that other circumstances make an award of expenses unjust, Federal Rule of Civil Procedure 37(a)(5)(B) requires an award of reasonable attorneys' fees to Defendant, which the Court assesses at $39,806.50.

**IT IS THEREFORE ORDERED** that Defendant Blue Cross and Blue Shield of Kansas, Inc.'s Motion for Award of Attorney's Fees (ECF No. 534) is **GRANTED**.  Plaintiffs shall tender payment to Defendant within fourteen calendar days from the date of this Order.

**IT IS SO ORDERED.**

Dated: September 25, 2023, at Topeka, Kansas.

/s/ Rachel E. Schwartz
Rachel E. Schwartz
United States Magistrate Judge